# SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

**See other side for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☒ "X" if claiming other relief in addition to or in lieu of money or damages.

APR 12 2018 PM 12:25

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| **95 Washington Street** Hartford, CT 06106 | ( 2860 ) 548-2700 | **May** Month | **8** Day | **2 018** Year |

| ☒ Judicial District | ☐ G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | **Hartford** | Major: **T** | Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| **Lewis Chimes** Law Office Lewis Chimes LLC, 45 Franklin St., Stamford, CT | **303446** |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( **203** ) **324-7744** | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* **lchimes@chimeslaw.com** |
|---|---|

| Number of Plaintiffs: **1** | Number of Defendants: **7** | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name: **Nicole Chase** <br> Address: **c/o Law Office of Lewis Chimes, LLC** | P-01 |
| **Additional Plaintiff** | Name: <br> Address: | P-02 |
| **First Defendant** | Name: **Nodine'sSmokehouse, Inc.** <br> Address: **65 Fowler Avenue, Torrinton, CT 06795** | D-01 |
| **Additional Defendant** | Name: **Calvin Nodine** <br> Address: **39 Greenwoods Road East, Norfolk, CT 06058** | D-02 |
| **Additional Defendant** | Name: **Town of Canton** <br> Address: **Town Clerk: Linda Smith Town Clerk, 4 Marekt Street, Collinsville, CT 06022** | D-03 |
| **Additional Defendant** | Name: **John Colangelo** <br> Address: **Town clerk: Linda Smith 4 Market Street, Collinsville, CT 06022** | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left **Lewis Chimes** | Date signed **4/10/2018** |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. <br> b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. <br> c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. <br> d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date <br> A True Copy Attest: <br> Michael J. Brown <br> State Marshal |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date | Docket Number **EXHIBIT A** |
|---|---|---|---|

Print Form · (Page 1 of 2) · Reset Form

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2    Rev. 9-12

STATE OF CONNECTICUT
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**Nicole Chase**

First named Defendant *(Last, First, Middle Initial)*
**Nodine's Smokehouse, LLC**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| **Adam Gompper**<br>**Town clerk:  Linda Smith Town Clerk 4 Market Street, Collinsville, CT 06022** | | 05 |
| **Mark J. Penney**<br>**Town clerk:  Linda Smith Town Clerk 4 Market Street, Collinsville, CT 06022** | | 06 |
| **Christopher Arciero**<br>**Town clerk:  Linda Smith Town Clerk 4 Market Street, Collinsville, CT 06022** | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |

| | | FOR COURT USE ONLY - File Date |
|---|---|---|
| | 12 | |
| | 13 | |
| | 14 | Docket number |

EXHIBIT A

CIVIL SUMMONS-Continuation

Print Form     Reset Form

| | | |
|---|---|---|
| **RETURN DATE:** __MAY 8, 2018__ ____x | | |
| | : | **Dkt:  HHD-CV-17-5049825-S** |
| **NICOLE CHASE,** | : | |
| _Plaintiff,_ | : | |
| | : | **SUPERIOR COURT** |
| **VS.** | : | |
| | : | |
| | : | **JUDICIAL DISTRICT OF** |
| **NODINE'S SMOKEHOUSE, INC.,** | : | |
| **CALVIN NODINE, DETECTIVE** | : | **HARTFORD** |
| **JOHN COLANGELO, POLICE** | : | |
| **OFFICER ADAM GOMPPER,** | : | |
| **SGT. MARK J. PENNEY, POLICE** | : | **April 10, 2018** |
| **CHIEF CHRISTOPHER ARCIERO,** | : | |
| **and the TOWN OF CANTON** | : | |
| _____x | | |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

1.     Nicole Chase brings various claims for sexual assault by her employer, Calvin Nodine, and his company, Nodine's Smokehouse that took place the evening of May 6, 2017.  Calvin Nodine pulled her into the men's room of his restaurant and forced her to perform oral sex on him.

2.     The following morning, she reported the sexual assault to Police Officers of the Canton Police department.  Over the next three months, Nicole Chase was victimized a second time by the defendant police officers.  Instead of investigating and prosecuting her assailant, they treated her with disrespect and never took her complaint seriously.  They failed to meet even the most minimal standards of law enforcement for officers interviewing a victim of sexual assault and investigating her claims.  They ignored potential areas of corroboration.  In contrast, their treatment of the assailant, Mr. Nodine, was cordial, deferential and accommodating.

EXHIBIT A

3.   On September 8, 2017, the police charged Ms. Chase with Making a False Statement. The warrant that was submitted in support of the arrest was demonstrably false, palpably biased, and omitted and distorted evidence that was supportive of her claim of sexual assault.

4.   Calvin Nodine, her assailant, has never been charged to date.

5.   Plaintiff requests a trial by jury in this matter.

## II.  THE PARTIES

6.   The plaintiff, Nicole Chase, brings claims based upon the sexual assault perpetrated by defendant Calvin Nodine on May 6, 2017.

7.   Ms. Chase began working for Nodine's, in approximately September 2016.

8.   At all times mentioned herein, the plaintiff resided in Canton, Connecticut.

### A.  The Sexual Assault Defendants

9.   Defendant, Nodine's Smokehouse, Inc. ("Nodine's Smokehouse"), has a business address of 65 Fowler Avenue, Torrington, Connecticut 06790.  Nodine's Smokehouse produces smoked meats for sale to individuals and restaurants.

10.   Nodine's Smokehouse also has a gourmet store/restaurant located in Goshen, CT.

11.   Nodine's Smokehouse employs more than fifteen (15) people.

12.   Nodine's Smokehouse opened a restaurant, Nodine's Smokehouse Deli and Restaurant ("Nodine's Restaurant") at 192 Albany Turnpike, Canton, CT in 2016.

13.   At all times mentioned herein, defendant Calvin Nodine, was a resident of Norfolk, CT.

14.   At all times mentioned herein, Calvin Nodine was an owner of and President of Nodine's Smokehouse.

2

EXHIBIT A

15.   At all times mentioned herein, Calvin Nodine controlled all aspects of operations, including hiring, firing, discipline, payroll and the terms and conditions of employment at Nodine's Restaurant.

### B.  The Police Misconduct Defendants

16.   The defendant, the Town of Canton, is a town organized pursuant to the laws of the State of Connecticut.

17.   Pursuant to the town charter and ordinances, and the laws of the State of Connecticut, the defendant Town of Canton maintains a municipal police force.  The purpose of the department is the protection of life and property, the preservation of public peace, the prevention and detection of crime, the apprehension of offenders and the enforcement of State, and local laws and ordinances.

18.   At all times mentioned herein, Christopher Arciero was the Chief of Police of the Town of Canton.  He is being sued in his official and personal capacity.

19.   At all times mentioned herein, Sgt. Mark J. Penney was the Shift Commander who oversaw Officer Gompper and Detective Colangelo in the investigation of Nicole Chase's

20.   Complaint and her arrest.  He is being sued in his official and personal capacity.

21.   At all times mentioned herein, John Colangelo was a Detective in the Canton Police Department.  He is being sued in his official and personal capacities.

22.   At all times mentioned herein, Adam Gompper was a Police Officer in the Canton Police Department.  He is being sued in his official and personal capacities.

EXHIBIT A

### III.   Jurisdiction

23.   On or about October 30, 2017, the plaintiff filed a complaint of sexual harassment, hostile work environment and retaliation against the defendants with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC").

24.   The plaintiff requested an early Release of Jurisdiction from the CHRO, and received plaintiff's a release against Nodine's Smokehouse on January 15, 2018.  Plaintiff received a release of jurisdiction as to Calvin Nodine on January 20, 2018.

25.   This case is being timely filed within 90 days of the issuance of these releases.

26.   The plaintiff has requested its right to sue letter for Nodine's Smokehouse from the EEOC on April 2, 2018

27.   The plaintiff has timely filed a Notice of Claim as to the defendants, pursuant to Conn. Gen. Stat. §7-465.

### IV.   STATEMENT OF FACTS

#### A.   Facts Relating to Sexual Assault and Hostile Environment

28.   In or about September 2016, Ms. Chase began working for defendants.  Ms. Chase initially worked at the Nodine's Smokehouse factory in Torrington but helped to set up Nodine's Restaurant in Canton and worked there once it opened.

29.   Nodine's Restaurant opened in or about November 2016.

30.   Between November 2016 and around April 2017, defendant Calvin Nodine would come into the restaurant nearly every day; but he rarely stayed very long.

EXHIBIT A

31.  Even before he sexually assaulted Ms. Chase on May 6, 2017, Mr. Nodine would engage in inappropriate conduct that made her feel uncomfortable. For example:

     a.  on several occasions he would throw his eye glasses on the floor and require her to pick them up.   When she bent to pick them up, he would stare down her shirt;

     b.  he would make suggestive comments about "pieces of meat";

     c.  he would tell graphic stories about his sexual exploits;

     d.  he would make dirty jokes and comments;

     e.  he would stare at her;

     f.  he would follow her around;

32.  These comments and behavior were unwelcome, but she put up with it because he was never around in the restaurant very long.

33.  Starting in April 2017, Calvin Nodine began to spend more time at the restaurant.

34.  He started to give Ms. Chase free items from the restaurant.  He had never done that before.

35.  Ms. Chase came in to work on Saturday May 6, 2017 in the morning.

36.  Calvin Nodine came in later that morning.

37.  One of the first things that he said to Ms. Chase when he arrived was "So did you get laid last night?"  He said that in front of a co-worker.

38.   Ms. Chase observed him drinking alcohol throughout the day.

39.  Mr. Nodine made several other offensive comments directed to her that day:

     a.  "Blondes are like butter, they're easy to spread."

EXHIBIT A

b.  Mr. Nodine was aware that Ms. Chase had an injury to her leg.  He commented

that her leg is hurt from having her "legs behind [her] back too much."

40.  Ms. Chase attempted to ignore his comments and avoid Mr. Nodine.

41.  Although he had been verbally offensive prior to May 6, 2017, Calvin had never touched Ms. Chase in an inappropriate manner prior to that date.

42.  That changed on May 6.  Prior to sexually assaulting her at the end of her shift, Mr. Nodine made uncomfortable physical contact with Ms. Chase twice.

43.  On the first occasion, Mr. Nodine gave her an unsolicited and unwelcomed hug and a kiss on the cheek. This occurred in front of Mr. Nodine's wife, Kelly Nodine.

44.  On the second occasion, Ms. Chase was standing at the pizza counter with a co-worker, when Mr. Nodine proceeded to come behind the counter and approached her from behind. Mr. Nodine put his arm across Ms. Chase's back and placed his hand upon her shoulder. Mr. Nodine pulled her into his body and squeezed her arm and back with his hand and he continued to lower his hand until he reached her buttocks, which he proceeded to squeeze.  Ms. Chase stepped forward to get his hand away from her buttocks and hurried away from him.

45.  At the close of business on May 6, 2017, Mr. Nodine forced Ms. Chase to perform oral sex on him.   After Ms. Chase had finished closing out the cash drawer and walked toward the rear of the restaurant to leave, Mr. Nodine stood with his arms extended out towards her and proceeded to hug her.   A coworker came back into the building and yelled out Mr. Nodine's name. In response, Mr. Nodine grabbed Ms. Chase's arm and pulled her into the men's bathroom, locking the door behind them. Mr. Nodine then held his finger up to her mouth as to tell her to remain quiet. Ms. Chase was in shock and fearful and did not say anything.

EXHIBIT A

46.   After the co-worker left the building, Defendant Nodine exposed himself to Ms. Chase, grabbed his penis and stated, "Suck it because I know you don't get it at home." Mr. Nodine used one hand and pushed her head down towards his genitals and used his other hand to force his penis into her mouth.  Ms. Chase resisted, but Nodine would not let go.  He forced Ms. Chase to perform oral sex on him until he ejaculated.

47.   When Defendant Nodine removed his hand from Ms. Chase's head, she pushed him away, unlocked the bathroom door, and escaped.

48.   When she got home, Ms. Chase immediately texted her former general manager at Nodine's Restaurant and told him that Calvin Nodine had sexually assaulted her.  In the ensuing text exchange, he told Ms. Chase to report it to the police. Ms. Chase also spoke with her mother that night about the sexual assault.

49.   The following morning, on May 7, 2017, Ms. Chase went with her mother to the Canton Police Department and reported the incident.  She told them everything that happened and that she was sexually assaulted except that she omitted the fact that he had succeeded in forcing her to perform oral sex on him until he ejaculated.  Ms. Chase omitted that fact because she was ashamed and humiliated that she somehow allowed herself to get into a positon where he was able to force her to do that.

50.   Ms. Chase had also gone to the restaurant to collect her personal belongings.  Mr. Nodine was present.  He asked her to go to his office with him to clean it out; when she refused, he replied "What? Can you think of something else better to do than fuck me?" Not wanting to escalate the situation, she walked away. Before she left, Defendant Nodine asked if he could give her a ride home, which she refused.

EXHIBIT A

51.  On Monday, May 8, 2017, Mr. Nodine called Ms. Chase and stated that he was closing the store until the following Tuesday (May 16, 2017) and asked her to help him clean the restaurant.  She refused.

52.  Ms. Chase's last day at work was May 7, 2017.

53.  As a result of the sexual assault and the defendants' conduct, she was constructively discharged from Nodine's Restaurant.

54.  After her constructive discharge, she applied for and received unemployment compensation in July 2017.

55.  The defendants subsequently retaliated against the plaintiff by falsely accusing her of fraud in her application for unemployment benefits and contesting her right to receive benefits.

56.  Nodine made sexual conduct an explicit or implicit term of her employment.

57.  The defendants' conduct interfered with the terms and conditions of her employment.

58.  Mr. Nodine's conduct created a hostile environment that substantially interfered with the plaintiff's work performance and/or Mr. Nodine's conduct created an intimidating, hostile, or offensive working environment.

59.  As a result of the defendants' conduct, the plaintiff has lost wages, incurred medical and legal expenses, and has suffered emotional distress.

**B.  Facts Relevant to the Canton Police Department Misconduct**

60.  The morning after Nodine sexually assaulted her (May 7, 2017), Ms. Chase went with her mother to the Canton Police Department and reported the sexual assault by Calvin Nodine.

EXHIBIT A

61.  Accepted Law Enforcement Standards exist as to methods and procedures for the investigation and interview of victims of sexual assault. [1]    These standards are intended to overcome the longstanding stereotypical assumptions about sexual assault and negative judgments made about victims of sexual assault when they report the crime:[2]

a.  There is no typical victim behavior.

b.  There is no typical sexual assault suspect.

c.  Sex crimes victims almost always arrive at the interview plagued with shame, anxieties, misinformation, and with fears of being judged. Even more significant, they usually come to these interviews still very uncertain about whether they really want to be going forward with the justice process.

d.  Law Enforcement's initial priority when initially meeting a victim of sexual assault is to attend to the victim's immediate needs and stabilize the victim's environment: build rapport with the victim, empower the victim, use advocates, and seek medical services.

e.   The initial Interview should be non-accusatory.  The investigator should endeavor to reassure and gain the trust of the victim.

f.   The interview location should be safe and comfortable for the victim.  It should allow the victim a measure of control over her surroundings, provide privacy, and be distraction free.

---

[1]    Sources:  International Association of Chiefs of Police (IACP) and End Violence Against Women International (EVAW).
[2]   Despite persistent stereotypes that women falsely reporting false incidents of sexual assault are common, Eight  studies over the past 30 years that the number of complaints that were determined to be false are very low (2.1% - 10.9%).  Lisak, *False Allegations of Sexual Assault,* Violence Against Women (2010).

EXHIBIT A

g.  The investigator needs to avoid being judgmental. At some point or points in a sex crime victim interview, the investigator may have strong personal feelings or disagreements about the things that the victim did or things that investigator believes are stupid, ineffective, provocative, morally offensive, wrong, risky, unfair, cowardly or dishonest. Finding fault with the victims is one of those reactions that often unconsciously comes to the fore no matter how much training the investigator has.

h.  The investigation must not be based upon sympathy or bias for the suspect.  An investigator cannot be dismissive of a sexual assault complaint because the suspect seems sincerely outraged and upset by the charges, has a credible story, or he appears to be a responsible citizen who does not meet stereotypical assumptions about who is likely to be a "rapist."

i.  It is not unusual for victims of sexual assault to omit details or make inconsistent statements as they relate their story.  There are many explanations as to why a victim may omit details or tell a different story:

    i.  victims might omit information due to trauma or disorganization.

    ii.  Victims might omit information because they are uncomfortable relaying details of the sexual assault.

    iii.  Many victims give information that is incomplete, inconsistent, or untrue because they are afraid that they won't be believed or that they will be blamed for the sexual assault.

EXHIBIT A

iv.  Victims alter or exaggerate the details of what happened is to create a

case that seems more believable. This can be due to guilt, shame, or a

fear of not being believed.

None of these explanations means that the sexual assault is a false report.

j.  Investigators should not interrogate a sexual assault victim as if they were a suspect.

Investigators sometimes use information from the suspect to aggressively question the

victim. For example, they may interview suspects who claim that the act was

consensual and offer facts to support that claim (e.g., how the victim was dressed,

what the victim was doing, etc.). Then, the investigators question the victim

repeatedly about these claims, until he or she finally gives up and recants.  In this type

of situation, no real investigation is even conducted. Rather, the "investigation" stops

in the initial stages of the interview with the victim. It is inappropriate to interrogate a

victim of sexual assault.

k.  In all dealings with a victim of sexual assault, the investigator should avoid

reproducing the victim-blaming stereotypes that have historically hindered

investigations and discouraged victims of sexual assault from coming forward.

l.  It is extremely important for investigators of sexual assaults to keep the victim fully

informed of what is happening and what is going to happen next.  Few things make a

sex crimes victim more unnecessarily anxious, fearful, and leery of the process than

not being informed of what's happening and what's going to happen next.

62.  The Canton Police failed to follow these established standards.

63.  There are no female police officers at the Canton Police Department.

11

EXHIBIT A

64. Defendant Adam Gompper met with Ms. Chase in the lobby of the Canton Police Department on May 7, 2017. He had her relate the details of the assault in a public area, with her mother present. As they discussed the incident, numerous individuals in the public lobby were walking by. She related that Calvin Nodine had sexually assaulted her in the men's bathroom without her consent.

65. Officer Gompper did not refer her to a hospital for examination.

66. He did not provide her with contact information for support groups for victims of sexual assault.

67. He did not gather any physical evidence from Ms. Chase.

68. He did not go to the crime scene.

69. Defendant Gompper did not schedule any follow up meetings for Ms. Chase with an investigator. He told her that if she decided to pursue the charges, she could come back and make a written statement.

70. Ms. Chase told Officer Gompper that she was not sure whether she wanted to make a formal complaint. Officer Gompper responded that she could see how the day goes. He told her that if she filed the complaint, they would interview Mr. Nodine. He told her that they had a lot of "he said/she said" cases like this that the police cannot prove.

71. Ms. Chase told Officer Gompper that she was going to go back to the restaurant. He did not accompany her.

72. On Thursday, May 11, 2017, Ms. Chase returned to the police department and spoke to Officer Gompper a second time. He typed up a statement that he had her sign.

12

EXHIBIT A

73.  In the statement Ms. Chase reiterated that Calvin Nodine had sexually assaulted her without her consent.

74.  Two other employees of the restaurant, Alexandra Archer and Kyle Rouleau also provided statements to Officer Gompper.

75.  Ms. Archer corroborated that Mr. Nodine made unwanted sexual advances towards Ms. Chase earlier in the day before the sexual assault.

76.  Mr. Rouleau corroborated that he had observed Calvin Nodine hovering around and following Ms. Chase in the restaurant during the day.  He also corroborated that Mr. Nodine frequently makes inappropriate sexual comments at the restaurant.

77.  After she provided the statement on May 11, 2017, Officer Gompper told Ms. Chase that they would interview Mr. Nodine, and then submit a warrant to see if it gets signed by the Judge.

78.  He did not gather any physical evidence from Ms. Chase.

79.  He did not go to the crime scene.

80.  Officer Gompper told Ms. Chase that he would call her after the police interviewed Mr. Nodine.

81.  According to Nicole Chase's Arrest Warrant, defendants John Colangelo and Adam Gompper interviewed Calvin Nodine on May 18, 2018.  Nodine was represented by his attorney, David Moraghan, at the time of interview.

82.  According to Nicole Chase's Arrest Warrant, Calvin Nodine, initially denied any sexual encounter between Ms. Chase and Mr. Nodine.

EXHIBIT A

83. This was a lie.  According to the Arrest Warrant, "after Nodine spoke privately with his attorney, Nodine explained that Chase had performed oral sex on him in the bathroom, and it was consensual."

84. Officer Gompper never contacted Ms. Chase after Calvin Nodine was interviewed.

85. Ms. Chase left several messages for Officer Gompper that were not returned.

86. Ms. Chase finally reached Officer Gompper, and he indicated that they had interviewed Calvin Nodine, and that they needed several more weeks to investigate.  He gave no further details.

87. Over one month passed, with no additional information from the Canton Police Department.

88. On June 21, 2018, Nicole Chase was called down to the Canton Police Department.

89. Ms. Chase was brought into an interview room that contained a recording device.

90. She met with Detective John Colangelo.  She had never spoken to him before.

91. Officer Gompper was not present.

92. Detective Colangelo did not make any inquiries about how she was doing, or her well-being, or whether she had sought support.

93. Detective Colangelo was intimidating from the start.  He spoke to her in a rapid staccato voice.

94. At no time did Detective Colangelo advise her that he now considered her to be a suspect and was contemplating criminal charges against her.

95. The first thing that he told her was that the interview was going to be recorded.

14

EXHIBIT A

96.  He asked her to tell her story again.  She told the same story about a non-consensual sexual assault that she had told twice previously.

97.   He began to press her, implying that she was not telling the entire story.

98.  He tried to intimidate her by telling her that Calvin Nodine had taken a lie detector test.

99.  He asked her whether she thought that Calvin Nodine would tell the truth or lie if he took a lie detector test.3

100. He told her that Calvin Nodine had told him that he had oral sex with her and that it was consensual.

101. Since the day of the sexual assault, Nicole Chase had not told anyone of the fact that Mr. Nodine had forced her to perform oral sex on him.  She had not told her family, any friend, her boyfriend or the police that aspect of what had taken place.

102.   Nicole Chase did not tell anyone about that part of the incident because she was ashamed, she did not want her boyfriend and her mother to know that detail, and she thought that she would not be believed.

103. As Detective Colangelo pressed her on the issue, she became very emotional, and realized that she had to reveal that part of the sexual assault.

104. Nicole Chase told Detective Colangelo that Calvin Nodine had forced her to perform oral sex on him, and that it was not consensual.

105. Having accomplished important and necessary task of getting Nicole Chase to reveal the entire story of the sexual assault, Detective Colangelo focused entirely on the omission and improperly jumped to the conclusion that Nicole Chase was not telling the truth that a sexual assault had occurred.

---

3    Detective Colangelo failed to tell her that Calvin Nodine had actually failed a polygraph test, and refused to take a second polygraph test.

15

106. During the interview, Nicole Chase told Detective Colangelo about the text messages that she had sent to her former General Manager shortly after the sexual assault.

107. She showed them to him on her cell phone, and he requested that she provide copies. He did not voucher her cell phone as evidence.

108. Detective Colangelo told her that she had made a false statement. She replied that the statement was not false.

109. Detective Colangelo asked her whether she wanted to revise her statement. Ms Chase told her him she did, but that she wanted to consult with her attorney first.

110. Several days later, Ms. Chase called Detective Colangelo to come in to correct her statement. She was told that he was out on vacation.

111. According to the Arrest Warrant, Detective Colangelo signed an arrest warrant that charged Nicole Chase with making a false statement, in violation of Conn. Gen. Stat. §53a-57b, making a false statement on July 7, 2017.

112. Around July 13, 2017 Nicole Chase went to the Canton Police Department to drop off the printouts of the text messages from the night of the sexual assault. She also asked to see Detective Colangelo to revise her statement.

113. The dispatcher told her that Detective Colangelo was busy and that he would call back if he needed her.

114. Neither Detective Gompper or Detective Colangelo contacted her.

115. Nicole Chase had no knowledge that the Canton Police department were even considering charging her with a crime.

EXHIBIT A

116. On July 25, 2017, she emailed Detective Colangelo about coming in to revise her statement.

117. Detective Colangelo never returned her call.

118. On July 31, 2017, Nicole Chase sent Detective Colangelo a revised statement and asked that it be incorporated into her original statement.  She requested to come in to sign it.

119. On August 10, 2017, Detective Colangelo finally responded to Ms. Chase's email and indicated that when Nicole Chase had come to the Canton Police Station [on July 13] he

> " . . . had no idea your intent was to give a new statement.  Also at that point I had already documented the change in your recount of the incident and had already sent the case to the court for review.  It is still with the States Attorney's office and I should hopefully have some direction of the next step shortly."

120.  Detective Colangelo's response was false and deceptive.

   a.  Nicole Chase had come to the Canton Police to see Detective Colangelo on July 13, several days before he had signed and swore to the warrant.

   b.  Detective Colangelo had not documented that she had corrected her testimony in the affidavit.

   c.  Detective Colangelo gave her the impression that the warrant application was for Calvin Nodine; he never indicated that he had drafted a warrant against her.

121.  Although the warrant had been signed and sworn to by Detective Colangelo on July 17, 2017, it was not signed by the Assistant State's Attorney until August 30, 2017.

122.  The warrant was signed by the Court on September 6, 2017.

123.  On September 8, 2017, Detective Colangelo arrested Nicole Chase for Making a False Statement, in violation of Conn. Gen. Stat. §53a-57b.

EXHIBIT A

124.  The Canton Police defendants communicated the fact of Nicole Chase's arrest to defendants Calvin Nodine and Nodine's Smokehouse before Nicole Chase was even aware that she was a criminal suspect.

125.  The Canton police defendants provided confidential investigative documents, i.e., Nicole Chase's May 11, 2017 statement to the defendants Calvin Nodine and Nodine's Smokehouse.

126.  Nicole Chase was arraigned on the charge in the Hartford Superior Court, G.A. #14, dkt. # HCR-17-0692973S.

127.  On November 6, 2017, the State's Attorney's Office entered an unconditional nolle prosequi and the case was dismissed by the Court.

128.  Police Officer Gompper provided information to Det. Colangelo that was included in the Warrant.

129.  At all times mentioned herein, Detective Colangelo and Officer Gompper's supervisor, was Sgt. Mark J. Penney.  Penney reviewed and approved all of the police reports pertaining to the investigation of Nicole Chase.  According to the Arrest Warrant, Penney took Colangelo's oath as to the accuracy of the warrant and approved the Arrest Warrant on July 7, 2017.

130.  The warrant as submitted to the court was so lacking in the indicia to support the charge of Making a False Statement that no reasonable police officer trained in interviewing victims of sexual assault and investigating complaints of sexual assault could believe there was probable cause to arrest Nicole Chase for Making a False Statement.

131.  Every statement that Nicole Chase had made, including her sworn statement, was consistent about Calvin Nodine sexually assaulting her without her consent at Nodine's restaurant on the evening of May 6, 2017.

EXHIBIT A

132. An omission of a detail of the crime does not make the statement that a crime occurred false. If every victim were prosecuted for omissions from their earlier statements during an investigation, it would become impossible to prosecute the underlying crimes.

133. Nicole Chase never had the requisite intent required by Conn. Gen. Stat. §53a-157b. Conn. Gen. Stat. §53a-157b states that the false statement must be made "with intent to mislead a public servant in the performance of such public servant's official function." The statute is intended to penalize persons who make false criminal allegations, or persons make false statements to the police to obstruct or provide false exculpatory information to assist a criminal suspect. The warrant even as drafted, in paragraph 24 of the warrant makes clear that her omission was not intended to mislead the police in their investigation. There is no evidence in the warrant to suggest that she had any intent to obstruct the police investigation.

134. The Arrest Warrant was filled with lies, innuendoes, and distortions. For example:

   a.   ¶ 31 of the arrest Warrant states that "Chase was asked if she wanted to provide a new statement. . . Chase was told that she had the opportunity to put the truth in writing."

   b.   ¶33 of the arrest warrant stated: "That, Chase thanked affiant for letting her tell the truth. It was explained to Chase that she could call and speak to Affiant Colangelo about her decision to provide a written statement. As of 7/7/17 [Date Colangelo signed the warrant], Chase has not called to speak to Affiant Colangelo of [sic] Officer Gompper."

   c.   These statements completely misrepresent the facts presented to the reviewing court. Nicole Chase attempted to contact defendant Colangelo numerous times.

EXHIBIT A

She tried to revise her complaint before he drafted and signed the warrant, and after he had signed the warrant, but before it had been presented to the reviewing State's Attorney, or the court.   Chase even emailed the revised version of her statement to Detective Colangelo one month before it was signed or reviewed by the State's Attorney or Judge.

    d.   Chase's revision of the signed statement would have removed the remaining omission from her earlier statement, and there would have been absolutely no basis for a warrant for making a false statement to issue against her.

    e.   Detective Colangelo and Officer Gompper's refusal to permit her to revise her Statement and go forward with the arrest warrant constituted egregious misconduct.

135. Detective Gompper grossly misrepresented material evidence.  For example:

    a.   In paragraph 9 of the arrest warrant Detective Colangelo wrote that after the incident, "Chase then left for the night and then spent two hours thinking about it."

    b.   Paragraph 10 goes on to state: "That, Chase said she texted Nodine's step son (Jeremy), and told him what happened but did not give full details about Nodine telling her to suck it."

    c.   In fact, the texts to Jeremy constituted highly probative evidence of her prompt and immediate outcry relating to the assault and her state of mind at the time. Contrary to the warrant, Ms. Chase reached out to Jeremy Archer, who had

20

EXHIBIT A

previously been the General Manager at the restaurant approximately one hour after the sexual assault.

    d.  Her initial text gives significant insight into what goes through the mind of a young woman who has just been sexually assaulted and provides strong corroboration of her credibility.

    e.  Detective Colangelo misrepresented this highly probative evidence.

136.  Another example of the blatant lie and misrepresentation of evidence in the Arrest Warrant was in paragraph 19 where Colangelo state "it was eluded to the fact that Nodine took two polygraph tests."   What Detective Colangelo failed to mention in the warrant was that Calvin Nodine had failed one polygraph test and refused to take a second test.

137.  The arrest warrant omitted significant material evidence.  During the investigation Alexandra Archer and Kyle Rouleau both gave statements that corroborated that Calvin Nodine had previously been making sexual comments about Nicole Chase and following her around. Archer's statement also corroborated that earlier in the day, Calvin Nodine had made unwanted sexual advances towards Nicole Chase.

138.  Detective Colangelo, with assistance from Officer Gompper, knowingly and intentionally, and/or with reckless disregard for the truth submitted false, misleading, and biased information that was material to the finding of probable cause.

139.  The warrant submitted by Detective Colangelo, with assistance from Officer Gompper, was submitted with malice, bias, in bad faith, and the product of corruption.

21

EXHIBIT A

## V.  LEGAL CLAIMS

### A.  Sexual assault Defendants

**COUNT ONE**      **(VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT – SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT - CONN. GEN. STAT. §46a-60(b)(8))(*Against Nodine's Smokehouse, Inc.*)**

140.  Paragraphs 1 through 59 are hereby incorporated by reference.

141.  Calvin Nodine's sexual assault constituted unwelcome sexual conduct.

142.  Calvin Nodine's unwelcome conduct substantially interfered with Nicole Chase's work performance and created an intimidating, hostile and offensive working environment.

143.  As a result of Calvin Nodine's behavior, Nicole Chase was constructively discharged.

144.  Calvin Nodine was Nicole Chase's supervisor.

145.  Calvin Nodine was Nodine's Smokehouse' agent.

146.  As a result of Nodine's sexual assault on Nicole Chase, she suffered a tangible employment action, to wit, she was constructively discharged.

147.  Defendant Nodine's Smokehouse, Inc. is legally responsible for Mr. Nodine's conduct in the workplace, as Mr. Nodine is an agent and/or representative of Nodine's Smokehouse.

148.  Defendant's conduct violated Conn. Gen. Stat. §46a-60(b)(8) of the Connecticut Fair Employment Practices Statute.

149.  As a result of defendant's conduct, has suffered and will continue to suffer lost earnings, medical expenses, pain, humiliation, loss of enjoyment of life activities, and emotional distress.

**COUNT TWO**      **(VIOLATION OF TITLE VII  – SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT -  42 USC §2000e, *et al*)(*Against Nodine's Smokehouse, Inc.*)**

22

EXHIBIT A

150. Paragraphs 140-149 are hereby incorporated by reference.

151. Defendant's conducted violated Title VII of the Civil rights act of 1964, as amended.

152. As a result of defendant's conduct, has suffered and will continue to suffer lost earnings, pain, humiliation, loss of enjoyment of life activities, and emotional distress.


**COUNT THREE**     **(VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT –RETALIATION - CONN. GEN. STAT. § 46A-60(a)(4))(Against Nodine's Smokehouse, Inc. )**

153. Paragraphs 150-152 are hereby incorporated by reference.

154. Calvin Nodine retaliated against Nicole Chase for reporting his conduct to the Canton Police department by making false statements to the police that she consented to the sexual assault. Nodine knew he was lying at the time that he made the statement to the police.

155. As a result of his false accusation, Ms. Chase was charged with filing a false statement and arrested. Ms. Chase's arrest aggravated her emotional distress and caused her to incur additional costs and legal fees to get the case dismissed.

156. Defendants retaliated against Ms. Chase for reporting the sexual assault to the police and making a claim for sexual harassment against them by making false claims to the Connecticut Department of Labor, Employment Security division (Unemployment) that her application for unemployment benefits was fraudulent.

157. As a result of the defendants' false claim, her receipt of unemployment benefits was delayed for several weeks.

158. Defendant did these retaliatory acts because Nicole Chase had opposed defendants' discriminatory practice.

23

EXHIBIT A

159.   Defendants did these retaliatory acts because Nicole chase had made a complaint to the police and threatened to file a complaint with the Connecticut Commission on Human Rights and Opportunities.

160.   Defendants' conduct caused Ms. Chase further aggravation of her emotional distress, and additional costs, to wit, attorney's fees.

161.   Defendants conduct was in violation of the Connecticut Fair Employment Practices Act, § 46a-60(b)(4).

**COUNT FOUR**         **(VIOLATION OF TITLE VII – RETALIATION (*Against Nodine's Smokehouse, Inc.*)**

162.   Paragraphs 153-161 are hereby incorporated by reference.

163.   Defendant did these retaliatory acts because Nicole Chase had opposed the defendant's discriminatory employment practices.

164.   Defendants did these retaliatory acts because Nicole Chase had made a complaint to the police and threatened to file a complaint with the Connecticut Commission on Human Rights and Opportunities.

165.   Defendants conduct violated Title VII, 42 USC §2000e-3(a).

**COUNT FIVE**         **(VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT – AIDING AND ABETTING - CONN. GEN. STAT. § 46A-60(a)(5))(*Against Calvin Nodine, Individually*)**

166.   Paragraphs 162- 165 are hereby incorporated by reference.

167.   Calvin Nodine, through his sexual assault and post-termination conduct described above, aided, abetted, incited, compelled and/or coerced Nodine's Smokehouse's discriminatory conduct.

24

EXHIBIT A

**COUNT SIX**          **(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**
                       *(Against Calvin Nodine and Nodine's Smokehouse)*

168.  Paragraphs 166-167 are hereby incorporated by reference.

169.  The defendants' conduct created an unreasonable risk of causing emotional distress to plaintiff, and defendant Nodine knew or should have known that such conduct was likely to result in emotional distress that might cause illness or bodily harm.

170.  The plaintiff's emotional distress was foreseeable to the defendant.

171.  The defendants' sexual assault on Ms. Chase caused her constructive discharge and was undertaken in the termination process.

172.  Defendant was not an employee when defendants' post-termination behavior, as described above, took place.

173.  As a result of the negligent conduct of the defendant, the plaintiff suffered and will continue to suffer in the future severe emotional distress.

174.  As a result of defendant's conduct, the plaintiff has suffered the injuries and losses described herein.

**COUNT SEVEN**          **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
                         *(Against Calvin Nodine and Nodine's Smokehouse)*

175.  Paragraphs 168 – 172 are hereby incorporated by reference as paragraphs.

176.  The defendant Calvin Nodine's conduct toward the plaintiff was intentional.

177.  Calvin Nodine's conduct was extreme and outrageous.

178.  Defendant Nodine's Smokehouse's post-termination conduct towards Nicole Chase was extreme and outrageous.

179.  As a result of the defendant's conduct, the plaintiff suffered severe emotional distress.

EXHIBIT A

180.  Defendant Nodine's Smokehouse is legally responsible for Calvin Nodine's conduct.

**COUNT EIGHT**      **(INTENTIONAL AND/OR RECKLESS ASSAULT AND BATTERY)**
                  ***(Against Calvin Nodine)***

181. Paragraphs 175-179 are hereby incorporated by reference.

182. The plaintiff was very distraught and humiliated, and she felt violated as a result of the defendant's conduct.

183.  The defendant intended to cause harmful or offensive contact with plaintiff without her consent and he intentionally placed the plaintiff in a position of imminent apprehension of harmful or offensive contact and/or to fear for her safety.

184.  The defendant willfully or voluntarily and intentionally committed the alleged conduct, and/or did so recklessly or under circumstances showing a reckless disregard of the consequences and of the plaintiff's rights and safety.

185.  As a result of defendant's conduct, Ms. Chase has suffered bodily harm.

186.  The plaintiff suffered personal embarrassment and humiliation, physical violation, emotional upset and anxiety, feelings of intimidation, invasion of her privacy, and extreme emotional distress as result of the defendant's conduct.

187.  As a result of the defendant's conduct, the plaintiff has suffered physical pain, suffering, and permanent disability.

188.  As a result of the defendant's conduct, the plaintiff has incurred and will continue to incur medical expenses, loss of income, and other damages.

189.  As a result of the defendant's conduct, the plaintiff has suffered an impairment of her ability to enjoy life's activities.

EXHIBIT A

**COUNT NINE     (NEGLIGENT ASSAULT AND BATTERY)***(Against Calvin Nodine)*

190.  Paragraphs 181-182 are hereby incorporated by reference.

191.  The defendant negligently caused offensive contact with the plaintiff without her consent and he negligently placed the plaintiff in a position of imminent apprehension of harmful or offensive contact or fear for her safety and caused her harm thereby.

192.  As a result of defendant's conduct, Ms. Chase has suffered bodily harm.

193.  The plaintiff suffered personal embarrassment and humiliation, physical violation, emotional upset and anxiety, feelings of intimidation, invasion of her privacy, and extreme emotional distress as result of the defendant's conduct.

194.  As a result of the defendant's conduct, the plaintiff has suffered physical pain, suffering, and permanent disability.

195.  As a result of the defendant's conduct, the plaintiff has incurred and will continue to incur medical expenses, loss of income, and other damages.

196.  As a result of the defendant's conduct, the plaintiff has suffered an impairment of her ability to enjoy life's activities.

**COUNT TEN          (INVASION OF PRIVACY)***(Against Calvin Nodine)*

197.  Paragraphs 190-191 are hereby incorporated by reference.

198.  The defendant's conduct invaded the plaintiff's privacy in that he intentionally intruded upon her physical and psychological solitude and seclusion in a highly offensive manner.

199.  As a result of the defendant's conduct, the plaintiff has suffered physical pain and suffering.

27

EXHIBIT A

200.  As a result of the defendant's conduct, the plaintiff has incurred and will continue to incur medical expenses, loss of income, and other damages.

201.  As a result of the defendant's conduct, the plaintiff has suffered an impairment of her ability to enjoy life's activities.

**COUNT ELEVEN   (FALSE IMPRISONMENT)*(Against Calvin Nodine)*

202.  Paragraphs 197-201 are hereby incorporated by reference.

203.  During the sexual assault, the defendant Calvin Nodine unlawfully restrained Nicole Chase, to wit, by pulling her into the men's bathroom and locking the door without her consent,

204.  As a result of the defendant's conduct, plaintiff suffered injury.

**COUNT TWELVE   (INTIMIDATION BASED ON BIGOTRY OR BIAS IN VIOLATION OF CONN. GEN. STAT. § 52-571c) *(Against Calvin Nodine and Nodine's Smokehouse)***

205.  Paragraphs 202 – 204 are hereby incorporated by reference.

206.  Defendant Calvin Nodine maliciously and with specific intent intimidated or harassed Ms. Chase because of Ms. Chase's sex and caused physical injury to her.

207.  Defendant maliciously, and with specific intent to intimidate or harass Ms. Chase because of Ms. Chase's sex, threatened to and did cause physical contact with her.

208.  Defendant Nodine injured the plaintiff as a result of the above alleged conduct in violation of Conn. Gen. Stat. §53a-181j, 53a-181k and/or 53a-181l.

209.  As a result of the defendant's conduct, plaintiff suffered injury.

210.  Defendant Nodine's Smokehouse, LLC is legally responsible for Calvin Nodine's conduct.

28

EXHIBIT A

**COUNT THIRTEEN**       **(MALICIOUS PROSECUTION)** *(Against Calvin Nodine and Nodine's Smokehouse, Inc. )*

211. Paragraphs 205-210  are hereby incorporated by reference.

212. On May 18, 2017, defendant Nodine lied to the Canton Police that his forcing the plaintiff to perform oral sex on him in the bathroom of a restaurant was consensual.

213. The defendants caused the plaintiff to be arrested and charged with the crime of False Statement, Conn. Gen. Stat. § 53a-157b upon the false information and request of the Defendant

214. Defendants knew that the alleged crime of false statement did not take place but requested the arrest of plaintiff and participated in the continuing prosecution of Ms. Chase despite the fact that defendant knew and/or had knowledge that the plaintiff was innocent of the charges.

215. The criminal proceedings have terminated in favor of the plaintiff.

216. The defendants acted without probable cause.

217. The defendants acted with malice, primarily for a purpose other than of bringing an offender to justice; their actions were in retaliation for Ms. Chase's complaint of sexual harassment and sexual assault, which were in fact true.

218. Defendant Nodine's actions were approved and ratified by defendant Nodine's Smokehouse in that it through its agents, did not conduct its own inquiry into the facts pertaining to the incidents complained of herein, did thereafter continue the membership, employment, and agency of defendant Nodine, did nothing to discipline or reprimand defendant Nodine, and did adopt the conduct and acts of Nodine as its own.

219. Defendants knew the information they gave to the police was false and knew that plaintiff was innocent, but defendants nevertheless persisted in the prosecution and the arrest.

29

EXHIBIT A

**B. Police Misconduct Defendants**

**COUNT FOURTEEN**     **(False Arrest – 42 USC §1983)(*Detective John Colangelo, Adam Gompper, Sgt. Mark J. Pepper in their Personal Capacity*)**

220.   Paragraphs 1-139 are incorporated herein by reference.

221.   At all times mentioned herein, defendants were acting under color of law.

222.   Defendant Colangelo arrested Nicole Chase without probable cause.

223.   Defendant Adam Gompper recklessly and/or deliberately contributed false and misleading information, omitted material exculpatory information, and distorted the context of the information used by Defendant Colangelo in the warrant.

224.   Mark J. Pepper approved the warrant and permitted its submission to the State's Attorney's Office and the Judge with deliberate and/or reckless disregard for the false, distorted, and misleading information contained therein, and the omission of material exculpatory information.

225.   The criminal case brought against Nicole Chase as a result of the arrest warrant terminated in her favor.

226.   Defendants unlawfully restrained Nicole Chase's liberty in violation of the Fourth Amendment of the United States Constitution.

227.   Defendants conduct towards Nicole Chase was in reckless or deliberate disregard of her rights.

228.   As a result of the defendants' conduct, Nicole Chase has suffered damages.

EXHIBIT A

**COUNT FIFTEEN**      **(False Arrest – 42 USC §1983)(*Detective John Colangelo, Officer Adam Gompper, Mark J. Pepper, and Christopher Arciero, acting in their official capacity*)**

229.  Paragraphs 220-228 are incorporated herein by reference.

230.  Defendants unlawfully restrained Nicole Chase's liberty in violation of the Fourth Amendment of the United States Constitution.

231.  Defendants' conduct towards Nicole Chase was in reckless and/or deliberate disregard of her rights.


**COUNT SIXTEEN**      **(False Arrest – Officer Gompper, Det. Colangelo, Sgt. Mark J. Pepper, Chief Christopher Arciero, and the defendant Town of Canton)**

232.  Paragraphs 220-228 are incorporated herein by reference.

233.  Defendants unlawfully restrained Nicole Chase's liberty.

234.  Defendants' conduct towards Nicole Chase was in reckless and/or deliberate disregard of her rights.


**COUNT SEVENTEEN**   **(Malicious Prosecution 42 USC §1983)(*Detective John Colangelo, Officer Adam Gompper, and Sgt. Mark J. Pepper in their Personal Capacity*)**

235.  Paragraphs 220-228 are incorporated herein by reference.

236.  At all times mentioned herein, defendants were acting under color of law.

237.   Defendants initiated criminal proceedings against Nicole chase without probable cause.

238.  The criminal case brought against Nicole Chase terminated in her favor.

239.  Defendants conduct violated her rights under the Fourth Amendment of the United States Constitution.

EXHIBIT A

240.  Defendants conduct towards Nicole Chase was in reckless or deliberate disregard of her rights.

**COUNT EIGHTEEN**         **(Malicious Prosecution 42 USC §1983)**(*Detective John Colangelo, Officer Adam Gompper, Sgt. Mark J. Pepper, and Chief Christopher Arciero in their Official Capacity*)

241.  Paragraphs 235-240 are incorporated herein by reference.

242.  Defendants conduct violated her rights under the Fourth Amendment of the United States Constitution.

**COUNT NINETEEN**         **(Malicious Prosecution – Common Law)**(*Detective John Colangelo, Officer Adam Gompper, Sgt. Mark J. Pepper, Chief Christopher Arciero and defendant Town of Canton*)

243.  Paragraphs 235-240 are incorporated herein by reference.

244.  Defendants initiated criminal proceedings against Nicole Chase without probable cause.

245.  The criminal proceedings terminated in Nicole Chase's favor.

246.  Defendants acted with malice.

247.  Defendants acted with malice and deliberate and/or reckless disregard of her rights.

**COUNT TWENTY**         **(Denial of Equal Protection – 42 USC §1983 – Chief Christopher Arciero, Detective John Colangelo, and Police Officer Adam Gompper, Sgt. Mark J. Pepper, in their personal  capacities)**

248.  Paragraphs 235-240 are incorporated herein by reference.

249.  The Town of Canton, and in particular, the Town of Canton Police Department maintained longstanding discriminatory practices against women.

EXHIBIT A

250. These practices were sufficiently well-settled to be considered custom and practice in the Canton Police Department.

251. These practices were so manifest as to result in the constructive acquiescence of senior policy-making officials in the Canton Police Force and the Town of Canton.

252. At the time of Ms. Chase's arrest, there were no women police officers in the Canton police department.

253. The Canton Police Department provided inadequate training for investigations of crimes against women.

254. The Canton Police department was riddled with stereotypical assumptions about women who report crimes of violence against men; it affected their ability to investigate these crimes and resulted in disparate outcomes in these investigations and treatment of female victims.

255. The Canton Police Department provided inadequate oversight of its officers investigating crimes of violence against women.

256. Women submitting claims of sexual assault or domestic violence were treated differently that males alleging criminal conduct.

257. Men accused of crimes were treated more favorably when the accuser was a female.

258. Defendants lack of respect in their treatment of Nicole Chase, failure to take her case seriously, failure to communicate with her about her case, failure to disclose that she was being treated as a criminal suspect, false arrest, and malicious prosecution constituted a denial of her right to Equal Protection under the Fifth and Fourteenth Amendments of the United States Constitution.

EXHIBIT A

259.  As a result of the defendants' longstanding customs and practice of discrimination and

hostility towards female victims of crimes of violence against men, Nicole Chase suffered injury.

260.  This conduct was in deliberate and/or intentional disregard of Ms. Chase's rights.

**COUNT TWENTY-ONE**   **(Denial of Equal Protection – 42 USC §1983 –**
                       **Chief Christopher Arciero, Detective John Colangelo, and**
                       **Police Officer Adam Gompper in their official capacities)**

261.  Paragraphs 248-260 are incorporated herein by reference.

262.  In addition to the other evidence of disparate treatment, defendants even treated Mr.

Nodine and Ms. Chase in a blatantly disparate manner in connection with their witness

interviews.

263.  According the arrest warrant, Calvin Nodine initially told the police, in the presence of

his attorney, that there had been no sexual contact between himself and Nicole Chase.

Subsequently he admitted that he had oral sex with Nicole Chase.

264.  Unlike Ms. Chase, Nodine was never arrested for his initial false statement to the police

about the events of the sexual assault.

265.  Defendants conduct constituted a violation of her right to Equal Protection of the laws

under the fifth and Fourteenth Amendments of the United States Constitution.

266.  This conduct was in deliberate and/or intentional disregard of Ms. Chase's rights.

**COUNT TWENTY-TWO**   **(Denial of Substantive Due Process – 42 USC §1983 –**
                       **Detective John Colangelo, and Police Officer Adam Gompper**
                       **in their unofficial capacities)**

267.  Paragraphs 261-266 are incorporated herein by reference.

34

EXHIBIT A

268. The behavior of the defendants towards Ms. Chase, a victim of sexual assault was an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience.

269. Their behavior towards her constituted a violation of her substantive due process rights, in violation of her Fourteenth Amendment rights under the United States Constitution.

**COUNT TWENTY-THREE**          **(Intentional Infliction of Emotional Distress – Common Law – Detective Colangelo, Officer Gompper, Town of Canton)**

270. Paragraphs 261-264 are incorporated herein by reference.

271. The behavior of defendants Colangelo and Gompper towards Nicole Chase was extreme and outrageous.

272. The behavior of defendants Colangelo and Gompper was deliberate and with reckless disregard to the likelihood that it would cause Nicole Chase extreme emotional distress.

273. As a result of their behavior, Nicole Chase has suffered extreme emotional distress.

274. The defendant town of Canton is liable for the conduct of Defendants Gompper and Colangelo.

**COUNT TWENTY-FOUR**          **(Negligent Infliction of Emotional Distress – Common Law – Detective Colangelo, Officer Gompper, Town of Canton)**

275. Paragraphs 270-271 are incorporated herein by reference.

276. The conduct of Defendants Gompper, and Colangelo created an unreasonable risk of causing emotional distress to plaintiff, and defendants knew or should have known that such conduct was likely to result in emotional distress that might cause illness or bodily harm.

35

EXHIBIT A

277.   The plaintiff's emotional distress was foreseeable to the defendants.

278.   As a result of the defendants' conduct, Nicole Chase suffered emotional distress.

279.   The defendant Town of Canton is legally responsible for the defendants' conduct.

EXHIBIT A

**PRAYER FOR RELIEF**

WHEREFORE the plaintiff claims:

(a) Economic damages for lost wages and medical expenses;

(b) Compensatory damages for emotional distress, loss of enjoyment of life's activities, pain, and humiliation;

(c) punitive damages pursuant to plaintiff's §1983, Title VII and Connecticut common law claims;

(d) treble damages fee pursuant to Conn. Gen. Stat. § 52-571c;

(e) prejudgment and post judgment interest at the statutory rate;

(f) attorneys' fees, costs and expenses;

(g) Injunctive relief enjoining the defendants from discriminating against female victims of sexual assault and other crimes of violence; and

(h) such other and further relief as to the Court deems just and proper under the circumstances.

THE PLAINTIFF,
NICOLE CHASE

By:_____

Lewis Chimes (Juris No. 303446)
Mary-Kate Smith (Juris No. 423804)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
Phone:  (203)32407744
Facsimile: (203)969-1319
Email: lchimes@chimeslaw.com
        msmith@chimeslaw.com

37

EXHIBIT A

**RETURN DATE:  MAY 8, 2018** _____ x

NICOLE CHASE,                          :        Dkt:  HHD-CV-17-5049825-S
                   Plaintiff,     :

                            :        **SUPERIOR COURT**
      VS.                           :

                            :
                            :        **JUDICIAL DISTRICT OF**
NODINE'S SMOKEHOUSE, INC.,             :
CALVIN NODINE, DETECTIVE               :        **HARTFORD**
JOHN COLANGELO, POLICE                 :
OFFICER ADAM GOMPPER,                  :
SGT. MARK J. PENNEY, POLICE            :        **April 10, 2018**
CHIEF CHRISTOPHER ARCIERO,             :
and the TOWN OF CANTON                 :
_____ x

## STATEMENT OF DEMAND

     The amount in demand is greater than Fifteen Thousand Dollars ($15,000), exclusive of

interest and costs.


                             THE PLAINTIFF,
                             NICOLE CHASE

               By:_____
                             Lewis Chimes (Juris No. 303446)
                             Mary-Kate Smith (Juris No. 423804)
                             Law Office of Lewis Chimes LLC
                             45 Franklin Street
                             Stamford, CT 06901
                             Phone:  (203)32407744
                             Facsimile: (203)969-1319
                             Email: lchimes@chimeslaw.com
                                     msmith@chimeslaw.com

EXHIBIT A

D.N.: HHD-CV17-5049825-S       :      SUPERIOR COURT

                                         :

NICOLE CHASE                      :      JUDICIAL DISTRICT OF HARTFORD

                                           :

                VS.                :

                                           :

NODINE'S SMOKEHOUSE, INC.; and    :

CALVIN NODINE                   :      APRIL 10, 2018

**WRIT OF ATTACHMENT**

TO ANY PROPER OFFICER:

GREETING:

       BY THE AUTHORITY OF THE STATE OF CONNECTICUT, in accordance with an order entered on the 22nd day of March, 2018 by the Honorable Judge David M. Sheridan of the Superior Court of Connecticut, in the Judicial District of Hartford (copy attached),

       YOU ARE HEREBY COMMANDED to secure the sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($750,000) by attaching sufficient property of the defendants, Nodine's Smokehouse, Inc. and Calvin Nodine (and their agent), to secure said sum as follows:

       Attaching real property owned by Nodine's Smokehouse, Inc. and Calvin Nodine and/or their affiliates, including:

       (1) certain real property commonly known as 399 Greenwoods Road, Norfolk, Connecticut, 06058 owned by Calvin Nodine; and

       (2) certain real property commonly known as 668 Riverside Road, Torrington, CT owned by C Nodine Realty LLC; and

       (3) certain real property located at 65 Fowler Avenue, Torrington, CT, owned by Ronald and Johanne Nodine.

       Schedules A for the above three properties are attached hereto.

       This Writ of Attachment is issued pursuant to Connecticut General Statutes §52-278a *et seq.* and is issued in conjunction with an Order in the above-referenced action by the Court, a copy

EXHIBIT A

of which is annexed hereto.

Of this writ with your actions thereon make due return.

Dated at Stamford, Connecticut, this 10th day of April, 2018.


THE PLAINTIFF,
NICOLE CHASE


By:
Lewis Chimes (Juris No. 303446)
Mary-Kate Smith (Juris No. 423804)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
Phone:  (203)32407744
Facsimile: (203)969-1319
Email: lchimes@chimeslaw.com
            msmith@chimeslaw.com

EXHIBIT A

# SCHEDULE A FOR PROPERTY 1

EXHIBIT A

(ı) 347 Greenwoods Road East, Norfolk CT

## SCHEDULE A

A single piece or parcel of land situated southerly of Colebrook Road, also known as Route No. 182, in the town of Norfolk, County of Litchfield, and State of Connecticut, consisting of two (2) formerly separate pieces or parcels of land described as follows:

FIRST PIECE:

Lot No. 6 on a survey entitled "Plan of Sub-Division  Land Owned by Roger B. & Barbara W. Rudder  Colebrook Road, Route No. 182 & Winsted Road, Route No. 44  Norfolk, Connecticut  Scale 1" = 100'  October, 1975," prepared by Edward F. Reuber, Surveyor  Hodge Surveying Associates, P.C., which survey has been placed on file in the Office of the Norfolk Town Clerk as Map Number

SECOND PIECE:

Parcel "B," containing 20.00± acres, on a survey entitled "Property Survey  Lot line Revision  Prepared for 114 Colebrook Road LLC  114 Colebrook Road  Norfolk, Connecticut  Scale 1" = 100'," dated October, 2011, prepared by Robert C. Sterling, Licensed Land Surveyor, GM2 Associates, Inc., 16 Bird Street, Torrington, Connecticut, which survey has been placed on file in the Office of the Norfolk Town Clerk as Map Number

EXHIBIT A

(1) 317 Greenwoods Road



EXHIBIT A



EXHIBIT A

# SCHEDULE A FOR PROPERTY 2

EXHIBIT A

(2) 668 Riverside Road, Torrington CT

## SCHEDULE A

A certain piece or parcel of land with all buildings and other improvements thereon, situated on the easterly side of Riverside Avenue in the Town of Torrington, County of Litchfield and State of Connecticut, bounded and described as follows:

NORTHERLY:    by land now or formerly of the City of Torrington, 144 feet, more or less;

EASTERLY:    by the west branch of the Naugatuck River;

SOUTHERLY:    by land now or formerly of Frederick Zavatkay; and

WESTERLY:    by public highway known as Riverside Avenue.

Said premises contains 2.597± acres as shown on a map entitled "2.597± ACRES PROPERTY BOUNDARY SURVEY PREPARED FOR RIVERSIDE ROLLER PARK RIVERSIDE AVENUE TORRINGTON, CONNECTICUT SCALE 1"=30' OCTOBER 1997 ZONED LB", prepares by S. P. Bertaccini, Land Surveyors, which map is on file as Map #4302 in the Office of the Town Clerk of Torrington.

EXHIBIT A

(2) 668 Riverside Road, Torrington CT



EXHIBIT A

# SCHEDULE A FOR PROPERTY 3

EXHIBIT A

(3) 65 Fowler Avenue, Torrington, CT

<u>SCHEDULE A</u>

<u>FIRST PIECE:</u>

A certain parcel of land with buildings and improvements thereon located at the intersection of the westerly line of Avenue A and the northerly line of Fowler Avenue, in the City of Torrington, County of Litchfield, State of Connecticut, more particularly bounded and described as follows:

Commencing at a point marking the intersection of the westerly line of said Avenue A and the northerly line of Fowler Avenue; thence running N. 70° 36' 30" W. 186.58 feet along the northerly line to a point marking the southeasterly corner of land of Connecticut Light and Power Company; thence running along the easterly line of land of the Connecticut Light and Power Company N. 7° 28' 50" E. 101.39 feet to a point; thence continuing along the easterly line of said Connecticut Light and Power Company, N. 19° 26' 05" E. 31.13 feet to an iron pin in the southerly line of land of John J. and Linda M. Salamacha; thence running along the southerly line of said John J. and Linda M. Salamacha, in part, and in part along the southerly line of land of Raymond A. Leone, S. 70° 38' 25" E., a total distance of 89.58 feet to an existing iron pin; thence running N. 23° 46' 25" E. 48.11 feet to a point marking the southwesterly corner of land of David B. Johnson, Jr. and Lee H. Johnson; thence running along the southerly line of land of David B. Johnson, Jr. and Lee H. Johnson; thence S. 70° 38' 10" E. 129.62 feet to an existing iron pin set in the westerly line of said Avenue A; thence running along the westerly line of said Avenue A, S. 24° 19' 15" W. 179.08 feet to the point and place of beginning.

<u>SECOND PARCEL:</u>

A certain parcel of land with improvements thereon located on the southerly side of Fowler Avenue in the City of Torrington, County of Litchfield, State of Connecticut, more particularly bounded and described as follows:

Commencing at a point marking the intersection of the southerly line of Fowler Avenue and the westerly line of Avenue A; thence running along the westerly line of Avenue A, S. 24° 19' 15" W. 109.19 feet to a point in the northerly line of land of the State of Connecticut; thence running along the northerly line of the State of Connecticut, N. 75° 19' 30" W. 128.15 feet to an existing concrete monument; thence running along the easterly line of land of Connecticut Light and Power Company, N. 24° 00' 05" E. 119.71 feet to a point in the southerly line of Fowler Avenue; thence running along the southerly line of Fowler Avenue, S. 70° 36' 30" E. 127.48 feet to the point and place of beginning.

The above two parcels are shown on map entitled, "MAP OF LAND TO BE CONVEYED BY TORRINGTON KNITTING MILLS, INC. TO RONALD F. NODINE & JOHANNE E. NODINE TORRINGTON, CONNECTICUT   SCALE:   1" = 20'   DECEMBER 14, 1987", prepared by David J. Little, Licensed Land Surveyor CT #13303, which map is on file in the office of the Town Clerk of Torrington as Map No. 3149 to which reference is hereby made for a more particular description of said premises

EXHIBIT A



EXHIBIT A

DOCKET NO: HHDCV175049825S

CHASE, NICOLE
  V.
NODINE'S SMOKEHOUSE Et Al

ORDER    431199

SUPERIOR COURT

JUDICIAL DISTRICT OF HARTFORD
  AT HARTFORD

3/22/2018

<u>ORDER</u>

ORDER REGARDING:
03/22/2018 105.00 CASEFLOW REQUEST (JD-CV-116)

The foregoing, having been considered by the Court, is hereby:

ORDER:

The Stipulated Prejudgment Remedy dated March 22, 2018 is approved, incorporated as if fully set forth herein, and entered as an order of the court, effective this date.

Judicial Notice (JDNO) was sent regarding this order.

431199
_____

Judge: DAVID M SHERIDAN

EXHIBIT A

Page 1 of 1

D.N.:  HHD-CV17-5049825-S        :      SUPERIOR COURT

                                  :

NICOLE CHASE                 :      JUDICIAL DISTRICT OF HARTFORD

         VS.                   :

                                    :

NODINE'S SMOKEHOUSE, INC.; and    :
CALVIN NODINE               :      MARCH 23, 2018

## STIPULATED PREJUDGMENT REMEDY

     The defendants, Nodine's Smokehouse, Inc. and Calvin Nodine, hereby stipulate to a prejudgment remedy, pursuant to Connecticut General Statutes § 52-278a, *et. seq.*

     I.  The defendants, Nodine's Smokehouse, Inc. and Calvin Nodine, jointly and severally, agree that to secure the sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($750,000), the plaintiff may cause to be issued an attachment and/or garnishment of sufficient property of the defendants as shall be identified as set forth in their financial disclosure affidavits or depositions and, including but not limited to:

     (1) certain real property commonly known as 399 Greenwoods Road, Norfolk, Connecticut, 06058 owned by Calvin Nodine; and

     (2) certain real property commonly known as 668 Riverside Road, Torrington, CT owned by C Nodine Realty LLC;

     (3) certain real property located at 65 Fowler Avenue, Torrington, CT, owned by Ronald and Johanne Nodine.

     II.  The defendants, Nodine's Smokehouse, Inc. and Calvin Nodine, also stipulate that the Motion to disclose assets shall be granted as follows:

     1.      Within 30 days of the entrance of this order, Calvin Nodine, or his duly authorized representative will provide an affidavit under oath identifying with specificity all of his real or personal property.

EXHIBIT A

2.      Within 90 days of this order, defendant Nodine's Smokehouse, Inc., through its duly authorized representative, will provide an affidavit under oath identifying with specificity all real or personal property owned by the company.

3.      Each affidavit shall include the following:

    a.      Proof that affiant has express authority from Nodine's Smokehouse or Calvin Nodine to provide the information contained therein;

    b.      Certification that affiant conducted due diligence to determine with reasonable accuracy all assets;

    c.      All real property owned by Nodine's Smokehouse or Calvin Nodine, Ronald Nodine and/or Johanne Nodine, related in any way to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store, C Nodine Realty, or any other entity owned in whole or in part by Calvin Nodine, Ronald Nodine, or Johanne Nodine.[1]

    d.      As to the real property identified:

        i.      Any appraisal or assessment done of the property in the past five years;

        ii.      Any mortgages or other liens on the property;

        iii.      The amount currently due under each mortgage or lien;

        iv.      The schedule of payments under each mortgage;

        v.      The property taxes due on the property;

        vi.      Whether the property has any tenants;

        vii.      The terms of the lease of any tenant/lessee, including, but not limited to the name and address of the tenant/lessee; the length of the lease; the monthly amount due under the lease;

    e.      All bank accounts, including general operating accounts, payroll accounts,

---

[1] This order does not authorize disclosure nor seek attachment of the primary residence, furniture, fixtures or personal property contained therein of Ronald or Johanne Nodine.

EXHIBIT A

or capital accounts for Nodine's Smokehouse or Calvin Nodine, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store and  C Nodine Realty, or any other business owned in whole or in part by Calvin Nodine.[2] All bank accounts in the name of Ronald Nodine and/or Johanne Nodine should be identified to the extent that the accounts relate to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store, C Nodine Realty.[3]

    f.      As to each bank account identified:

        i.      The identity of the bank and its branch location.

        ii.      The identity of the party or parties to the account.

        iii.      The account number of the account.

        iv.      The current balance in the account;

        v.      The balance in the type of account on November 1, 2017.

    g.      Any line of credit held by Nodine's Smokehouse or Calvin Nodine, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store and C Nodine Realty, or any other business owned in whole or in part by Calvin Nodine.  All lines of credit in the name of Ronald Nodine and/or Johanne Nodine should be identified to the extent that the accounts relate to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store, C Nodine Realty.[4]

    h.      As to each line of credit identified:

        i.      The identity of the institution holding the line of credit;

        ii.      The identity of the party or parties to the line of credit;

---

[2]    This order does not authorize nor seek disclosure of any 401K or profit sharing account.
[3]    This order does not authorize disclosure nor seek attachment of the personal bank accounts of Ronald or Johane Nodine.
[4]    This order does not authorize disclosure nor seek attachment of any home equity loan on the primary residence of Ronald or Johanne Nodine.

EXHIBIT A

        iii.      The account number of the account.

        iv.      The total amount of credit available.

        v.      The current amount of debt.

        vi.      The amount of debt on November 1, 2017.

i.      all furniture, fixtures, equipment located at 65 Fowler Avenue, Torrington Connecticut;

j.      all furniture, fixtures, and equipment located at 192 Albany Turnpike, Canton Connecticut;

k.      all furniture, fixtures, and equipment located at 39 North Street, Goshen, Connecticut;[5]

l.      all furniture, fixtures, and equipment located at 668 Riverside Road, Torrington, CT;

m.      As to the furniture, fixtures and equipment listed above:

        i.      The cost of the equipment;

        ii.      Any appraisal of the value of the equipment in the past ten years;

        iii.      Any lien on the equipment;

        iv.      Whether the equipment is owned or leased;

        v.      The terms of any lease and option to buy at the expiration of the lease;

n.      Any funds held in trust on behalf of Ronald Nodine;

o.      For any funds identified:

        i.      The identity of the trustee;

        ii.      The name and address of the institution or person holding the funds;

---

[5] This order does not authorize disclosure nor seek attachment of the primary residence, furniture, fixtures or personal property contained therein of Ronald or Johanne Nodine.

EXHIBIT A

  iii.  The current balance of the identified funds;

  iv.  The balance of the funds on November 1, 2017.

p.  Any debts or accounts receivable owing to Nodine's Smokehouse or Calvin Nodine, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store and C Nodine Realty, or any other business owned in whole or in part by Calvin Nodine.  Any debts owing to Ronald Nodine and/or Johanne Nodine should be identified to the extent that they relate to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store.

q.  As to any debt, account receivable identified:

  i.  The name and address of the debtor;

  ii.  The amount of the debt;

  iii.  The amount of the debt on November 1, 2017.

r.  Any other assets, including, but not limited to securities, partnership interests, cash on hand, of Nodine's Smokehouse or Calvin Nodine, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store and  C Nodine Realty, or any other business owned in whole or in part by Calvin Nodine. Any debts owing to Ronald Nodine and/or Johanne Nodine should be identified to the extent that they relate to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store.  Any assets should be identified by address and location, value, with sufficient particularity to serve an attachment.

s.  Any insurance policies, including but not limited to employment practices policies, commercial liability policies, excess coverage policies, umbrella policies, declaration sheets relevant to coverage of the claims in the instant case, any correspondence with any insurance companies in this matter

EXHIBIT A

indicating whether notice has been provided, or there has been a declination or reservation of rights.

t.  Each affiant shall identify any and all assets as described above that have been transferred, disposed of, spent, concealed or encumbered in any way since November 1, 2018, even if the asset is no longer in the custody or control of Calvin Nodine or Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store and  C Nodine Realty, or any other business owned in whole or in part by Calvin Nodine.  Any debts owing to Ronald Nodine and/or Johanne Nodine should be identified to the extent that they relate to the operation of Nodine's Smokehouse, Nodine's Smokehouse Deli and Restaurant, Nodine's Gourmet Store.

u.  As to each asset identified above in paragraph t:

  i.  The date of the transfer, disposal, encumbrance;

  ii.  The amount of the transfer, disposal, encumbrance;

  iii.  Any consideration received for the  transfer, disposal, encumbrance.

v.  Each affiant may submit documents in lieu of answers in the affidavit, so long as the documents provided provide the information requested.

III.  The plaintiff reserves the right to take additional depositions within 30 days of the submission of the affidavits if the affidavits are insufficient or incomplete.

IV.  The defendants shall not transfer, dispose of, injure, conceal or in any way encumber, outside of the ordinary course, money or property of the defendants until their assets are sufficiently disclosed to the plaintiff and the plaintiff has attached and/or garnished sufficient property of the defendants to secure the sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($750,000).

V.  If the defendants will remain obligated to disclose all assets in the affidavits,

EXHIBIT A

notwithstanding that they may object the attachment of any certain assets.  If the defendant objects to the attachment of any asset in the disclosure it reserves the right to move to dissolve the attachment and/or substitute another asset in its place.

VI.  The defendants reserve the right at any time to move to modify the PJR for any reason, or to move to substitute a bond, or if they provide proof of sufficient insurance coverage.

VII.  the parties agree to cooperate in good faith to provide adequate assurances to the plaintiff of the preservation of her potential remedy without interfering with the operation of the defendants' business.

VII.    The parties agree that this Stipulated Prejudgment Remedy and Disclosure of Assets is fair and reasonable under the circumstances; this Stipulated Prejudgment Remedy shall be governed, construed and enforced in accordance with the laws of the State of Connecticut; and the Superior Court of the State of Connecticut, Judicial District of Hartford shall have exclusive jurisdiction and venue over any disputes arising out of this Stipulated Prejudgment Remedy.

ATTORNEYS FOR PLAINTIFF

By:__/Lewis Chimes/_____
Lewis Chimes (Juris No. 303446)
Mary-Kate Smith (Juris No. 423804)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
Tel: 203-324-7744
Fax: 203-969-1319
lchimes@chimeslaw.com
msmith@chimeslaw.com

ATTORNEYS FOR DEFENDANT
NODINE SMOKEHOUSE, INC.

ATTORNEY FOR DEFENDANT NODINE

By:___/David A. Moraghan_____
        David A Moraghan
        Smith Keefe Moraghan & Waterfall LLC
        Torrington, CT 06790
        dam@skmwlaw.com
        Tel:  860-482-7651
        Fax:  860-482-7845

EXHIBIT A

By: _____
Elizabeth Acee (Juris No.428872)
LeClairRyan PLLC
545 Long Wharf Drive 9th Floor
New Haven, CT 06511
Tel: 203-672-3203
Fax: 203-672-3239
elizabeth.acee@leclairryan.com

8

EXHIBIT A