UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **NICOLE CHASE** | : | **NO.: 3:18-cv-00683 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **NODINE'S SMOKEHOUSE, INC., CALVIN** | : | |
| **NODINE, TOWN OF CANTON, JOHN** | : | |
| **COLANGELO, ADAM GOMPPER, MARK J.** | : | |
| **PENNEY, AND CHRISTOPHER ARCIERO** | : | **JULY 24, 2018** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, TOWN OF CANTON, JOHN COLANGELO, ADAM GOMPPER, MARK J. PENNEY AND CHRISTOPHER ARCIERO'S, MOTION TO DISMISS**

      The undersigned defendants, TOWN OF CANTON, JOHN COLANGELO, ADAM GOMPPER, MARK J. PENNEY and CHRISTOPHER ARCIERO ("Canton defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

**I.**      **BACKGROUND**

      The Complaint in this matter was filed in state court on April 17, 2018, against the co-defendants, Nodine's Smokehouse, Inc. and Calvin Nodine, and the Canton defendants, Town of Canton, Detective John Colangelo, Officer Adam Gompper, Sergeant Mark J. Penney and Chief of Police Christopher Arciero.  The Canton defendants removed the matter to this Court based on its jurisdiction over the federal questions raised, on April 20, 2018, with the consent

of the co-defendants.  Said defendants now move for dismissal of all claims directed toward them pursuant to Fed.R.Civ.P. 12(b)(6).

Counts Fourteen through Twenty-four of the plaintiff's Complaint are directed toward the Canton defendants and purport to bring § 1983 claims against the individual defendants in both their individual and official capacities for false arrest, malicious prosecution, denial of equal protection, and denial of substantive due process.  In addition, the plaintiff purports to bring state law claims against said defendants for false arrest, malicious prosecution, negligent infliction of emotional distress, and intentional infliction of emotional distress.

The Complaint alleges that the plaintiff was sexually assaulted by her employer, Calvin Nodine, on the evening of May 6, 2017.  (Compl., Preliminary Statement, ¶ 1; Statement of Facts, ¶ 45.)  The plaintiff alleges that Nodine pulled her into the men's room of his restaurant and forced her to perform oral sex on him.  (Compl., ¶ 46.)  She alleges that, on the following morning, she reported the sexual assault to police officers of the Canton Police Department ("CPD").  (Compl., Preliminary Statement, ¶ 2; Statement of Facts, ¶ 60.)  She met with defendant Adam Gompper and relayed the details of the assault.  (Id. at ¶ 64.)  She left out the fact that Calvin Nodine had forced her to perform oral sex on him.  (Id. at ¶ 101.)  She told Officer Gompper that she was not sure whether she wanted to make a formal complaint to which Gompper responded that if she filed a complaint, he would interview Mr. Nodine.  (Id. at ¶ 70.)

The plaintiff alleges that, on May 11, 2017, she returned to the police department and spoke to Officer Gompper a second time.  (Compl., ¶ 72.) Gompper typed up a statement which she signed.  (Id.)  In the statement, the plaintiff reiterated that Calvin Nodine had sexually assaulted her.  (Id. at ¶ 73.) After the plaintiff provided the statement, Gompper told her that officers would interview Mr. Nodine and then submit a warrant and see if it would get signed by a Judge.  (Id. at ¶ 77.)

Plaintiff alleges that, according to the warrant for her arrest, defendants, John Colangelo and Adam Gompper, interviewed Calvin Nodine on May 18, 2018.  (Compl., ¶ 81.)  According to the warrant, Nodine initially denied any sexual encounter between himself and the plaintiff.  (Id. at ¶ 82.)  After speaking privately with his attorney, Nodine explained to the officers that the plaintiff had performed oral sex on him in the bathroom and it was consensual.  (Id. at ¶ 83.)

Plaintiff alleges that she subsequently spoke to Officer Gompper who advised her that Calvin Nodine had been interviewed and officers needed several more weeks to investigate the case.  (Id. at ¶ 86.)  Over a month passed during which time the plaintiff received no additional information from the CPD. (Id. at ¶ 87.)

Plaintiff alleges that, on June 21, 2018, she was asked to come to the CPD. (Compl., ¶ 88.)  Once there, she met with Detective Colangelo who recorded his interview with her.  (Compl., ¶¶ 89-109.)  Colangelo asked the plaintiff to tell her

story again.  (Compl., ¶ 96.)  Colangelo told the plaintiff that Calvin Nodine had told him that he had oral sex with the plaintiff and that it was consensual.  (Id. at ¶ 100.)  Plaintiff then advised Colangelo that Nodine had forced her to perform oral sex on him and that it was not consensual.  (Id. at ¶ 104.)  Plaintiff had previously left this fact out of her statements to the police.  (Id. at ¶ 101.)  Colangelo then told the plaintiff that she had made a false statement to which the plaintiff replied that her statement was not false.  (Id. at ¶ 108.)  Colangelo asked the plaintiff if she wanted to revise her written statement and she told him that she did but that she wanted to consult with her attorney first.  (Id. at ¶ 109.)  Several days later, the plaintiff attempted to contact Colangelo to correct her written statement but was told that he was away on vacation.  (Id. at ¶ 110.)

Plaintiff alleges, according to the arrest warrant, Detective Colangelo signed the warrant charging the plaintiff with making a false statement, in violation of Connecticut General Statutes § 53a-57b, on July 7, 2017.  (Compl., ¶ 111.)  The warrant was signed and sworn to by Colangelo on July 17, 2017 [sic][1], by the Assistant State's Attorney on August 30, 2017, and by the court on September 6, 2017.  (Id. at ¶¶ 121-122.)  On September 8, 2017, Colangelo arrested the plaintiff for making a false statement in violation of General Statutes § 53a-57b.  (Id. at ¶ 123.)  On November 6, 2017, the State's Attorney's Office

---

[1] The arrest warrant, attached hereto as Exhibit A, was signed and sworn to by Detective Colangelo on July 7, 2017.

entered an unconditional nolle prosequi and the case was dismissed by the court.  (Compl., ¶ 127.)

Plaintiff goes on to allege that the "warrant submitted to the court was so lacking in the indicia to support the charge of Making a False Statement that no reasonable police officer trained in interviewing victims of sexual assault could believe there was probable cause to arrest [her] for making a false statement." (Id. at ¶ 130.)

Plaintiff's arrest warrant affidavit is attached hereto as EXHIBIT A, and her written statement as EXHIBIT B.

## II.    LAW AND ARGUMENT

### A.    STANDARD OF REVIEW.

"In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court evaluates the sufficiency of the . . . complaint under the 'two-pronged approach' suggested by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)."  Gale v. Smith & Nephew, Inc., 12 CV 3614 (VB), 2013 WL 563403, at *1 (S.D.N.Y. Feb. 13, 2013).  "First, plaintiff's legal conclusions and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss."  Id. (citing Ashcroft, at 678, 129 S.Ct. 1937; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010)).  "Second, '[w]hen there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (citing Ashcroft, at 679, 129 S.Ct. 1937).

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the . . . complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

The court's determination of whether a claim has facial plausibility "is a context-specific task that draws on both 'judicial experience and common sense.'"  Grega v. Pettentgill, 123 F.Supp.3d 517, 533 (D. Vermont Aug. 18, 2015) (quoting Ashcroft v. Iqbal, 566 U.S. at 678-79).  "If a plaintiff has failed to 'nudge [ ] [his] claims across the line from conceivable to plausible,' Twombly, 550 U.S. at 570, 127 S.Ct. 1955, the claims must be dismissed."  Id.

"When reviewing a Rule 12(b)(6) motion to dismiss, the court's consideration is limited to 'the facts as presented within the four corners of the complaint . . . or to documents incorporated within the complaint by reference.'"

<u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002).  The court may also consider documents in the public record.  <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998).  <u>Id.</u> at *9.

**B.    THE PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AGAINST ANY OF THE CANTON DEFENDANTS.**

As a preliminary matter, none of the plaintiff's claims directed toward the Canton defendants set forth in the Complaint are "plausible" and should be dismissed on this basis.

As set forth above, a plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, <u>supra</u>, 550 U.S. 678 (citation omitted).  In the instant matter, the plaintiff in each count directed toward the Canton defendants incorporates by reference all prior allegations and then briefly states her cause of action in a conclusory manner.  "Such 'claim[s], without facts other than a clause incorporating the plaintiff's prior allegations by reference, [are] insufficient to show the plaintiff is entitled to relief.'"  <u>Moore v. City of New York</u>, No. 08-CV-2449 (RRM)(LB), 2011 WL 795103, at *7 (E.D.N.Y., Feb. 28, 2011) (quoting <u>Lawrence v. City Cadillac</u>, 10-CV-3324 (PKC), 2010 U.S. Dist. LEXIS 132761, at *24 (S.D.N.Y. Dec. 8, 2010)) (citing Fed.R.Civ.P. 8(a)(2); <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>, 550 U.S. 544 at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929; <u>Brandon v. City of New York</u>, 705 F.Supp.2d, 261, 268-69 (S.D.N.Y. 2010) ("Such general

allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which it rests.")).

Moreover, a court must "look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those allegations [by the plaintiff]."  Sabilia v. Richmond, No. 11 Civ. 739 (JPO)(MHD), 2011 WL 7091353, at *26 (S.D.N.Y. Oct. 26, 2011).  Although the plaintiff affixes labels on her claims as arising pursuant to various federal statutes and/or constitutional amendments, each claim fails to set forth factual allegations sufficient to state claims pursuant to the referenced statutes/ amendments or any other cognizable claim for that matter.

All of the plaintiff's claims directed toward the Canton defendants fail on this general basis.  Further, certain counts fail on the additional grounds set forth below.

### 1.   Counts Fourteen Through Nineteen Fail To Allege Cognizable Claims For False Arrest And Malicious Prosecution.

The plaintiff's claims for false arrest and malicious prosecution pursuant to the Fourth Amendment and § 1983 fail to state a claim because her arrest was made pursuant to an arrest warrant issued by a state superior court judge.

False arrest and malicious prosecution claims under § 1983 are evaluated under state law.  Davis v. United States, 430 F.Supp.2d 67, 79, 80 (D.Conn. 2006) (false arrest and malicious prosecution claims filed "pursuant to § 1983 or *Bivens* are governed by state substantive law") (citation omitted).  The plaintiff's claims for false arrest and malicious prosecution are based on the Fourth Amendment.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 114-19 (2d Cir. 1995).  To prove a violation of the Fourth Amendment in this context, the plaintiff must show, inter alia, that she was arrested and/or prosecuted without probable cause.  See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (stating that "[i]f probable cause [exists], no constitutional violation of the plaintiff's Fourth Amendment rights has occurred").

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Jenkins v. City of New York, 478 F.3d 76, 84-85 (2d Cir. 2007) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (alteration in original)).  Federal courts evaluate probable cause in light of the totality of the circumstances.  Id. at 90-91.  Likewise, under Connecticut law, probable cause "comprises such facts 'as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe' that criminal activity has occurred."  State v. Barton, 219 Conn.

529, 548, 594 A.2d 917 (1991) (quoting <u>Stone v. Stevens</u>, 12 Conn. 219, 230 (1837)); <u>see</u> <u>also</u>, <u>State v. Heinz</u>, 193 Conn. 612, 617, 480 A.2d 452 (1984) (defining probable cause as a standard "less demanding than that which attends an inquiry into whether there has been a prima facie showing of criminal activity. Instead, all that is required is that the affidavit, read in a common-sense manner, gives objective evidence of a fair probability that proscribed activity has occurred." (citations omitted)).

"[P]robable cause does not require a police officer to be certain that the individual arrested will be prosecuted successfully."  <u>Krause v. Bennett</u>, 887 F.2d 362, 371 (2d Cir. 1989).  Also, "[n]ormally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause . . . and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden."  <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991).  Such a plaintiff may carry this burden if she can demonstrate that the defendant officer "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, . . . [where] such false or omitted information was necessary to the finding of probable cause."  <u>Soares v. Connecticut</u>, 8 F.3d 920 (citations and internal quotation marks omitted).  Furthermore, even where a misrepresentation or an omission is included in an

affidavit, the affidavit may nevertheless support the valid warrant if information contained in the affidavit, independent of the defective portion, supports a probable cause finding.  United States v. Frost, 999 F.2d 737, 742-743 (3d Cir.1993), cert. denied, 510 U.S. 1001 (1993).

Defendant Colangelo had probable cause to arrest the plaintiff because a valid arrest warrant had been issued by a judge.  The plaintiff specifically alleges that there was a warrant for her arrest.  Although the plaintiff alleges in a conclusory fashion that defendant, Adam Gompper, "recklessly and/or deliberately contributed false and misleading information, omitted material exculpatory information, and distorted the context of the information used by Defendant Colangelo in the warrant," and that Sergeant Penney "approved the warrant and permitted its submission to the State's Attorney's Office and the Judge with deliberate and/or reckless disregard for the false, distorted, and misleading information contained therein, and the omission of exculpatory information," such allegations are insufficient to state a legally viable claim for false arrest and/or malicious prosecution.  The plaintiff will likely argue that the manner in which she alleges the defendant officers misrepresented the facts to the judge reviewing the warrant application is set forth in other paragraphs incorporated within Counts Fourteen through Nineteen by reference.  However, even under the most liberal reading of the entire Complaint, it is unclear exactly what information the plaintiff claims was false and/or was omitted from the

warrant application, which information would have negated the finding of probable cause.

Accordingly, this Court should dismiss the false arrest and malicious prosecution claims directed against said defendants.  See Tyrus v. Newton, No. 3:13-cv-14986 (SRU), 2015 WL 5306550 (D. Conn. 2015) (dismissing plaintiff's false arrest and malicious prosecution claims where plaintiff conceded that an arrest warrant had been issued for his arrest on federal criminal charges and there were no allegations that defendant ATF agents materially misled judge to believe probable cause existed for plaintiff's arrest on federal drug possession charge).

>   2.   **Counts Twenty And Twenty-one Fail To Allege Cognizable Claims For Violation Of Plaintiff's Right To Equal Protection.**

Counts Twenty and Twenty-one of the Complaint, captioned "Denial of Equal Protection," purport to allege a claim for violation of the plaintiff's right to equal protection under the law and appears to be based upon selective enforcement or adverse enforcement.  As is more fully set forth below, the Complaint wholly fails to state a plausible claim for relief for selective enforcement or pursuant to a class of one theory of liability.

>   a.   **Selective Enforcement**

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike."  City of Cleburne

v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S. Ct. 3249 (1985).

Typically, the Equal Protection Clause is invoked to bring claims alleging

discrimination based upon membership of a protected class, such as race, sex

or religious affiliation.  See Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).

The Equal Protection Clause "may be violated by selective enforcement or

selective adverse treatment."  Bush v. City of Utica, N.Y., 558 Fed.Appx. 131, 134

(2d Cir. 2014).  In order to state such a claim,

> a plaintiff must allege (1) that he or she was treated
> differently from other similarly situated individuals, and
> (2) that the treatment was based upon impermissible
> considerations such a race, religion, intent to inhibit or
> punish the exercise of constitutional rights, or
> malicious or bad faith intent to injure a person.

Id. (internal quotations omitted) (quoting LeClair v. Sanders, 627 F.2d 606, 609-

10 (2d Cir. 2005); Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.

2001)).

    In the instant matter, the plaintiff alleges that the CPD maintained

longstanding discriminatory practices against women and "was riddled with

stereotypical assumptions about women who report crimes of violence against

men; it affected their ability to investigate these crimes and resulted in disparate

outcomes in these investigations and treatment of female victims."  (Compl.,

Count Twenty, ¶ 254.)  She goes on to allege that women submitting claims of

sexual assault and domestic violence were treated differently than males

alleging criminal conduct, and that men accused of crimes were treated more favorably when the accuser was a female.  (Id. at ¶ 256.)  The plaintiff alleges:

> Defendants lack of respect in their treatment of [plaintiff], failure to take her case seriously, failure to communicate with her about her case, failure to disclose that she was being treated as criminal suspect, false arrest, and malicious prosecution constituted a denial of her right to Equal Protection under the Fifth and Fourteenth Amendments of the United States Constitution.

(Id. at ¶ 258.)

As a preliminary matter, as set forth above, the plaintiff's conclusory allegations in this regard are insufficient to state a plausible claim for relief.  It is well established that "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678.  The plaintiff's Complaint contains no more than conclusory allegations and recitation of the elements of her claim, without any facts supporting her assertions.  Specifically, the plaintiff does not allege facts as to whom she contends she was similarly situated to but treated differently from.  Likewise, the Complaint is devoid of any factual allegations tending to establish that she was treated differently based upon her sex.

Moreover, to the extent the plaintiff's claim is based upon allegations that she was not treated similarly to co-defendant Nodine—that the laws were

selectively enforced against her and not Nodine and/or that the defendant officers violated her right to equal protection of the laws by failing to arrest or investigate Nodine, the defendants deny failing to investigate the plaintiff's Complaint.  Nevertheless, failure to investigate and failure to arrest are insufficient to establish a constitutional violation as a matter of law.  Courts have consistently held that one does not have a recognized constitutional right to have another individual investigated or prosecuted.  See Linda R.S. v. Richard D., 410 U.S. 614 (1973).  As such, any allegations that the defendant officers failed to arrest Nodine cannot form the basis for an equal protection claim.

    b.  Class of One

  Where a plaintiff does not allege membership in a protected class, she may still prevail on a "class of one" equal protection claim.  See Neilson, 409 F.3d at 104 (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).  Specifically, a "class of one" equal protection claim may be brought "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Olech, 528 U.S. at 564.

  In order for a plaintiff to succeed in a "class of one" claim, "the level of similarity between the plaintiffs and the persons with whom they compare themselves must be extremely high."  Neilson, 409 F.3d at 104; Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010); Clubside, Inc. v.

<u>Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006).  The plaintiff in a "class of one" claim must establish that "they were treated differently from someone who is *prima facie identical* in all relevant respects."  <u>Neilson</u>, 409 F.3d at 104 (emphasis added) (quoting <u>Purze v. Village of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir. 2002)).

Accordingly, in order to prevail on a "class of one" equal protection claim, the test is whether the plaintiff has proven that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

<u>Neilson</u>, 409 F.3d at 105; <u>Analytical Diagnostic Labs, Inc. v. Kusel</u>, 626 F.3d 135, 140 (2d Cir. 2010).

"The Supreme Court has arguably added a third requirement to "class of one" claims in <u>Engquist v. Or. Dept. of Agric.</u>, 553 U.S. 591, 128 S. Ct. 2146, 170 L.Ed.2d 975 (2008): that the offending governmental action at issue be non-discretionary."  <u>Ruston</u>, 610 F.3d at 58, n. 3.  More specifically, "the <u>Engquist</u> court found that some types of state action inherently involve discretionary decision making based on a cast array of subjective, individualized assessment."  <u>Analytical Diagnostic Labs</u>, 626 F.3d at 141 (internal quotation marks omitted) (quoting <u>Engquist</u>, 553 U.S. at 603).  "Such state action does not

16

violate the Equal Protection Clause when one person is treated differently from others, because treating like individuals differently is an acceptable consequence of the discretion granted."  Id. (internal quotation marks omitted).

"It is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality."  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180, 544 A.2d 1185 (1988). Generally, determining whether a violation of law exists is deemed to be a discretionary act.  Bonington v. Westport, 297 Conn. 297, 314, 999 A.2d 700 (2010).  "The [Connecticut] Superior Court has consistently held that the '[a]cts and omissions of police officers in the exercise of their duties are discretionary in nature.'"  Susman v. Town of E. Haven, No. CV020468497, 2007 WL 1532713, at *4 (Conn. Super. Ct. May 9, 2007) (quoting Davis-Trapani v. Scarcella, Superior Court, judicial district of New Haven, Docket No. CV 00 0436800 (July 23, 2003, Arnold, J.), aff'd, 83 Conn. App. 903, 853 A.2d 650, cert. denied, 270 Conn. 917, 853 A.2d 531 (2004)) (citing Peters v. Greenwich, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 147192 (Jan. 2, 2001, D'Andrea, J.) (28 Conn.L.Rptr. 671, 674); Shaham v. Wheeler, Superior Court, judicial district of Danbury, Docket No. 321879 (Mar. 12, 1998, Nadeau, J.)).  Further, "[t]he investigation of crimes and the decisions to make arrests for them is clearly a discretionary rather than a ministerial function."  Id. (citing Davis-Trapani v.

<u>Scarcella</u>, <u>supra</u>, Superior Court, Docket No. CV 00 0436800; <u>Perrotta v. Enfield</u>, Superior Court, judicial district of Hartford, Docket No. CV 00 596565 (June 15, 2000, *Hale, J.T.R.*); <u>Gonzalez v. Bridgeport</u>, Superior Court, judicial district of Fairfield, Docket No. 253464 (June 4, 1993, *Fuller, J.*) [9 Conn.L.Rptr. 202].

Accordingly, consistent with the Supreme Court's decision in <u>Engquist</u>, the defendants' exercise of discretion in investigating the plaintiff and arresting her on the charge of providing a false statement to a law enforcement officer does not violate the Equal Protection Clause.

Notwithstanding the foregoing, the Complaint is wholly devoid of facts establishing any prima facie identical comparators whom were treated differently than the plaintiff and/or that any facts from which it can be inferred that the defendants' treatment of the plaintiff lacked a rational basis.

        **3.**      <u>**The Plaintiff Has Failed To Allege A Cognizable Claim**</u>
                <u>**For Violation Of Her Substantive Due Process Rights**</u>.

Generally, "where a plaintiff has alleged sufficient facts to support a cause of action under the Fourth Amendment, a cause of action may not be pursued under the Fourteenth Amendment." <u>Nadeau v. Anthony</u>, No. CIV.A. 303CV834AWT, 2003 WL 22872150, at *2 (D. Conn. Dec. 2, 2003). In <u>Nadeau</u>, the plaintiff brought claims for violations of his right to be free from arrest without probable cause, as well as from malicious prosecution; the court found that the Fourth Amendment, "not the more generalized notion of substantive due

process must be the guide for analyzing [the plaintiff's claims]."  Id. (internal citation and quotation marks omitted).

It is equally well established that, "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution."  Singer v. Fulton County Sheriff, 63 F.3d 110, 114 (2d Cir. 1995) (citing Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807 (1994)).

Here, the plaintiff has made specific allegations regarding claims of unlawful arrest and malicious prosecution pursuant to the Fourth Amendment. As such, any claim for violation of her right to substantive due process under the Fourteenth Amendment must fail.

        4.     **The Plaintiff Has Failed To Allege A Cognizable Monell Claim**.

A municipality cannot be held liable under 42 U.S.C. § 1983 unless a municipal policy or custom caused the constitutional injury.  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, et al., supra.

> The Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (citing *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the

> force of law, and thereby generate municipal liability."
> *Sorlucco,* 971 F.2d at 870–71 (citing *Monell,* 436 U.S. at
> 691, 98 S.Ct. 2018) (internal quotation marks omitted).
> Moreover, a policy, custom or practice of the entity
> may be inferred where "'the municipality so failed to
> train its employees as to display a deliberate
> indifference to the constitutional rights of those within
> its jurisdiction.'" *Patterson,* 375 F.3d at 226 (quoting
> *Kern,* 93 F.3d at 44).

Genovese v. Town of Southampton, 921 F.Supp.2d 8, 24 (E.D.N.Y. Feb. 1, 2013).

Even if this Court construes the Complaint to contain sufficient

allegations of a constitutional violation by an employee of the defendant Town,

which the defendants deny, the Complaint fails to adequately allege that a Town

custom or policy caused the plaintiff's injury.

> A policy, custom or practice of a municipality may be
> demonstrated in one of four ways. To satisfy the first
> prong of the test on a motion to dismiss, [a plaintiff]
> must allege the existence of either: (1) a formal policy
> which is officially endorsed by the municipality (*see
> Monell,* 436 U.S. at 690, 98 S.Ct. 2018); (2) actions taken
> or decisions made by government officials responsible
> for establishing municipal policies which caused the
> alleged violation of the plaintiff's civil rights (*see
> Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-484,
> 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d 452); (3) a
> practice so persistent and widespread that it
> constitutes a "custom or usage" and implies the
> constructive knowledge of policy-making officials (*see
> Monell,* 436 U.S. at 690-91, 98 S.Ct. 2018); or (4) a
> failure by official policy-makers to properly train or
> supervise subordinates to such an extent that it
> "amounts to deliberate indifference to the rights of
> those with whom municipal employees will come into
> contact." (*see City of Canton v. Harris,* 489 U.S. 378,
> 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).

<u>McLaurin v. New Rochelle Police Officers</u>, 368 F.Supp.2d 289, 293-94 (S.D.N.Y. 2005).  The plaintiff has failed to assert any of these requisite allegations in her Complaint or any facts necessary to establish a custom or practice.  Based upon the allegations of the Complaint, it is not clear whether the plaintiff is attempting to proceed against the Town under a <u>Monell</u> theory of liability and, if so, on what basis.  Accordingly, any federal claims directed toward the Town should be dismissed for failure to state a cognizable claim.[2]

 5. <u>The Plaintiff Has Failed To Allege A Legally Sufficient Claim Under State Law</u>.

 Should this Court exercise jurisdiction over any purported state law claims alleged by the plaintiff, such claims fail to state a legally sufficient cause of action.

*False Arrest, Malicious Prosecution*

 Specifically, Counts Sixteen and Nineteen, purporting to allege state law claims for false arrest and malicious prosecution, respectively, fail for all of the reasons set forth above with regard to the plaintiff's federally-based claims (as set forth above, the false arrest and malicious prosecution claims, whether brought pursuant to § 1983 or state law, are evaluated under state law).

---

[2] Counts Fifteen, Eighteen and Twenty-one purport to be brought against the individual defendants in their official capacities.  To the extent this Court construes these counts to have been properly brought against said defendants in their official capacities, the claims should be treated as directed against the Town and fail for failure to allege a cognizable <u>Monell</u> claim.

*Intentional Infliction of Emotional Distress*

In order for a plaintiff to successfully establish an intentional infliction of

emotional distress claim, it must be shown:

> (1) that the actor intended to inflict emotional distress
> or that he knew or should have known that emotional
> distress was the likely result of his conduct; (2) that the
> conduct was extreme and outrageous; (3) that the
> defendant's conduct was the cause of the plaintiff's
> distress; and (4) that the emotional distress sustained
> by the plaintiff was severe.

Carrol v. Allstate Ins. Co., 262 Conn. 433, 442-43, 815 A.2d 119 (2003) (internal

quotation marks omitted).

In explaining the outrageousness requirement, the Connecticut Supreme

Court has stated:

> Liability for intentional infliction of emotional distress
> requires conduct that exceeds all bounds usually
> tolerated by decent society . . . .  Liability has been
> found only where conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.  Generally, the case is one in which the
> recitation of the facts to an average member of the
> community would arouse his resentment against the
> actor, and lead him to exclaim, Outrageous!

Carrol v. Allstate Ins. Co., 262 Conn. at 443.

On the other hand, "[c]onduct on the part of the defendant that is merely

insulting or displays bad manners or results in hurt feelings is insufficient to

form the basis for an action based upon intentional infliction of emotional

distress."  <u>Id.</u>  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . Only where reasonable minds disagree does it become an issue for the jury."  <u>Appleton v. Board of Education</u>, 254 Conn. 205, 210, 763 A.2d 655 (2000).

In <u>Appleton</u>, the plaintiff schoolteacher was publicly subjected to condescending comments by the school's principal in front of her colleagues questioning her vision and ability to read, was escorted off school grounds by the police, was required to undergo two psychiatric evaluations at the request of the board of education, and was forced to resign.  <u>Appleton</u>, 254 Conn. at 211. The plaintiff also asserted that the defendant telephoned her daughter and stated that the plaintiff "had been acting differently."  <u>Id.</u>  Nevertheless, the Supreme Court concluded that the defendant's actions did not constitute extreme and outrageous conduct for the purposes of intentional infliction of emotional distress, and affirmed the trial court's decision granting summary judgment on the claim.  <u>Id.</u> at 214.

In <u>Carrol v. Allstate Insurance Co.</u>, 262 Conn. at 437, the plaintiff insured brought an action against his insurer for intentional infliction of emotional distress arising from the insurer's treatment of him during its investigation following a fire at his home.  The plaintiff presented evidence that the defendant conducted a poor investigation, its investigator's determination that the fire was

arson was impulsive, as well as that he may have been biased against the plaintiff, an African-American.  Carrol v. Allstate Insurance Co., 262 Conn. at 441. The plaintiff testified that he overheard one of the inspectors say "the son of a bitch is mine" upon learning that the homeowner was black; that he was harassed by the defendant's frequent requests for personal information and by the recurrent inspections of the house; and that he felt like a criminal because of the offensive questions posed to him during the interviews insinuating criminal behavior.  Id.  The court nonetheless ruled that the conduct was not sufficient for reasonable minds to conclude that it was extreme and outrageous.  Id. at 444.

The individual Canton defendants' alleged actions in this case do not come close to the level of conduct found actionable in either Appleton or Carrol. Said defendants' alleged conduct, in investigating the plaintiff's complaint and ultimately pursuing a warrant for the plaintiff's arrest on the charge of making a false statement based upon their investigation, does not rise to the level of "extreme and outrageous" conduct found actionable under Connecticut law. Indeed, a defendant officer's arrest of a plaintiff, without more, is neither extreme nor outrageous where the defendant had probable cause to arrest the plaintiff.  Winter v. Northrop, No. CIVA 306-CV-216 PCD, 2008 WL 410428, at *7 (D. Conn. Feb. 12, 2008); Blalock v. Bender, No. 3:04CV1519(PCD), 2006 WL 1582217, at *7 (D. Conn. June 1, 2006).  Accordingly, the plaintiff has failed to

state a legally sufficient cause of action for intentional infliction of emotional distress, and Count Twenty-three should be dismissed by this Court.

### *Negligence*

Plaintiff's claim for negligent infliction of emotional distress set forth in Count Twenty-four is barred by the doctrine of governmental immunity.

"A municipality itself was generally immune from liability for its tortuous acts at common law . . . ."  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 165, 544 A.2d 1185 (1988).  "[I]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function."  Williams v. New Haven, 243 Conn. 763, 766, 707 A.2d 1251 (1998) (citations omitted; internal quotations omitted).  "[M]unicipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion."  Elliott v. Waterbury, 245 Conn. 388, 411, 715 A.2d 27 (1998).  "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature.  The hallmark of a discretionary act is that it requires the exercise of judgment.  On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion."  Gordon v. Bridgeport Housing Authority, supra, 208 Conn. at 167-68 (internal quotations omitted).

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint."  <u>Martel v. Metropolitan District Commission</u>, 275 Conn. 38, 48-49, 881 A.2d 194 (Conn. 2005). "Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions."  <u>Violano v. Fernandez</u>, 280 Conn. 310, 322, 907 A.2d 1188 (2006).  "Absent evidence that a policy or directive existed requiring the defendant to perform a particular duty, the conclusion that the allegedly negligent acts were discretionary in nature as a matter of law is proper." <u>Haynes v. City of Middletown</u>, Superior Court, judicial district of Middlesex, Docket No. CV075002146 (Mar. 31, 2009, *Jones, J.*), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 122 Conn. App. 72 (2010) (quoting <u>Martel v. Metropolitan District Commission</u>, <u>supra</u>, 275 Conn. at 50-51).

In the instant matter, it is apparent upon examination of the allegations of the plaintiff's Complaint that she does not claim the defendant officers failed to follow any *applicable* governing policy or procedure with regard to their investigation of and arrest of the plaintiff.  As such, the plaintiff has alleged discretionary acts to which governmental immunity applies.

**C.** **THE PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT PERSONAL INVOLVEMENT BY THE DEFENDANTS, MARK J. PENNEY AND CHRISTOPHER ARCIERO, IN ANY ALLEGED CONSTITUTIONAL VIOLATIONS.**

A cause of action under Section 1983 requires two essential elements: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

There are additional requirements depending on whether the claim is against an official in his individual or official capacity.  The plaintiff purports to bring claims against each individual Town defendant in both his individual and official capacities.  With respect to the claims brought against the Town employees and/or representatives in their individual capacities, a plaintiff must show "that the defendant was personally involved-that is, he directly participated-in the alleged constitutional deprivations."  Gronowski v. Spencer, 424 F.3d 285, 293 (2d Cir. 2005) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)).

"Direct participation" means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."  Id.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122

(2d Cir. 2004) (internal citation and quotation marks citation omitted); see also, Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (affirming the dismissal of the plaintiff's Section 1983 claim against defendant . . . on the basis that the plaintiff failed to allege his personal involvement in any alleged constitutional deprivation); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (holding that when damages are sought in a Section 1983 action against a defendant in his or her individual capacity, the plaintiff must allege that the defendant was responsible for the alleged constitutional deprivation); Ashcroft v. Iqbal, supra, 129 S.Ct. 1948 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  An individual cannot be held liable for damages under Section 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation.  See, Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

"A complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails a matter of law.  See e.g., Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Alfaro Motors, Inc. v. Ward, 814

F.2d 883, 886 (2d Cir. 1987); <u>see also</u>, <u>Johnson v. Barney</u>, 360 Fed.Appx. 199 (2d Cir. 2010) (finding that the plaintiff's claims against the superintendent failed as a matter of law because the plaintiff did not sufficiently allege his personal involvement in the alleged constitutional violation).

The plaintiff does not sufficiently allege personal involvement of defendants, Mark J. Penney and/or Christopher Arciero, in any alleged Constitutional violation anywhere in her Complaint.  As to Mark Penney, the plaintiff alleges simply that he "was the Shift Commander who oversaw Officer Gompper and Detective Colangelo in the investigation of [plaintiff's] Complaint and her arrest."  (Compl., ¶¶ 19-20.)  She goes on to make the conclusory allegation that "Pepper [sic] approved the warrant and permitted its submission to the State's Attorney's Office and the Judge with deliberate and/or reckless disregard for the false, distorted, and misleading information contained therein, and the omission of exculpatory information."  (<u>Id.</u>, Count Fourteen, ¶ 224.)  The Complaint alleges that at all times Arciero was the Chief of Police of the Town of Canton and is, otherwise, devoid of any allegations concerning his conduct.  As such, Penney and Arciero are entitled to dismissal of any claims directed towards them in their individual capacities.

D. SINCE THERE ARE NO STATUTORY AND/OR CONSTITUTIONAL VIOLATIONS FOR WHICH THEY CAN BE HELD RESPONSIBLE, EACH OF THE INDIVIDUAL CANTON DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Based upon the fact that the individual Canton defendants cannot be

found liable for any alleged statutory and/or constitutional violations, they are entitled to qualified immunity.[3]

The doctrine of qualified immunity shields government officials from civil actions for damages for discretionary acts performed in the course of their duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

The United States Supreme Court has set forth a two-part inquiry for resolving whether government officials are entitled to qualified immunity. "[R]esolving ... qualified immunity claims[,] ... a court must decide whether the facts that a Plaintiff has alleged ... make out a violation of a constitutional right [and] ... the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  <u>Pearson v.</u>

---

[3] Qualified immunity may be raised on a Rule 12(b)(6) motion.  <u>See</u> <u>Randle v. Alexander</u>, 960 F.Supp.2d 457, 471 (S.D.N.Y. 2013) ("[I]t is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss.") (citing <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998) ("It is also well established that an affirmative defense to official immunity should be resolved as early as possible by the court, and may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint." (citations omitted)); <u>Torres v. Vill. of Sleepy Hollow</u>, 379 F.Supp.2d 478, 483 (S.D.N.Y. 2005) ("[T]he availability of qualified immunity ought to be decided by a court at the earliest possible opportunity—preferably at the outset of the case, at which point plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts immaterial.").

<u>Callahan</u>, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  It is within the court's discretion to decide which of these steps to address first.  <u>See</u> <u>id.</u>, at 818.

In this case, the first inquiry is dispositive of the Canton defendants' qualified immunity defense.  <u>See</u> <u>e.g.</u>, <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?"); <u>Liggins v. Griffo</u>, 356 Fed.Appx. 537 (2d Cir. 2009).  "If there is no constitutional violation, the defendant is not liable and the court need not proceed further [with its qualified immunity analysis]." <u>Finch v. City of New York</u>, 591 F.Supp.2d 349, 361 (S.D.N.Y. 2008); <u>see</u> <u>also</u>, <u>Tyson v. Willauer</u>, 290 F.Supp.2d 278, 286 (D.Conn. 2003) ("We find that there was no violation of any of the plaintiffs' Fourth Amendment rights with respect to any actions taken by either defendant.  There being no violation of plaintiffs' constitutional rights, defendants . . . are entitled to qualified immunity from suit under § 1983….").

Based upon the foregoing, the individual Canton defendants are entitled to qualified immunity as to each claim set forth by the plaintiff in Counts Fourteen through Twenty-two.

III.     **CONCLUSION**

For all of the foregoing reasons, the undersigned defendants, TOWN OF CANTON, JOHN COLANGELO, ADAM GOMPPER, MARK J. PENNEY and CHRISTOPHER ARCIERO, respectfully request that Counts Fourteen through Twenty-four of the plaintiff's Complaint be dismissed.

DEFENDANTS,
TOWN OF CANTON, JOHN
COLANGELO, ADAM GOMPPER, MARK
J. PENNEY AND CHRISTOPHER
ARCIERO

By /s/ Kristan M. Maccini
    Kristan M. Maccini
    ct25121
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114-1190
    (860) 249-1361
    (860) 249-7665 fax
    kmaccini@hl-law.com

<u>**CERTIFICATION**</u>

This is to certify that on JULY 24, 2018, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

**Lewis H. Chimes, Esq.**
**Mary-Kate Smith, Esq.**
**Law Office of Lewis Chimes, LLC**
**45 Franklin Street**
**Stamford, CT  06901**

**Katie Ann Roy, Esq.**
**573 Hopmeadow Street**
**Simsbury, CT  06070**

**David A. Moraghan, Esq.**
**Smith, Keefe, Moraghan & Waterfall, LLC**
**32 City Hall Avenue, # C**
**Torrington, CT  06790**

**Elizabeth K. Acee, Esq.**
**LeClair Ryan, PLLC**
**545 Long Wharf Drive, 9th Floor**
**New Haven, CT  06511**

**/s/ Kristan M. Maccini**
**Kristan M. Maccini**