UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE CHASE, | : | |
| Plaintiff, | : | |
| | : | No. 3:18-CV-00683 (VLB) |
| v. | : | |
| | : | |
| NODINE'S SMOKEHOUSE, INC., | : | January 22, 2019 |
| CALVIN NODINE, | : | |
| TOWN OF CANTON, | : | |
| JOHN COLANGELO, | : | |
| ADAM GOMPPER, | : | |
| MARK J. PENNEY, | : | |
| CHRISTOPHER ARCIERO, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. 34]

Plaintiff Nicole Chase brings the instant action alleging claims arising out of her arrest by the Canton Police following a complaint of sexual assault by her then-employer, Defendant Calvin Nodine. Ms. Chase brings thirteen claims against Nodine's Smokehouse and Calvin Nodine (the "Nodine Defendants"), and ten claims against the Town of Canton, Detective John Colangelo, Officer Adam Gompper, Sergeant Mark J. Penney, and Chief Christopher Arciero (the "Town Defendants"), including false arrest, malicious prosecution, denial of equal protection, denial of substantive due process, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See* [Dkt. 1-1 (Notice of Removal, Att. 1 (Compl.))].

The Town Defendants now move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion is granted in part and denied in part.

<u>Background</u>

For the purposes of the motion to dismiss, the court assumes the following facts set forth in the Complaint to be true.[1] Ms. Chase started working at Nodine's Smokehouse, Inc. ("Nodine's Smokehouse") in or about September 2016. [Dkt. 1-1 ¶ 7]. She initially worked at the Nodine's Smokehouse factory, and later assisted with Nodine's Restaurant. *Id.* ¶ 28. Nodine's Restaurant opened in or about November 2016. *Id.* ¶ 29.

For most of the time Ms. Chase worked at Nodine's Restaurant, Calvin Nodine, the owner, would come by the restaurant regularly but usually would not

---

[1] A court considering a motion to dismiss may consider "the factual allegations in plaintiffs' amended complaint, which are accepted as true, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Court agrees with the Town Defendants that the two exhibits attached to Plaintiff's Opposition Memorandum, transcripts of the police interviews of Nicole Chase and Calvin Nodine, [Dkt. 43-2 (Opp'n Ex. 1, Tr. of Nodine Interview); Dkt. 43-3 (Opp'n Ex. 2, Tr. of Chase Interview)], do not fall into any of these categories because they were not attached to or incorporated into the Complaint by reference, they are not matters of which the Court may take judicial notice under Federal Rule of Evidence 201 because they are unofficial transcripts of non-public interviews, and Plaintiff did not rely upon them in bringing suit, as evidenced by the fact that they were not quoted or referenced in the Complaint. To consider the transcripts would require the Court to treat the motion as one for summary judgment under Rule 56 and allow Defendants the opportunity to conduct necessary discovery and submit corresponding pertinent materials. The Court therefore does not take the two transcripts into consideration in deciding the Motion to Dismiss.

stay for very long. *Id.* ¶¶ 14, 30. When he was there, Mr. Nodine "would engage in inappropriate conduct that made [Ms. Chase] feel uncomfortable." *Id.* ¶ 31. For example, Mr. Nodine, on more than one occasion, purposefully dropped his eye glasses on the floor and directed Ms. Chase to pick them up. *Id.* When she would do as directed, he would stare down her shirt. *Id.* Mr. Nodine would make suggestive comments and jokes. *Id.* He would also stare at Ms. Chase and follow her around. *Id.* Mr. Nodine's behavior made Ms. Chase uncomfortable, but she "put up with it because he was never around in the restaurant very long." *Id.* ¶ 32.

Mr. Nodine started spending more time at Nodine's Restaurant in April 2017. *Id.* ¶ 33. On May 6, 2017, Mr. Nodine was at the restaurant while Ms. Chase was working. *Id.* ¶¶ 35-36. That day, Mr. Nodine made multiple offensive sexual comments directed at Ms. Chase, which she ignored. *Id.* ¶¶ 37, 39-40. Mr. Nodine also made unwanted and uncomfortable physical contact with Ms. Chase multiple times that day, including hugging and kissing her on the cheek and later coming up behind her and squeezing her body and her buttocks. *Id.* ¶¶41-44. At the end of the day, Mr. Nodine pulled Ms. Chase into the men's bathroom, locked the door, and forced Ms. Chase to perform oral sex on him. *Id.* ¶¶ 45-46.

After the incident, Ms. Chase texted her former general manager at Nodine's Restaurant and told him of the assault, leaving out the detail that Mr. Nodine had successfully forced her to perform oral sex on him. *Id.* ¶¶ 48, 101. He told her to report it to the police. *Id.* Ms. Chase told her mother about the assault that night as well, again leaving out the oral sex detail. *Id.*

The next day, May 7, 2017, Ms. Chase went with her mother to the Canton Police Department to report the assault. *Id.* ¶¶ 49, 60. Defendant police officer Adam Gompper met with Ms. Chase, who had her relate the details of the assault in the lobby of the Canton Police Department. *Id.* ¶ 64. Ms. Chase told Officer Gompper that she was not sure if she wanted to press charges at that time, and Officer Gompper told her to come back and make a written statement if she decided to pursue charges. *Id.* ¶ 70. Ms. Chase returned to the Police Department on Thursday, May 11, 2017, and spoke to Officer Gompper again, who typed up her statement and had her sign it. *Id.* ¶ 71. Ms. Chase did not specify that Mr. Nodine had forced her to perform oral sex during either of the meetings or in the written statement. *Id.* ¶ 101. Two other Nodine's Restaurant employees provided statements to the police corroborating Ms. Chase's account of Mr. Nodine's other behavior towards her. *Id.* ¶¶ 74-76.

According to Ms. Chase's arrest warrant, Officer Gompper and Defendant Detective John Colangelo interviewed Mr. Nodine on May 18, 2017. *Id.* ¶ 81. Mr. Nodine had his attorney present and, while he initially denied any sexual contact with Ms. Chase, after conferring with his attorney, he told Officer Gompper and Detective Colangelo that Ms. Chase had performed consensual oral sex on him on one occasion. *Id.* ¶¶ 82-83. The Police Department did not update Ms. Chase following Mr. Nodine's interviews as Officer Gompper had said they would. *Id.* ¶ 84. After trying to reach Officer Gompper multiple times to get an update on her case, Ms. Chase was able to speak with him and he informed her that the Department was still investigating the matter. *Id.* ¶ 85-86.

On June 21, 2017, Ms. Chase reported to the Police Department at their request. *Id.* ¶¶ 87-88. She met with Detective Colangelo, whom she was meeting for the first time, in an interview room. *Id.* ¶¶ 89-90. Detective Colangelo asked Ms. Chase about her story and then pressed her for more information. *Id.* ¶¶ 92-97. Detective Colangelo told Ms. Chase that Mr. Nodine had told them she had performed consensual oral sex on him. *Id.* ¶ 100. He also told her that Mr. Nodine had taken a lie detector test, leaving out that he had failed that test and then refused to take another test. *Id.* ¶¶ 98-99, 136. Ms. Chase felt that Detective Colangelo was being aggressive and was intimidated by him. *Id.* She became emotional and, despite being ashamed and uncomfortable with explaining the specifics, she told Detective Colangelo that Mr. Nodine forced her to perform oral sex and that it was not consensual. *Id.* ¶¶ 102-104. Thereafter, Detective Colangelo focused on Ms. Chase's prior omission of these details and questioned whether Mr. Nodine had sexually assaulted her. *Id.* ¶ 105.

Ms. Chase told Detective Colangelo about the text messages she sent her former manager shortly after the assault, and Detective Colangelo asked that she provide them with copies of the messages. *Id.* ¶¶ 106-107. Detective Colangelo told Ms. Chase that she had made a false statement and asked if she wanted to revise her previous statement. *Id.* ¶¶ 108-109. While denying that her statement had been false, Ms. Chase told Detective Colangelo that she would like to revise her statement but would like to speak with a lawyer first. *Id.* Several days later, Ms. Chase called Detective Colangelo to try to coordinate a time to come in and amend her statement but she was unable to reach him. *Id.* ¶ 110. The Court infers

Ms. Chase to allege that she left messages asking Detective Colangelo to call her back but he failed to return her calls.

According to Ms. Chase's arrest warrant, Detective Colangelo signed the warrant application for the arrest of Ms. Chase for making a false statement on July 7, 2017, 16 days after he interviewed her. *Id.* ¶ 111. Around July 13, 2017, Ms. Chase went to the police department to drop off copies of the text messages and again asked to speak with Detective Colangelo about revising her statement, but he was not available. *Id.* ¶¶ 112-113. Ms. Chase thereafter emailed Detective Colangelo multiple times about revising her statement, the second time attaching revisions to be incorporated into her original statement. *Id.* ¶¶ 116-118. On August 10, 2017, Detective Colangelo responded to Ms. Chase's emails. *Id.* ¶ 119. In his response, Detective Colangelo indicated that he did not know she had wanted to give a new statement but stated that he had documented the change in her story and had provided the case to the court for review. *Id.* He further indicated that the case was still with the State's Attorney's office and that he hoped to have next steps shortly. *Id.*

The Complaint alleges that the Assistant State's Attorney signed the warrant application on August 30, 2017, after Ms. Chase's many attempts to revise her statements and after Detective Colangelo finally acknowledged those requests and represented to Ms. Chase that he had documented the change. *Id.* ¶ 121. The warrant was signed by the court on September 6, 2017. *Id.* ¶ 122. On September 8, 2017, Detective Colangelo arrested Ms. Chase for making a false statement in violation of Connecticut General Statute §53a-57b and she was thereafter arraigned

on the charge.  *Id.* ¶¶ 123, 126.  On November 6, 2017, the State's Attorney's Office entered an unconditional nolle prosequi and the case was dismissed.  *Id.* ¶ 127.

On April 10, 2018, Ms. Chase filed this lawsuit in Connecticut Superior Court, Judicial District of Hartford.  Case No. HHD-CV-17-5049825-S.  On April 20, 2018, the Town Defendants—the Town of Canton, Detective Colangelo, Detective Gompper, Sergeant Penney, and Town of Canton Chief of Police Christopher Arciero—removed the case to federal court.  *See* [Dkt. 1].

Ms. Chase's Complaint alleges violations of the Connecticut Fair Employment Practices Act for harassment, hostile work environment, retaliation, and aiding and abetting; violations of Title VII for harassment, hostile work environment, and retaliation; negligent infliction of emotional distress; intentional infliction of emotional distress; intentional and/or reckless assault and battery; negligent assault and battery; invasion of privacy; false imprisonment; intimidation based on bigotry or bias; and malicious prosecution against the Nodine Defendants.  [Dkt. 1-1 ¶¶ 140-219].  It also alleges false arrest; malicious prosecution; denial of equal protection; denial of substantive due process; intentional infliction of emotional distress; and negligent infliction of emotional distress against the Town Defendants.  *Id.* ¶¶ 220-279.  On July 24, 2018, the Town Defendants moved to dismiss the claims against them.  [Dkt. 34 (Mot. Dismiss)].

<u>Legal Standard for a Motion to Dismiss</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

7

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

**Discussion**

**A.  § 1983 Official Capacity Claims (Counts 15, 18, and 21)**

The Complaint brings three claims against the individual Town Defendants (Colangelo, Gompper, Penney, and Arciero) in their official capacities—Count 14 for § 1983 false arrest, Count 18 for § 1983 malicious prosecution, and Count 21 for § 1983 denial of equal protection.  Suits against municipal officials in their official-capacities are tantamount to suit against the municipality itself.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law."  *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694).

In order to impose liability on a local government under § 1983, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).  Thus, in order for Counts 14, 18, and 21 to stand, the Complaint must allege that a municipal custom or practice caused the deprivation of Ms. Chase's rights.

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* at 61.  "To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation."  *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)).  For example, it

may be enough where "a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* (quoting *Sorlucco*, 971 F.2d at 871). Additionally, "[a] policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Id.* (quoting *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996)).

The Complaint alleges that there are "Law Enforcement Standards . . . as to methods and procedures for the investigation and interview of victims of sexual assault" and that "[t]hese standards are intended to overcome the longstanding stereotypical assumption about sexual assault and negative judgments made about victims of sexual assault when they report the crime." [Dkt. 1-1 ¶ 61]. The Complaint further alleges that Defendants failed to follow any of these standards in handling Plaintiff's case. *Id.* ¶ 62. Plaintiff's Opposition to the Motion to Dismiss suggests that those two paragraphs, in addition to the facts set forth regarding the officers' failure to meet those standards in Ms. Chase's case, are enough to satisfy the pleading standards for a *Monell* claim for Counts 14 and 18. *See* [Dkt. 43 at 31].

With respect to the denial of equal protection claim, Count 21, the Complaint alleges that the Town of Canton Police Department "maintained longstanding discriminatory practices against women," noting that there were no women police officers in the department at the time of Ms. Chase's arrest and that the department provided inadequate training and inadequate oversight of its officers. *Id.* ¶¶ 249, 252-255. Additionally, it alleges that the department "was riddled with stereotypical

assumptions about women who report crimes of violence against men" and that this resulted in "discrimination and hostility towards female victims of crimes of violence against men." *Id.* ¶¶ 254, 259.

Aside from these mostly conclusory allegations, Ms. Chase provides no factual allegations supporting the existence of a municipal policy or practice outside the facts regarding her own experience. But facts alleging a single instance of misconduct or mishandling of a complaint do not suffice to state a *Monell* claim. *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

The Complaint includes no alleged statements or reports that this kind of misconduct occurs with regularity in the department's handling of claims of sexual assault against women or that there has been any observation that training for handling such cases is lacking. Nor does she support her claim with other instances of officers of the department bringing unsupported false statement charges, or the like, against other women who had made sexual assault complaints. *Cf. Graham v. County of Erie*, No. 11-cv-605S, 2012 WL 1980609, at *5-6 (W.D.N.Y. May 31, 2012) (denying motion to dismiss where plaintiff demonstrated "a pattern of documented shortcomings," which included multiple instances of

misconduct recorded by a DOJ investigation); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (denying motion to dismiss where the "Amended Complaint point[ed] to over fifteen cases where City prosecutors allegedly committed misconduct, and allege[d] the existence of many more such cases in the form of unpublished opinion"); *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (denying motion to dismiss where plaintiff supported allegations with a DOJ report regarding systemic failures in the jail's provision of medical care to inmates).

None of Ms. Chase's allegations regarding the existence of a municipal policy or practice of mishandling claims brought by women against men for sexual assault include actual factual support. The Complaint includes only conclusory statements about there being discriminatory practices and inadequate training and oversight. To survive a motion to dismiss, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012). "[N]aked assertion[s] devoid of further factual enhancement" do not suffice. *Iqbal*, 556 U.S. at 678. The fact that there were no female police officers in the department at the time of Ms. Chase's arrest along with the specific factual allegations supporting the claim that the officers mishandled her own case do not plausibly lead to an inference that a municipal policy or practice existed.

As such, Ms. Chase has failed to sufficiently plead liability on the part of the Town of Canton for the § 1983 claims, including the claims against the individual

officers in their official capacities, and Counts 15, 18, and 21 are therefore DISMISSED. These dismissals are without prejudice to filing an amended complaint within fourteen days after the date of this decision setting forth factual support for the conclusory claims alleged.

B. <u>False Arrest & Malicious Prosecution (Counts 14, 16, 17, and 19)</u>

The Town Defendants argue that the Complaint fails to state a claim for any of the false arrest or malicious prosecution claims "because [Ms. Chase's] arrest was made pursuant to an arrest warrant issued by a state superior court judge." [Dkt. 34-1 (Mot. Dismiss Mem.) at 8]. [2, 3]

"To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012). The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . against

---

[2] The remaining false arrest and malicious prosecution claims include: Count 14 for § 1983 false arrest against Detective Colangelo, Officer Gompper, and Sergeant Penney in their personal capacities; Count 16 for state law false arrest against Detective Colangelo, Officer Gompper, Sergeant Penney, Chief Arciero, and the Town of Canton; Count 17 for § 1983 malicious prosecution against Detective Colangelo, Officer Gompper, and Sergeant Penney in their personal capacities; and Count 19 for common law malicious prosecution against Detective Colangelo, Officer Gompper, Sergeant Penney, Chief Arciero, and the Town of Canton.

[3] Defendants seem to question whether the Court will exercise jurisdiction over these claims. *See* [Dkt. 34-1 at 21]. This Court has federal question jurisdiction arising out of the § 1983 claims and therefore has supplemental jurisdiction over the pendent state law claims, which derive from a common nucleus of operative fact as the federal claims. Given that considerations of judicial economy and convenience and fairness to the litigants justify hearing the state law claims with the federal claims, and absent any argument to the contrary, this Court exercises jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966).

unreasonable searches and seizures." U.S. Const. Amend. IV. Section 1983 claims for false arrest and malicious prosecution are based on this Fourth Amendment right to be free from unreasonable seizures, including arrest and prosecution without probable cause. *See Soares v. Conn.*, 8 F.3d 917, 920 (2d Cir. 1993) ("It is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause."). In analyzing § 1983 claims for false arrest and malicious prosecution, courts "generally look[ ] to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016). Because "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fifteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law," the Court considers the federal and state claims together. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. Town of Meriden*, 43 Conn. App. 387, 392 (Conn. App. Ct. 1996)). The elements of such a claim under Connecticut law are: (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause. *Marchand v. Simonson*, 16 F. Supp. 3d 97, 109 (D. Conn. 2014) (quoting *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002)). The Town Defendants do not challenge the Complaint's allegations as to the first three elements.

"To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982)). The Town Defendants do not challenge the Complaint's allegations as to the first two elements. *See* [Dkt. 1-1 ¶¶ 123, 127, 139]. Nor do Defendants seem to challenge the pleading as to the fourth element requiring malice, and the Court finds that the facts alleged state a plausible claim that the Town Defendants acted with malice in bringing the case against Ms. Chase.[4] Thus, the challenge to the false arrest and malicious prosecution claims rests on the sufficiency of the pleading as to the lack of probable cause element.

1. Probable Cause Defense

The existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under both federal and Connecticut law. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008); *Walczyk v. Rio*, 496 F.3d 139, 152 n. 14 (2d Cir. 2007) ("The existence of probable cause to arrest

---

[4] In so finding, the Court takes into account Ms. Chase's allegations that she informed the Town Defendants of multiple witnesses who could corroborate her harassment allegations against Mr. Nodine, their alleged demeanor and treatment of Mr. Nodine during his interview, their alleged repeated dismissals of Ms. Chase's attempts to formally amend her statement, and their provision of information and confidential materials to Mr. Nodine regarding Ms. Nodine's impending arrest before even she knew that she was under suspicion. *See* [Dkt. 1-1 ¶¶ 74-76, 81-83, 85, 109-125].

constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."); *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007) (citing *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).

When an arrest is made pursuant to a warrant issued by a neutral magistrate, probable cause is presumed. *See Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issue by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."). A plaintiff may overcome this presumption by showing that "the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Soares*, 8 F.3d at 920 (quoting *Golino v. Town of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991)); *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Here, Detective Colangelo arrested Ms. Chase for an alleged violation of Conn. Gen. Stat. § 53a-157b, which states in pertinent part:

> A person is guilty of false statement when such person (1) intentionally makes a false written statement that such person does not believe to be true with the intent to mislead a public servant in the performance of such public servant's official function, and (2) makes such statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

The Town Defendants argue that Detective Colangelo "had probable cause to arrest [Ms. Chase] because a valid arrest warrant had been issued by a judge."

[Dkt. 34-1 at 11].  They further argue that Ms. Chase has not sufficiently alleged what information, if any, was "false and/or omitted from the warrant application, which information would have negated the finding of probable cause."  *Id.* at 11-12. Thus, they suggest that Ms. Chase failed to allege facts rebutting the presumption of probable cause for arrest.  The Court disagrees.

Ms. Chase acknowledges that Detective Colangelo had a warrant for her arrest but alleges that Detective Colangelo's affidavit "was filled with lies, innuendos, and distortions."  [Dkt. 1-1 ¶ 134].  Ms. Chase does not leave it to conclusory allegations; she makes specific allegations as to the warrant's untruths and misrepresentations.   She alleges that Detective Colangelo untruthfully represented that he told her that "she could call and speak to Affiant Colangelo about her decision to provide a written statement," which would suggest that he had made himself available for her to revise her statement when she was ready but that she had affirmatively chosen not to do so.  *See id.*  She also alleges that his statement that "[a]s of 7/7/17, Chase has not called to speak to Affiant Colangelo of [sic] Officer Gompper" is misleading.  *See id.*  She further alleges:

> These statements completely misrepresent the facts presented to the reviewing court.   Nicole Chase attempted to contact defendant Colangelo numerous times.  She tried to revise her complaint before he drafted and signed the warrant, and after he had signed the warrant, but before it had been presented to the reviewing State's Attorney, or the court.  Chase even emailed the revised version of her statement to Detective Colangelo one month before it was signed or reviewed by the State's Attorney or Judge.

*Id.*

Even more specifically, Ms. Chase alleges that she told Detective Colangelo during her June 21, 2017 interview that she wanted to revise her statement, but that

she wanted to consult with a lawyer first. *Id.* ¶ 109. She alleges that she tried to get in contact with Detective Colangelo numerous times following her interview on June 21, 2017—calling him several days later, asking for him when she visited the station on July 13, 2017, and sending him multiple emails later in July. *Id.* ¶¶ 110, 112-118. The Complaint alleges that neither Officer Gompper nor Detective Colangelo responded to any of Ms. Chase's efforts until August 10, 2017, when Detective Colangelo emailed her back saying that he hadn't realized she wanted to amend her statement but that he "had already documented the change in [her] recount of the incident." *Id.* ¶¶ 114, 119. Ms. Chase alleges that all of this happened weeks before the Assistant State's Attorney signed the warrant application on August 30, 2017, and more than a month before the Court signed the warrant on September 6, 2017. *Id.* ¶¶ 121, 122. Thus, the Complaint plausibly alleges that at the time of the judge's signature the warrant affidavit included misrepresentations of fact such that it was false and misleading.

Taking these allegations as true, the Complaint states a plausible claim that Detective Colangelo, the warrant application affiant, "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause," *Soares*, 8 F.3d at 920 (internal quotations omitted), thus overcoming the assumption of probable cause provided by the signed warrant. The Complaint alleges that Officer Gompper was involved in the investigation and contributed to the warrant application. *See* [Dkt. 1 ¶ 128].

These allegations are sufficient to state plausible claims of false arrest and malicious prosecution against Officer Gompper as well.

2. <u>Sergeant Penney – § 1983 Liability Personal Involvement Requirement</u>

Ms. Chase's personal capacity § 1983 false arrest (Count 14) and malicious prosecution (Count 17) claims are also alleged against Sergeant Penney. The Town Defendants argue however that her allegations as to Sergeant Penney's personal involvement, as required for liability under § 1983, are insufficient.[5]

The Supreme Court has held that respondeat superior may not serve as the basis for imposing § 1983 liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). "The Supreme Court's rejection of respondeat superior as a basis for § 1983 liability necessarily means that each defendant, whether an individual or entity, may be held liable only for that defendant's own wrongs. This principle is invoked most frequently and prominently in the context of municipal entity and supervisory officer liability, but applies to all defendants sued under § 1983." Schwartz, Section 1983 Litig. Claims & Defenses, § 6.04 Rule Against Respondeat Superior Liability. In *Rizzo v. Goode*, the Supreme Court held that superior officers cannot be held liable under § 1983 merely because of their authority to control subordinate employees. 423 U.S. 362 (1976). As a result, an official must have

---

[5] The Town Defendants also argue that Ms. Chase's claims as to Chief Arciero's personal involvement are lacking. But Chief Arciero is not a named defendant for Counts 14 and 17 and Counts 15 and 18 against Chief Arciero in his official capacity have already been found lacking *infra*. The Town Defendants' § 1983 personal involvement arguments do not apply to Counts 16 and 19 because they are state claims. The Town Defendants do not argue that § 1983 limits to liability also apply to the state and common law false arrest and malicious prosecution claims. Nor do the Town Defendants argue any other immunity or liability limitations as to these claims. As such, the Court declines to wade into any such issues.

been "personally involved" in a violation of the plaintiff's federal rights in order for him or her to be subject to § 1983 liability. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991).

Ms. Chase alleges her § 1983 false arrest and malicious prosecution claims against Sergeant Penney, in addition to Detective Colangelo and Officer Gompper. The Complaint alleges that Sergeant Penney was the "Shift Commander who oversaw Officer Gompper and Detective Colangelo in the investigation of Nicole Chase's . . . [c]omplaint and her arrest." [Dkt. 1-1 ¶¶ 19-20]. It further alleges that "Penney reviewed and approved all of the police reports pertaining to the investigation" and that he "took Colangelo's oath as to the accuracy of the warrant and approved the Arrest Warrant on July 7, 2017." *Id.* ¶ 129. The Complaint alleges that his approval and allowance of submission of the warrant was "with deliberate and/or reckless disregard for the false, distorted, and misleading information contained therein, and the omission of material exculpatory information." *Id.* ¶ 224.

These allegations are insufficient to state a claim against Sergeant Penney because they do not include an allegation that he knew or should have known any statement in the warrant application was false or misleading. Counts 14 and 17 are therefore DISMISSED without prejudice to filing an amended complaint within fourteen days of the date of this decision alleging facts establishing Sergeant Penney knew or should have known a material statement in the warrant application was false or misleading.

### 3. Chief Arciero and Town of Canton – Counts 16 and 19

In addition to naming Detective Colangelo, Officer Gompper, and Sergeant Penney in her state law false arrest (Count 16) and common law malicious prosecution (Count 19) claims, Ms. Chase names Chief Arciero and the Town of Canton. The Town Defendants make no arguments outside those discussed *infra* challenging the liability of these two additional defendants on these counts. As such, the Court declines to dismiss them *sua sponte.*

### C. Denial of Equal Protection

The Town Defendants argue that, as to Counts 20 and 21 for denial of equal protection in the Defendants' personal and official capacities, Ms. Chase "fails to state a plausible claim for relief for selective enforcement or pursuant to a class of one theory of liability." [Dkt. 34-1 at 12]. Because the Court has already concluded that Count 21 is insufficiently pled and therefore dismissed, the Court considers only Count 20 for denial of equal protection against the individual Defendants in their personal capacities.

Ms. Chase's Opposition to the Motion makes clear that she is asserting a selective enforcement claim, rather than a class of one claim, *see* [Dkt. 43 at 27, n.3], so the Court considers whether she sufficiently pled the former theory of liability.

The Second Circuit has recognized that the Equal Protection Clause may be violated by selective enforcement or selective adverse treatment. *See Bush v. City of Utica*, at 134. "To state such a claim, a plaintiff must allege (1) that he or she was treated differently from other similarly situated individuals, and (2) that the

'treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  The second element requires the plaintiff to allege that there is no rational basis related to a legitimate governmental purpose for different treatment based on the alleged classification.  *Id.*

Here, the Complaint alleges that the Town of Canton Police Department "maintained longstanding discriminatory practices against women" amounting to custom and practice in the Department.  [Dkt. 1-1 ¶ 249-50].  It further alleges that inadequate training and oversight of investigations related to crimes against women has led to different treatment of women, as opposed to men, when reporting crimes, and the failure to take cases such as Ms. Chase's seriously.  *Id.* ¶ 256-58. In addition, the Complaint alleges that Mr. Nodine was treated in a "blatantly disparate manner" as compared to her, having been accused of sexual assault, lied to the police about there having been no sexual contact, and then changing his story without repercussions.  *Id.* ¶¶ 262-64.  The Complaint alleges that this disparate treatment amounts to a violation of her right to Equal Protection under the law.

The Town Defendants argue that Ms. Chase's allegations are insufficient to state a claim because the Complaint "contains no more than conclusory allegations and recitation of the elements of her claim, without any facts supporting her assertions."  [Dkt. 34-1 at 14].  The Town Defendants take specific issue with a claimed lack of facts "as to whom she contends she was similarly situated to but

treated differently from" and "tending to establish that she was treated differently based upon her sex." *Id.* Further, they argue that Mr. Nodine is an inappropriate comparator because "failure to investigate and failure to arrest are insufficient to establish a constitutional violation as a matter of law" and "Courts have consistently held that one does not have a recognized right to have another individual investigated or prosecuted." *Id.* at 15 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)).

Defendants' reliance on *Linda R.S. v. Richard D.* is misplaced. In that case, the Supreme Court examined whether the mother of an illegitimate child had standing to challenge the discriminatory enforcement of a Texas statute making the failure to provide for one's child a misdemeanor. 410 U.S. at 614-15. The father of the plaintiff's child had refused to provide support, but when the mother complained, the district attorney refused to act because Texas courts had consistently interpreted the law to apply only to parents of legitimate children such that her case was not within the scope of the statute. *Id.* The Court explained that its "prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* at 619. As such, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.*

The *Linda R.S.* Court's statements regarding a party's interest, or lack thereof, in the prosecution of another was wholly related to whether the former had standing to challenge said prosecution. It in no way implies that a litigant cannot invoke the prosecution or nonprosecution of another individual in making his or

her claim for selective enforcement of laws when she herself has been prosecuted. Indeed, one would be wholly unable to state a claim of selective enforcement if she were prevented from invoking the nonprosecution of others, as this would strip her of any argument that other similarly situated individuals were treated differently in that charges were not brought against them for an impermissible reason.

The Second Circuit has guided however that "mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LaTrieste Rest. V. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). This is because "selective prosecution implies that a selection has taken place." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 469 (1996)). Thus, in order to show that he/she was selectively treated, a party would need to show that the government entity "knew of other violations, but declined to prosecute them." *Id.*

Ms. Chase's allegations regarding similarly situated comparators are minimal and, the Court concludes, insufficient to state a claim. The only comparator provided in the Complaint is Mr. Nodine. Ms. Chase alleges that Mr. Nodine initially told the police that there had been no sexual contact between himself and Ms. Chase but moments later, after consulting with counsel, admitted this was untrue. [Dkt. 1 ¶ 263]. She further alleges that, while she was arrested as a result of her misstatements, the police knew of Mr. Nodine's lie and chose not to charge him. *Id.* ¶ 264. Ms. Chase alleges that this constitutes disparate treatment in violation of her right to equal protection under the laws. *Id.* ¶ 262, 265.

But even taking the facts alleged in the light most favorable to Ms. Chase, Mr. Nodine is not a similarly situated comparator. Unlike Ms. Chase, Mr. Nodine, according to the Complaint, did not include his inaccuracy in any official statement to the police. Rather, he misstated the facts and corrected that misstatement in the same interview. He never made an official false or inaccurate statement upon which the police could have brought a false statement charge. Thus, Mr. Nodine does not qualify as a similarly situated comparator. Because Mr. Nodine is the only comparator included in the Complaint and the Court has concluded that he is not similarly situated, Ms. Chase's equal protection claim is insufficiently pled and therefore DISMISSED in its entirety.

D. <u>Denial of Substantive Due Process</u>

Ms. Chase also brings a claim for denial of substantive due process (Count 22), alleging that the Town Defendants' behavior "was an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience." [Dkt. 1-1 ¶ 268]. She further argues that the Fourteenth Amendment guards generally against official conduct which shocks the conscience or is used for purposes of oppression and that the Town Defendant's actions fall into these categories and she has thus stated a claim. [Dkt. 43 at 28]. The Town Defendants suggest that Ms. Chase cannot bring a substantive due process claim when a more specific claim—e.g. a Fourth Amendment claim—is available. [Dkt. 34-1 at 18-19]. The Court agrees with the Town Defendants.

In *Albright v. Oliver*, the Supreme Court concluded that the defendant's malicious prosecution claim was properly asserted under the Fourth Amendment,

rather than the Fourteenth. 510 U.S. 226 (1994). The Court explained that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotations omitted)). Because "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it," "substantive due process, with its scarce and open-ended guideposts, can afford [the defendant] no relief." *Id.* at 274-75 (quoting *Collings v. Harker Heights*, 503 U.S. 115, 125 (1992)).

This analysis appropriately applies to Ms. Chase's substantive due process claim. Because her allegations fall within the purview of the Fourth Amendment, corresponding to her § 1983 false arrest and malicious prosecution claims, her Fourteenth Amendment claim is DISMISSED. *See Nadeau v. Anthony*, No. Civ.A. 303-cv-34 (AWT), 2003 WL 22872150, at *2 (D. Conn. Dec. 2, 2003) (dismissing substantive due process claim, finding that the "plaintiff may not pursue a cause of action under the Fourteenth Amendment for violation of his right to substantive due process when a cause of action for his claim exists under the Fourth Amendment.").

E. <u>Intentional Infliction of Emotional Distress</u>

In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result

of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986); *see also Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F. Supp. 2d at 194.

Ms. Chase brings an intentional infliction of emotional distress claim against Detective Colangelo, Officer Gompper, and the Town of Canton. The Town Defendants contend that Ms. Chase has not alleged "extreme and outrageous" conduct which would satisfy the intentional infliction of emotional distress standard. [Dkt. 34-1 at 24]. They cite two cases to suggest that Ms. Chase's allegations are lacking.

First, they cite *Appleton v. Board of Education*, in which the Supreme Court of Connecticut found that the defendants' conduct did not rise to the level of extreme and outrageous. 757 A.2d 1059, 1063 (Conn. 2000). In *Appleton*, the plaintiff, a teacher, alleged that the defendants had made condescending comments to her in front of colleagues, questioned her vision and ability to read, told the plaintiff's daughter that she had been acting differently, called police who escorted plaintiff from the school, caused her to undergo psychiatric examinations, and ultimately forced her to take a suspension, leave of absence, and then resign.

*Id.* The Court reasoned that "[t]hese occurrences may very well have been distressing and hurtful to the plaintiff" but "were not so atrocious as to exceed all bounds usually tolerated by decent society," especially given that the Court had previously held that it is not patently unreasonable for an employer to remove a discharged employee from the premises under a security escort. *Id.*

The circumstances in *Appleton* are entirely distinct from those at issue here. The facts alleged by Ms. Chase surpass mere critical statements and removal from the premises by supervisors, which under certain circumstances may have been appropriate and do not, as the *Appleton* Court found, constitute extreme and outrageous conduct.

The Town Defendants next cite *Carrol v. Allstate Ins. Co.*, in which the Connecticut Supreme Court concluded that the evidence presented was not sufficient for a jury to reasonably concluded that the defendant's conduct in its investigation of plaintiff's fire was extreme and outrageous. 815 A.2d 119, 126 (Conn. 2003). The *Carrol* Court explained that "[t]he plaintiff produced evidence that the defendant did not conduct a thorough or reasoned investigation and may have decided too quickly that the fire had been set deliberately. As distressing as this insurance investigation may have been to the plaintiff, however, it simply was not so atrocious as to trigger liability for *intentional* infliction of emotional distress." *Id.*

As with *Appleton*, the facts at issue in *Carrol* are not analogous to those at hand. Ms. Chase does not allege a sloppy investigation followed by a hasty conclusion resulting in denial of insurance coverage by an insurance company.

She alleges much more extreme conduct: that the Town of Canton police chose not to take her claims against Mr. Nodine seriously, treated Ms. Chase as though she was the assailant rather than a victim of sexual assault, willfully or recklessly ignored her attempts to clarify her statement of the events of her sexual assault, knowingly misrepresented the facts surrounding her statement in a sworn affidavit to the State's Attorney and a judge in order to obtain a warrant for her arrest for making a false statement, and then arrested her for initially leaving a salacious detail out of the recounting of her assault. Ms. Chase alleges more than the simple fact of her arrest; she alleges improper conduct leading up to an arrest which caused her significant emotional distress.

The Court finds that these allegations are sufficient to state a claim for intentional infliction of emotional distress against Detective Colangelo as well as Officer Gompper, who Ms. Chase alleges was involved in the development and execution of the case. The Town Defendants make no argument that the Town of Canton is immune from this claim or ineligible for respondeat superior liability. As a result, this claim stands against the Town of Canton as well.

### F. Negligent Infliction of Emotional Distress

"To prove a claim of negligent infliction of emotional distress, the plaintiff must establish that the defendant knew or should have known that its conduct involved an unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in bodily harm." *Copeland v. Home & Cmty. Health Servs., Inc.*, 285 F. Supp. 2d 144, 149 (D. Conn. 2003) (quoting *Buckman v. People Express, Inc.*, 205 Conn. 166, 173, 530 A.2d 596 (1987)). Having found that Ms.

Chase sufficiently alleged a claim for intentional infliction of emotional distress, which carries a higher standard than negligent infliction, the Court finds that she has stated a claim for negligent infliction of emotional distress for the same reasons. However, the Town Defendants argue that this claim is barred by the doctrine of governmental immunity. [Dkt. 34-1 at 25].

Under common law in Connecticut, "barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion." *Elliott v. City of Waterbury*, 715 A. 2d 27, 40 (Conn. 1998) (citing *Heigl v. Bd. Of Edu.*, 218 Conn. 1, 4-5 (1991); *Evon v. Andrews*, 211 Conn. 501, 505 (1989)). "The hallmark of a discretionary act is that it requires the exercise of judgment . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment." *Violano v. Fernandez*, 907 A.2d 1188, 1193-94 (Conn. 2006) (quoting *Martel v. Metro. Dist. Commission*, 275 Conn. 38, 48-49 (2005)). Ms. Chase does not contest that Defendants' actions were discretionary and would therefore be entitled to immunity but argues in her Opposition to the Motion to Dismiss that an exception to immunity applies here. *See* [Dkt. 43 at 29].

The Connecticut Supreme Court has explained that there are three exceptions to discretionary act immunity. *See Violano*, 907 A.2d at 1194. One such exception is "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Id.* The exception requires "(1) imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to

subject that victim to that harm." *Violano*, 907 A.2d at 1194. Ms. Chase invokes this exception in her Opposition Memorandum. *See* [Dkt. 43 at 29].

The Town Defendants argue that, because Ms. Chase did not explicitly plead the exception in her Complaint, she cannot invoke it now. [Dkt. 46 (Reply Mem.) at 8]. Governmental immunity is a special defense which a defendant must raise in his or her pleadings or, where it is apparent from the face of the complaint that the government function complained of was discretionary, the defendant may attack the legal sufficiency of the complaint through a motion to strike. *Violano*, 321 A.2d at 1195. Contrary to the Town Defendants' assertion, a plaintiff is not required to explicitly name in its initial complaint an exception to a special defense which the defendant has not yet had an opportunity to raise. The two cases cited by the Town Defendants do not suggest otherwise.

Defendants rely on *Haynes v. City of Middletown*, 997 A.2d 636, 641 (Conn. App. 2010), *rev'd*, 50 A.3d 880, 882 (Conn. 2012), and *Kajic v. Marquez*, HHDCV166065320S, 2017 WL 4399631, at *9 (Conn. Super. Ct. Aug. 16, 2017), in which the courts declined to consider the applicability of the identifiable person, imminent harm exception to governmental immunity raised by the plaintiffs for the first time late in each case. But in each of those cases, unlike here, the plaintiffs had not raised the exception promptly after the defendants pled the special defense of governmental immunity. Rather, in *Haynes* the plaintiff raised the exception for the first time after trial and in response to the defendants' motion for directed verdict, 997 A.2d at 641, and in *Kajic* the plaintiff first raised the exception in opposition to a summary judgment motion and after the close of discovery, 2017

WL 4399631, at *9. The courts concluded that the plaintiffs had failed to make the applicability of the exception issues in the cases, both of which had proceed past discovery, and therefore declined to allow the plaintiffs to raise it at such late stages. *See Haynes*, 997 A.2d at 641; *Kajic*, 2017 WL 4399631, at *9.

But here, the pleading stage has not concluded, and when Defendants raised the special defense of governmental immunity for the first time in their Motion to Dismiss, Plaintiff promptly raised the immunity exception, thus making it an issue in the case well before the close of discovery. The question then becomes whether Plaintiff pleaded facts sufficient to support the applicability of the exception.

The exception requires (1) imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. *Violano*, 907 A.2d at 1194. Plaintiff's Opposition Memorandum argues that she "was the identifiable victim of the alleged negligent conduct and harm inflicted by Officers Colangelo and Gompper." [Dkt. 43 at 29]. Thus, Plaintiff seems to argue that Detective Colangelo and Officer Gompper would have known from the circumstances that their failure to correct the warrant application would result in the imminent harm of Ms. Chase.

It is unclear from the Complaint or the Opposition, but the Court presumes that the alleged imminent harm would have been a violation of Ms. Chase's Fourth Amendment rights or the emotional distress that she experienced. But such non-physical harm is "not the type of 'dangerous condition' that rises to a level so as to invoke the imminent harm to identifiable victim exception." *See Borg v. Town of Westport*, No. 3:15-cv-1380(AWT), 2016 WL 9001021, at *10 (D. Conn. Aug. 18,

2016); *Bento v. City of Milford*, No. 3:13-cv-1385, 2014 WL 1690390, at *6 (D. Conn. Apr. 29, 2014) ("[C]ourts in this state have also held that the imminent harm complained of must be physical in nature in order for the exception to apply."); *Pane v. City of Danbury*, No. CV97347235S, 2002 WL 31466332, at *9 (Conn. Super. Ct. Oct. 18, 2002), *aff'd*, 267 Conn. 669 (2004) (Finding that "[c]ases where plaintiffs allege 'imminent harm' typically involve physical harm rather than emotional distress[,]" therefore finding governmental immunity for the plaintiff's negligent infliction of emotional distress claim).

The Complaint includes no allegation that the Town Defendants would have known from the circumstances that some physical harm would have befallen Ms. Chase had they failed to act.  As such, Ms. Chase has failed to sufficiently plead facts supporting the applicability of an exception to the Town Defendants' governmental immunity with respect to her negligent infliction of emotional distress claim and that count is accordingly DISMISSED in its entirety.[6]

G. <u>Federal Qualified Immunity</u>

The Town Defendants argue that "the individual Canton defendants are entitled to qualified immunity as to each claim set forth by the plaintiff in Counts Fourteen through Twenty-two."  [Dkt. 34-1].  The Court has already found that the

---

[6] In one sentence in her Opposition Memorandum, Plaintiff states that her "negligent infliction of emotional distress claim against the Town is founded on § 52-577n."  [Dkt. 43 at 30].  To the extent Plaintiff intended to make some argument on this basis, it is completely undeveloped both factually and legally and the Court declines to consider such a cursory argument.  *See Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.")

official capacity false arrest and malicious prosecution claims, as well as the denial of equal protection claims and the denial of substantive due process claim must be dismissed. Therefore, the Court considers the Town Defendants' qualified immunity arguments with respect to the remaining § 1983 false arrest and malicious prosecutions claims, Counts 14 and 17.[7]

"Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Benn v. Kissane*, 510 F. App'x 34, 37-38 (2d Cir. 2013). Put another way, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In the false arrest / malicious prosecution context, the Second Circuit has explained that, "there can frequently be a range of responses to given situations that competent officers may reasonably think are lawful. . . . The essential inquiry . . . is whether it was objectively reasonable for the officer to conclude that probable

---

[7] Even though Defendants argue that qualified immunity applies to Counts 14 through 22, which encompasses state and common law claims in addition to § 1983 claims, as far as the Court can tell, Defendants invoke only the federal doctrine of qualified immunity, which does not apply to Plaintiff's state and common law false arrest and malicious prosecution claims. Defendants do not argue that this federal standard should apply to the state claims or assert that Connecticut's common law qualified immunity doctrine should apply to these claims. The Court therefore only considers federal qualified immunity with respect to the civil rights claims. *See Mulligan v. Rioux*, 643 A.2d 1226, 1239 n.29 (Conn. 1994).

cause existed." *Benn*, 510 F. App'x at 38. More specifically, the Second Circuit has explained that "[w]here an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, . . . the shield of qualified immunity is lost." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, the Town Defendants argue that the individual defendants are entitled to qualified immunity because they "cannot be found liable for any alleged statutory and/or constitutional violations." [Dkt. 34-1 at 29-30]. This argument fails because the Court has concluded that Ms. Chase has alleged facts sufficient to state § 1983 false arrest and malicious prosecution claims based on violation of her Fourth Amendment right not to be arrested or prosecuted without probable cause. The Town Defendants make no arguments that the violated rights were not clearly established or that it would have been objectively reasonable for Defendants to believe that their actions were lawful. And the Court believes that such arguments would have failed at this stage given that one's right not to be prosecuted absent probable cause is not, and has not for some time, been in question. As such, the Court finds that the Town Defendants are not entitled to qualified immunity at this stage.

## Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Town Defendants' Motion to Dismiss. Counts 15, 18, 20, 21, 22 and 24 are DISMISSED. Additionally, Counts 14 and 17 are dismissed as to Sergeant Penney. Plaintiff's § 1983 personal capacity and state and common law claims for false and

arrest and malicious prosecution (Counts 14, 16, 17, and 19), as well as her intentional infliction of emotional distress claim (Count 23) remain.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　Hon. Vanessa L. Bryant
　　　　　　　　　　　　　　　　　United States District Judge

Dated at Hartford, Connecticut: January 22, 2019