UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE CHASE, | : | |
|     Plaintiff, | : | |
| | : | No. 3:18-CV-00683 (VLB) |
| v. | : | |
| | : | |
| NODINE'S SMOKEHOUSE, INC., | : | April 3, 2019 |
| CALVIN NODINE, TOWN OF CANTON, | : | |
| JOHN COLANGELO, ADAM GOMPPER, | : | |
| MARK J. PENNEY, CHRISTOPHER | : | |
| ARCIERO, | : | |
|     Defendants. | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING MOTION TO AMEND COMPLAINT [DKT. 78]

Now before the Court is Plaintiff's motion for leave to amend her Complaint to replead her equal protection claim against Defendants Colangelo and Gompper in their personal capacity. On January 22, 2019, the Court granted in part and denied in part the Town Defendants' Motion to Dismiss Plaintiff's claims against them.[1] *See* [Dkt. 66 (Mem. of Decision on Mot. to Dismiss)]. The Court dismissed Plaintiff's equal protection claims, holding that Plaintiff had failed to plead similarly situated but differently treated comparators as required for the selective enforcement equal protection claim put forth. Plaintiff now seeks to replead an equal protection claim alleging that Defendants Colangelo and Gompper refused to properly investigate and prosecute her sexual assault complaint because she is a woman. For the following reasons, the motion is granted.

---

[1] The Court upheld Plaintiff's § 1983 personal capacity and state and common law claims for false arrest and malicious prosecution and her intentional infliction of emotional distress claim. [Dkt. 66 (Mem. of Decision on Motion to Dismiss)].

1

## Background

Plaintiff filed her Complaint in Connecticut Superior Court on April 10, 2018. Defendants Town of Canton, John Colangelo, Adam Gompper, Mark Penney, and Christopher Arciero (the "Town Defendants") removed the case to the District Court for the District of Connect on April 20, 2018. *See* [Dkt. 1 (Notice of Removal and Compl.)]. In their Joint Rule 26(f) Report, the parties agreed Plaintiff's deadline to amend the complaint was July 16, 2018. *See* [Dkt. 25 (Joint Rule 26(f) Report) at 5].

Plaintiff's Complaint alleged that Defendant Calvin Nodine, the owner of Nodine's Restaurant where Plaintiff worked, sexually assaulted her, including forcing her to perform oral sex on him on May 16, 2017. The Complaint further alleged that, when Plaintiff reported the assault to the Canton Police, they disbelieved her claim, failed to adequately investigate the allegations, and ultimately arrested her for making a false statement pursuant to a warrant issued on the basis of a false and incomplete warrant affidavit. Plaintiff brought claims for false arrest, malicious prosecution, denial of equal protection, denial of substantive due process, intentional infliction of emotional distress, and negligent infliction of emotional distress against the Town Defendants.

On July 24, 2018, the Town Defendants moved to dismiss all claims against them. *See* [Dkt. 34 (Mot. to Dismiss)]. The Court upheld Plaintiff's § 1983 false arrest and malicious prosecution claims against Defendants Colangelo and Gompper in their personal capacity, as well as the state and common law false arrest, malicious prosecution, and intentional infliction of emotional distress claims. [Dkt. 66]. The Court dismissed Plaintiff's claims for equal protection and substantive due process against the Town Defendants in their individual and official capacities. In the decision, the Court

granted Plaintiff leave to replead her *Monell* claims against the Town Defendants in their official capacities to the extent Plaintiff could allege sufficient factual support.

Plaintiff now seeks leave to include a renewed equal protection claim against Defendants Colangelo and Gompper in their personal capacity. *See* [Dkt. (Mot. to Amend Compl.)].

## Discussion

Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely give leave to amend pleadings when justice so requires. The Supreme Court has emphasized that this mandate is to be heeded. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* The grant or denial of leave to amend is within the discretion of the district court. *Id.* Thus, "[t]he court plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

The court should determine whether the proposed amendment will be "futile in effect" and, if so, amendment will not be allowed. *See Rucciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). "[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178,

182 (1962)). A party opposing a motion to amend has the burden of proving that such amendment would be futile. *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396097 (E.D.N.Y. 1998).

The Town Defendants object to Plaintiff's proposed Count Eighteen alleging an equal protection claim on a theory of discriminatory denial of police protective services. *See* [Dkt. 81 (Opp'n Mot. Amend Compl.) at 1]. Specifically, the Town Defendants argue that amendment would be futile and highly prejudicial to them.

A. <u>Amendment Is Not Futile</u>

Plaintiff contends that the proposed amended complaint alleges sufficient facts to support a claim for discriminatory denial of police protective services. *See* [Dkt. 79 at 3-4]. To state such a claim, Plaintiff need not plead disparate treatment of similarly situated individuals. *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001). Rather, a plaintiff alleging that a facially neutral law or policy has been applied in an unlawfully discriminatory manner must allege facts supporting a plausible inference that discriminatory intent was a motivating factor behind the denial of police protection. *Id.* at 110; *White v. City of New York*, 206 F. Supp. 3d 920, 931-32 (S.D.N.Y. 2016). Plaintiffs may allege discriminatory intent via evidence of animus on the part of individual officers, including pointing to demeanor and specific statements. *See White*, 206 F. Supp. 3d at 932.

Plaintiff's proposed amended complaint alleges that Connecticut State Laws and Canton Police Department Procedures require the police to provide protective services in a fair and impartial manner. *See* [Dkt. 78-2 (Proposed Am. Compl.) at ¶¶ 179-82]. It further alleges that Defendants Colangelo and Gompper denied Plaintiff these services based on their discriminatory animus towards Plaintiff on account of her sex. *Id.* at ¶ 177.

Plaintiff alleges that specific statements made by Defendants Colangelo and Gompper in reports and during interviews as well as their demeanor evidence their discriminatory animus. *Id.* at ¶¶ 178-83. For example, Plaintiff alleges that, after telling Defendant Gompper that Defendant Nodine had pulled her into the men's restroom, exposed himself to her, and told her to perform oral sex on him (at which point she was able to run away), Defendant Gompper said he believed hers was a "sexual harassment" complaint and merely a civil matter. Plaintiff alleges that Defendant Gompper's report of the interview with Plaintiff mocked her story by putting certain phrases in quotations—"VICTIM gave Calvin Nodine 'oral'; worked her 'butt off'; she wasn't 'getting sex' at home; he was 'hard' again." *Id.* at ¶ 178. Plaintiff alleges that Defendant Colangelo was cold and dismissive of Plaintiff during her interview but friendly and jocular with Defendant Nodine during his interview—asking "what's this girl's deal," recharacterizing Plaintiff's allegations of sexual assault and harassment against Defendant Nodine as "flirting," and showing his disdain for the case by saying he knew Defendant Nodine was not a "menace to society" and that there was no need to "track down every lead." *Id.* Even further, Plaintiff alleges that, during the Nodine interview, Detective Colangelo set out a plan to "turn the tables" on Plaintiff and bragged about flipping a prior sexual assault case on the victim by bringing a false statement case against her. *Id.* at ¶¶ 179-80. These facts sufficiently allege that Defendants declined Plaintiff police protective services. Further, they support an inference that Defendants' denial of protective service to Plaintiff was motivated by discriminatory animus.

      Defendants contend that the Court should deny leave to amend because the facts alleged do not "support a policy or custom of the defendants to provide less police

5

protection to victims of sexual assault or to women than to men." [Dkt. 81 at 8]. But that is just one way to support an equal protection claim. *See Pyke*, 258 F.3d at 110 ("A plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." (quoting *Brown v. Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)). A plaintiff may, alternatively, support her equal protection claim by alleging "that a facially neutral law or policy has been applied in an intentionally discriminatory [] manner," *see id.* at 110, as Plaintiff has done here.

Defendants also vaguely suggest that the Supreme Court established in *DeShaney v. Winnebago County. Department of Social Services*, 489 U.S. 189 (1989), that the police do not have such an affirmative duty to protect. *Id.* at 8-9. In *DeShaney*, the Court analyzed a claim by a minor that the State deprived him of his liberty interest in freedom from unjustified intrusions on personal security by failing to provide him with adequate protection from his father's violence. 489 U.S. at 195. The Court explained that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive an individual." *Id.* at 196. Here, Plaintiff is not claiming that Defendants deprived her of due process by failing to protect her from Defendant Nodine. Rather, she alleges that Defendants chose not to take her complaint against Defendant Nodine seriously because she was a woman making a sexual assault complaint. As the *DeShaney* Court explained, "[t]he State may not . . . selectively deny

6

its protective services to certain disfavored minorities without violating the Equal Protection Clause." *Deshaney*, 489 U.S. at 197 n.3 (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)). This means that the police may not choose to shirk their duty to pursue a criminal sexual assault complaint because of some animus against women who make such claims. *See White*, 206 F. Supp. 3d at 931 (on a motion to dismiss, upholding equal protection claim based on allegation "that police refused to take [plaintiff's] complaints after learning that he is a transgender man"). Plaintiff's proposed amended complaint alleges sufficient facts to support such a claim. As such, amendment would not be futile.

## B. Defendants Are Not Prejudiced by Amendment

The Town Defendants argue that the Court should deny Plaintiff leave to amend because doing so would subject them to undue prejudice. [Dkt. 81 at 6-7]. First, the Town Defendants cite the time and cost already expended in prosecuting their Motion to Dismiss and the concern that they would be denied the opportunity to move to dismiss the new claim due to lack of time in the schedule. *Id.* at 6. Second, the Town Defendants suggest that they tailored discovery requests to Plaintiff's selective enforcement theory of liability and assertion of a new equal protection theory of liability at this stage denies them fair notice of the basis for Plaintiff's claim and the opportunity to investigate and seek discovery on that claim. *Id.* at 7. The Court finds these arguments to be specious.

Plaintiff originally pled denial of equal protection claims setting out alleged facts as to the disparate treatment she received in reporting her sexual assault complaint to the Canton Police Department because of her sex. *See* [Dkt. 1, Compl. at ¶¶ 248-266]. Plaintiff did not limit her equal protection claim to a selective enforcement theory of liability. Defendants' Motion to Dismiss posited that the claims "appear[] to be based

7

upon selective enforcement or adverse enforcement" before proceeding to argue that Plaintiff had failed to allege the required comparators and therefore failed to state a claim. [Dkt. 34-1 (Mem. in support of Mot. to Dismiss) at 12]. If Defendants were so confused as to the nature of the claim, they could have moved for a more definite statement of the claim. Instead, it seems they sought to use any perceived ambiguity to their favor. Indeed, Defendants may have chosen to argue for dismissal of the equal protection claims on those theories *because* they required Plaintiff to plead comparators, which she had not sufficiently done. Plaintiff adopted and defended the selective enforcement theory in her opposition to the motion to dismiss. But selective enforcement and discriminatory denial of protective services are two sides of the same equal protection coin, especially in the context of this case. The Court finds that the Complaint provided Defendants adequate notice of the equal protection claim under an unspecified theory of liability such that Defendants are not prejudiced here. Defendants knew of the alleged facts forming the basis of the equal protection claim, regardless of the specific theory of liability later assigned to it.

Further, in large part, the same evidence and facts relevant to the new theory were also relevant to the prior theory. The discovery already conducted regarding the equal protection claim will be similarly relevant to the renewed equal protection claim. Should Defendants see a need for additional discovery on the renewed claim, they have the opportunity to seek such information (and indeed suggest they are already planning to do so during Plaintiff's deposition, *see* [Dkt. 81 at 7]) as discovery does not close until June 3, 2019. Additionally, nothing is stopping Defendants from filing a motion to dismiss the renewed equal protection claim, should they believe one is merited.

## Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Amend the Complaint, [Dkt. 78]. Plaintiff is instructed to refile the amended complaint attached to her motion on the docket as the operative Amended Complaint.

**IT IS SO ORDERED.**

                                                                                                           /s/
                                                    **Hon. Vanessa L. Bryant**
                                                    **United States District Judge**

**Dated at Hartford, Connecticut: April 3, 2019**