UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


```
----------------------------------X
NICOLE CHASE,                     :
                                  :
                  Plaintiff,      :
                                  :
              versus              :    CIVIL ACTION NO.
                                  :    3:18 cv 00683 (VLB)
NODINE'S SMOKEHOUSE, INC.,        :
CALVIN NODINE, TOWN OF CANTON,    :
JOHN COLANGELO, ADAM GOMPPER,     :
MARK J. PENNEY, AND CHRISTOPHER   :
ARCIERO,                          :
                                  :
                  Defendants.     :
----------------------------------X
```

COPY

D E P O S I T I O N

Deposition of ASSISTANT STATE'S ATTORNEY

MICHAEL J. WEBER, JR., taken on behalf of the

Plaintiff, pursuant to the Federal Rules of Civil

Procedure, before Donna M. Miani, CSR, a Notary

Public, in and for the State of Connecticut, on

Tuesday, April 9, 2019, 2:10 p.m., at the law offices

of SHIPMAN, SHAIKEN & SCHWEFEL, LLC, 433 South Main

Street, #319, West Hartford, Connecticut.


GOLDFARB AND AJELLO, LLC
24 EAST AVENUE #1372
NEW CANAAN, CONNECTICUT  06840
(203) 972-1000

**EXHIBIT Q**

1    cause to pursue it.  Signs it if he deems appropriate.

2              A judge reviews it subsequent to the

3    prosecutor and at that point decides independently whether

4    or not they believe there's enough probable cause to

5    pursue it.  If they sign it, then it's an instrument upon

6    which someone could be arrested.

7         Q.    Okay.  I think you answered this, who

8    prepares the arrest warrant or the application for arrest

9    warrant?

10        A.    A police officer.

11        Q.    Okay.

12        A.    Somebody in law enforcement.

13        Q.    Okay.  And the statements and the

14   information in the warrant application are sworn to by the

15   police officer?

16        A.    Yes.

17        Q.    And are they sworn to by the -- strike

18   that.

19             So after the warrant application is

20   drafted, with respect to GA 14, where does the -- how does

21   the police officer submit the application to the state's

22   attorney's office?

23        A.    A liaison officer from whatever police

24   department it is will bring the documents and provide it

25   to one of our secretaries, who would log it in and then at

**EXHIBIT Q**

```
1    that particular point distribute it amongst the

2    prosecutors.

3           Q.     When the secretary logs it in, is it the

4    date that it's received?

5           A.     Yes.

6           Q.     Is one of the documents that you produced

7    the log for the -- okay.

8                        MS. MASI:  Yes.

9           A.     Yes.

10                       MS. MASI:  We all went like this,

11                  all three of us.

12          Q.     In the state's attorney's office, or the

13   secretary's office of the state's attorney's office in

14   GA 14, is there a basket that the warrant applications are

15   placed in?

16          A.     I don't understand the question.

17          Q.     Okay.  So Detective Colangelo testified

18   that there was a basket in the secretary's office, that's

19   where he puts the warrant applications.

20          A.     There is a basket or they hand them to the

21   secretary.

22          Q.     Okay.  Okay.

23                 Once an application comes in for a warrant,

24   how does it get assigned to a particular state's attorney?

25          A.     It's distributed evenly amongst the
```

**EXHIBIT Q**

```
 1              Q.      Okay.  So I'm showing you what's been
 2    marked as Plaintiff's Exhibit 18 at a previous deposition
 3    in this case.  If you could take a moment and just look
 4    through that.  And then when you've had an opportunity to
 5    review it, let me know if you recognize it.
 6              A.      By reviewing you mean read?
 7              Q.      Well, I guess...
 8                      Sorry, I just had a family issue.
 9                      You don't have to read it all.  I'm just
10    wondering if you recognize this.
11              A.      Yes, I do.
12              Q.      Okay.  So is this a copy of the arrest
13    warrant application for Nicole Chase?
14              A.      Yes.
15              Q.      Okay.  And on the first page towards the
16    top, is that your signature where it says Signed
17    Prosecuting Attorney?
18              A.      It is.
19              Q.      Okay.  And it's dated August 31st, 2017.
20                      Is that when you signed it?
21              A.      Yes.
22              Q.      Okay.  So you were the assistant state's
23    attorney that reviewed the warrant?
24              A.      Yes.
25              Q.      How was this warrant assigned to you?
```

**EXHIBIT Q**

```
1                  Was it similar to the process that you
2       described earlier?
3             A.      Exactly.
4             Q.      Do you know when you received this warrant?
5             A.      No.
6             Q.      Okay.  When you received the warrant, did
7       you review it then, or do you review it a different day?
8             A.      I don't know.
9             Q.      Okay.  Did you communicate with Detective
10      Colangelo regarding this warrant?
11            A.      No.
12            Q.      Okay.  Did you discuss the warrant with
13      Officer Gompper from the Canton Police Department?
14            A.      No.
15            Q.      Did you communicate via e-mail text with
16      anyone regarding this warrant?
17            A.      What e-mail text?
18            Q.      Via, like by.
19                  Did you text anyone about this e-mail --
20            A.      No.
21            Q.      Okay.  So did you discuss this warrant with
22      anyone before you signed it?
23            A.      No.
24            Q.      Okay.  Did you conduct any legal research
25      in connection with this arrest warrant?
```

**EXHIBIT Q**

```
 1              Q.    You don't know if it's likely?

 2              A.    I don't know.

 3              Q.    Did you take any notes regarding -- in

 4    connection with this application for a warrant?

 5              A.    I don't know.

 6              Q.    Did you look in the file before you came

 7    here today?

 8              A.    Yes.

 9              Q.    Would your notes have been in the file --

10              A.    Yes.

11              Q.    -- if you had taken notes?  Okay.

12                    Now, if you had reviewed police reports in

13    connection with this warrant, would they be in the file?

14              A.    They're independent of each other.

15              Q.    So it wouldn't be in your file?

16              A.    When I was reviewing this warrant?

17              Q.    Right.

18              A.    I wouldn't look at the reports.

19              Q.    Okay.  So in signing this warrant, did you

20    rely on anything else outside of the four corners of this

21    warrant?

22                    (Interruption in proceeding.)

23                    MS. SMITH:  Thank you very much.

24              A.    Warrants are reviewed only on their four

25    corners.
```

**EXHIBIT Q**

1    Q.    And you said that's the transcript for?

2    A.    It's the transcript cover sheet for State

3    versus Nicole Chase, dated November 8, 2017.

4    Q.    Okay.  If you flip the page, the second

5    page has the transcript.

6    A.    It reflects something being transcribed.

7    Q.    Okay.  Were you the state's attorney that

8    entered the nolle in this case?

9    A.    According to this transcript, no.

10    Q.    Okay.  Do you think that transcript's

11    correct?

12    A.    It's certified.

13    Q.    Okay.  Okay.

14          And so you weren't at the hearing for

15    Nicole Chase when the nolle was entered?

16    A.    I don't know.

17    Q.    Okay.  So I'm showing you what's been

18    marked as Plaintiff's Exhibit 58.

19    A.    Yes.

20    Q.    Have you seen that before?

21    A.    Yes.

22    Q.    Can you please tell us what that is.

23    A.    It's a Warrant Detail.

24    Q.    Okay.  And what is a Warrant Detail?

25    A.    It is an in-house record reflecting a

GOLDFARB AND AJELLO, LLC  203-972-1000

**EXHIBIT Q**

1  police case number; accused name; when the warrant was

2  received; when it was signed by a prosecutor and a judge,

3  two different dates; and when it was returned to the

4  police.  Additionally, a bond, if a bond was put on the

5  warrant.

6          Q.    Okay.  And this is from Nicole Chase,

7  right?

8          A.    Yes.

9          Q.    And where it says Received Date, July 11,

10 2017, that's the date it was received, the application for

11 a warrant?

12         A.    Yes.

13         Q.    Okay.  And the prosecutor, MW, that's you?

14         A.    Yes.

15         Q.    And then you signed it on August 31, 2017?

16         A.    Yes.

17         Q.    And then it went to Judge Nguyen?  Nguyen?

18               Okay.  How do you pronounce it?

19         A.    Nguyen.

20         Q.    Okay.  And the judge signed it on

21 September 6th, 2017?

22         A.    According to the document, yes.

23         Q.    Okay.  And it was returned -- the return

24 date, is that returned to your office or to the police

25 office?

**EXHIBIT Q**

1    the warrant, correct?

2         A.    Yes.

3         Q.    And so based on the four corners of this

4    warrant, you found probable cause to believe that Nicole

5    Chase had committed the offense of making a false

6    statement under 53a-157b, correct?

7         A.    Yes.

8         Q.    Okay.  And I think you said you hadn't

9    reviewed e-mails or video recordings or witness statements

10   or text messages relating to this case, correct?

11        A.    Correct.

12        Q.    Okay.  Have you reviewed anything else

13   since you signed this warrant, Exhibit 18, that's changed

14   your probable cause determination, meaning that's altered

15   your opinion that you had when you signed the warrant that

16   there was probable cause for her arrest?

17              MS. MASI:  I'm going to object as to

18              what's privileged as to what he would have

19              thought had he reviewed anything if his

20              decision would have changed, and I advise

21              my client not to answer the question.

22              MR. CLARK:  Okay.  I'm not arguing

23              with you.  I just want to get that again so

24              I understand it.

25              MS. MASI:  So when you asked him if

**EXHIBIT Q**

```
 1                    there was other information basically that
 2                    he reviewed, would that have changed his
 3                    mind.  What happens in his mind is
 4                    privileged.  So I advise him not to answer.
 5                         He can tell you what he reviewed,
 6                    when he reviewed it, but he can't tell you
 7                    why he did something or what he was
 8                    thinking when he did something.
 9                         MR. CLARK:  Okay.
10                         MS. MASI:  That basically would ask
11                    him to do that.
12   BY MR. CLARK:
13        Q.    So sitting here today, do you have a
14   different opinion of whether or not there was probable
15   cause to make the arrest as set forth in this warrant?
16                         MS. SMITH:  I object to that
17                    actually.
18                         First of all, he said he hasn't
19                    reviewed anything, but --
20                         MS. MASI:  I don't think his -- you
21                    can ask the question.  I think my client is
22                    going to be consistent with what he has
23                    already testified to.
24                         MR. CLARK:  Okay.
25                         MS. MASI:  Which he didn't have any
```

GOLDFARB AND AJELLO, LLC   203-972-1000

**EXHIBIT Q**

```
1                        independent recollection, but that's up

2                        to...

3    BY THE WITNESS:

4         A.    I reviewed the four corners of the warrant

5    and thought there was probable cause.

6         Q.    Okay.  And I forget which exhibit it was,

7    but in the file that you produced here today, there's a

8    transcript, that two-sided document.

9         A.    Yes.

10        Q.    And there's an Attorney Diaz on there.

11        A.    Yes.

12        Q.    Who is that, if you know?

13        A.    It's a fellow prosecutor, Attorney Robert

14   Diaz.

15        Q.    And you said you weren't in court on that

16   day reflected in that transcript?

17                   MS. MASI:  Objection, that's a

18                   mischaracterization of what he said.  He

19                   said he didn't know.

20        Q.    Okay.  Well, were you in court on

21   November 8th, 2017 when Attorney Diaz made these

22   statements as reflected in that transcript?

23        A.    I don't know.

24        Q.    Okay.  So on the front page of the folder

25   that you brought with you today it says nolle, correct?
```

**EXHIBIT Q**

```
 1    STATE OF CONNECTICUT   )

 2                          )   SS:   Derby

 3    COUNTY OF NEW HAVEN    )

 4

 5        I, Donna M. Miani, a Certified Court Reporter and

 6    Notary Public within and for the State of Connecticut, do

 7    hereby certify that the within deposition of MICHAEL J.

 8    WEBER, JR., was held before me on the 9th day of April,

 9    2019.

10        I further certify that after said deposition was

11    recorded stenographically by me, it was reduced to type-

12    writing by me and I hereby submit that the within contents

13    of said deposition are true and accurate to the best of my

14    ability.

15        I further certify that I am not a relative of nor an

16    attorney for any of the parties connected with the

17    testimony of the witness.

18        Dated at Derby, Connecticut, on the 25th day of

19    April, 2019.

20

21                    _____

22                    Donna M. Miani, CSR
                      Certified Court Reporter

23

24    My commission expires July 31, 2023.

25
```

**EXHIBIT Q**