```
 1            IN THE UNITED STATES DISTRICT COURT

 2                  DISTRICT OF CONNECTICUT

 3     -------------------------------)

 4     NICOLE CHASE,                  ) NO.

 5              Plaintiff,            ) 3:18-cv-00683 (VLB)

 6          vs.                       )

 7     NODINE'S SMOKEHOUSE, INC.,     )

 8     CALVIN NODINE, TOWN OF CANTON, )

 9     JOHN COLANGELO, ADAM GOMPPER,  )

10     MARK J. PENNEY AND CHRISTOPHER )

11     ARCIERO,                       )

12              Defendants.           )

13     -------------------------------)

14                      VOLUME 1

15     VIDEOTAPED DEPOSITION OF NICOLE HEATHER CHASE

16              DATE:  APRIL 15, 2019

17                     HELD AT:

18                HOWD & LUDORF, LLC

19              65 Wethersfield Avenue

20               Hartford, Connecticut

21                      - - -

22     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

23            HUSEBY GLOBAL LITIGATION
                  (800) 852-4589
24                249 Pearl Street
             Hartford, Connecticut  06103

25
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

**EXHIBIT 2**

```
 1   A P P E A R A N C E S:
 2
 3   For the Plaintiff Nicole Chase:
 4       LAW OFFICE OF LEWIS CHIMES LLC
 5       45 Franklin Street
 6       Stamford, Connecticut  06901
 7       203.324.7744
 8       BY:  LEWIS CHIMES, ESQ.
 9            lchimes@chimeslaw.com
10
11
12   For the Defendants Town of Canton, John Colangelo and
13   Adam Gompper:
14       HOWD & LUDORF, LLC
15       65 Wethersfield Avenue
16       Hartford, Connecticut  06114-1190
17       860.249.1361
18       BY:  KRISTAN M. MACCINI, ESQ.
19            kmaccini@hl-law.com
20       BY:  CHRISTOPHER CLARK, ESQ.
21            cclark@hl-law.com
22
23
24
25
```

**EXHIBIT 2**

```
 1   A P P E A R A N C E S   (continue):
 2
 3   For the Defendant Nodine's Smokehouse, Inc:
 4        LECLAIRRYAN
 5        One Financial Plaza
 6        755 Main Street - Suite 2000
 7        Hartford, Connecticut   06103
 8        860.656.1932
 9        BY:  ELIZABETH M. SMITH, ESQ.
10             elizabeth.smith@leclairryan.com
11
12   For Defendant Calvin Nodine:
13        SMITH, KEEFE, MORAGHAN & WATERFALL, LLC
14        257 Main Street - 2nd Floor
15        Torrington, Connecticut   06790
16        860.482.7651
17        BY:  DAVID A. MORAGHAN, ESQ.
18             dam@skmwlaw.com
19
20   Also Present:
21        Calvin Nodine
22        Johanne Nodine
23        Kelly Nodine
24        Brian Capouch, Video Operator
25
```

**EXHIBIT 2**

```
 1      Q.     Okay.  And who did you speak with?
 2      A.     Sergeant Penney.
 3      Q.     And what time did you speak with him on
 4   Monday?
 5      A.     I do not know.
 6      Q.     And what was the substance of your
 7   conversation with Sergeant Penney?
 8      A.     To the best of my knowledge, I was going
 9   back in to -- to complain about the Sunday and just
10   incidents and to see Officer Gompper, but Officer
11   Gompper wasn't in, I think.
12      Q.     And Officer Gompper had told you on May 7th
13   that he wouldn't be in again until Thursday; correct?
14      A.     Yes, but he said that if different things
15   happened that I could come in, so different things
16   did happen, so I did go in.
17      Q.     Okay.  And so you went in; you reported
18   these things to Sergeant Penney?
19      A.     I was going to, but -- or I was seeing what
20   I should do, and he said that because it kind of
21   still had to do with the same issue that basically to
22   go to Officer Gompper.
23      Q.     Okay.  Can you tell us what different
24   issues -- what different issues you reported to
25   Sergeant Penney on the Monday that you went into the
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco          Page 66

**EXHIBIT 2**

```
 1  Canton Police Department?
 2              MR. CHIMES:  Objection to form.
 3              You can answer.
 4      A.   I don't know if I actually told him them
 5  all or if he, before I started talking that he, he
 6  might have just said, okay, well, you gotta wait for
 7  Officer Gompper.  So I'm not sure if I exactly told
 8  him.  But are you asking me if I did, what they would
 9  have been?
10              MR. CHIMES:  Just --
11      Q.   No, no.  I -- to the best of your ability,
12  as you sit here today, I want you to tell me exactly
13  what you said to Sergeant Penney.
14      A.   I could not recall.  I remember having a --
15  just -- I just remember speaking to him, and then I
16  remember at the end of it him telling me to go get a
17  lawyer as soon as I left there.
18      Q.   Okay.  Did you report to Sergeant Penney
19  that Mr. Nodine touched you inappropriately?
20              MR. CHIMES:  Objection to form.
21      A.   I don't know if I told him that or not.
22      Q.   Did you tell Sergeant Penney that you had
23  performed oral sex on Calvin Nodine on May 6th, 2017?
24              MR. CHIMES:  Objection to form.
25              You can answer.
```

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
       Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco    Page 67

**EXHIBIT 2**

```
 1      A.    No, I did not.
 2      Q.    When was your next contact with anybody
 3   from the Canton Police Department?
 4      A.    I can't say for sure, but I'm almost
 5   positive Thursday with Officer Gompper.
 6      Q.    Did you have any telephone contact with
 7   Officer Gompper before Thursday?
 8      A.    I could not say for sure, no.
 9      Q.    If the police reports indicate that you had
10   telephone contact with Officer Gompper on May 10th,
11   would you have any reason to dispute that?
12      A.    If the police report says it, then I might
13   have just to set up for the next day to come in so...
14      Q.    Okay.  I just want to go back to your
15   conversation with Sergeant Penney for a minute, and
16   you think you talked to Sergeant Penney on Monday
17   following the incident?
18      A.    Monday or Tuesday, yes.
19      Q.    And when I say "the incident," I'm
20   referring to what occurred at Nodine's Smokehouse on
21   the evening of May 6, 2017.
22            You understand what I'm talking about when
23   I say "the incident"?
24      A.    Well, now I do.  I mean, yes, I understand
25   what you're saying.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco          Page 68

**EXHIBIT 2**

```
 1     Q.    Okay.  So you believe that the Monday after
 2   the incident, you went into the police department and
 3   talked to Sergeant Penney?
 4     A.    I talked to Sergeant Penney; I don't know
 5   about what.  If it was -- I mean, I am -- I can't
 6   assume things so --
 7     Q.    I don't want you to assume things, but you
 8   do recall that Sergeant Penney told you to go get a
 9   lawyer immediately?
10     A.    Yes.  So I know I talked to him about
11   something.  I don't know if it was what my new issues
12   were or if it was the incident and new issues.  I'm
13   not -- I don't know.
14     Q.    But you -- in that conversation that you
15   had with Sergeant Penney, you did not talk about any
16   oral sex act; correct?
17     A.    No, I did not.
18     Q.    And you believe you came back to the Canton
19   Police Department on Thursday following the incident
20   to talk to Officer Gompper?
21     A.    To give a statement, I believe that was
22   that day, around that day.  I can't say for sure it
23   was that exact Thursday.
24     Q.    So you had made arrangements with Officer
25   Gompper to come in and give a written statement about
```

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco         Page 69

**EXHIBIT 2**

```
 1  what had occurred on May 6th, 2017 and May 7th, 2017
 2  when you returned to work?
 3       A.    If that's what the -- whatever the
 4  paperwork says that I called, then that's what I --
 5  then that's when I called and then that's when I,
 6  yes, went to go report what happened, if that's what
 7  you're asking.
 8       Q.    No, no.  I don't want you to guess.  I
 9  mean, if you don't remember, just tell me.
10             Why did you go to the police department on
11  Thursday and speak with Officer Gompper --
12       A.    Well, I went to the police --
13       Q.    -- the Thursday after the incident?
14       A.    I went to the police because I had -- I --
15  I was sexually assaulted, and I needed to write a
16  statement and I -- I just -- I did not feel
17  comfortable, and I was ashamed, and I was
18  embarrassed, and I don't -- I went to, yes, make a
19  complaint, but I didn't make the complaint the way I
20  would have liked to make the complaint.
21       Q.    All right.  So between May 7th, 2017 and
22  the following Thursday, which was May 11th, 2017,
23  correct, you changed your mind, and you wanted to
24  make a complaint, a formal complaint?
25                  MR. CHIMES:  Objection to form.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 70

**EXHIBIT 2**

```
 1     Q.    Okay.  Do you recall Officer Gompper asking
 2  you why on May -- strike that.
 3           When you went in to talk to Officer Gompper
 4  on May 11, 2017 and give your written statement, do
 5  you recall him asking you why you didn't tell him
 6  about Mr. Nodine grabbing your butt on May 7th, 2017
 7  when you first came into the police department?
 8     A.    Do I recall him asking me that?
 9     Q.    Yes.  Do you recall Officer Gompper asking
10  you why you didn't previously tell him about the butt
11  grab?
12     A.    I don't recall him asking me that, no.
13     Q.    Okay.  You next had contact with an officer
14  of the Canton Police Department on June 21st, 2017;
15  correct?
16           MR. CHIMES:  Objection to form.
17           You can answer.
18     A.    Yes.
19     Q.    What happened between May 11th, 2017 and
20  June 21st, 2017 with respect to your interactions
21  with the police?
22     A.    Are you saying what happened, like any
23  conversations or any interactions with them?
24     Q.    Did you have any interaction with them
25  between May 11th, 2017 -- strike that.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
         Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco    Page 80

EXHIBIT 2

1    It's, I just feel stupid, like I don't understand.
2        Q.    Okay.  Let's try something different.  I'm
3    going to read paragraph 3 into the record:  That, on
4    his arrival, Officer Gompper met with the
5    complainant/victim, Nicole H. Chase -- I'm not going
6    to read your date of birth into the record.  She
7    explained that she works at Nodine's Smokehouse
8    restaurant, located at 192 Albany Turnpike in Canton,
9    Connecticut, along with her mother.  Chase said that
10   she was being sexually harassed by the owner and her
11   boss, Calvin Nodine.
12             Is there anything in paragraph 3 that you
13   believe to be incorrect or untrue?
14       A.    The only thing would be that at that
15   time -- I mean, yes, it's true.  I guess, yes.
16       Q.    I don't want you to guess.  It's either
17   accurate or it's not accurate.  So you've got to tell
18   me if you see an inaccuracy in paragraph 3.
19       A.    I didn't personally say sexually harassed,
20   but yes, that's what I was there for, so I don't know
21   how to answer that.
22       Q.    And I understand what you're telling me.
23   You did not use the word "sexual harassment" when you
24   went to the police department on May 7th, 2017, but
25   that's what you were describing to Officer Gompper?

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 128

**EXHIBIT 2**

1  this is not -- not -- not true.
2      Q.   Okay.  What's not true about paragraph 33?
3      A.   I had gone in to hand in a bunch of texts
4  between me and Jeremy.  And when I went in, the --
5  what is it called? -- the dispatcher told me that
6  he -- I went in saying I would like -- I came in to
7  revise my statement.  Officer Colangelo was on
8  vacation, and I said, I came in to revise my
9  statement and hand in these texts that he wanted me
10  to give him.  And the dispatcher said, okay.  He
11  walked away with my texts and the pile of them to
12  Jeremy back and forth, and then he came back and told
13  me that Officer Colangelo didn't need me and if he
14  needed me, he would call me.  And then I kind of
15  stood there confused, like, wait a minute, because
16  that's what I was there for was to really revise the
17  statements, and I just happened to bring the things
18  he wanted.  And then he never called me.
19      Q.   Can you tell me what date that was that
20  this occurred?
21      A.   I don't know exactly when, but I know that
22  it was -- it was pretty close to -- I don't know the
23  exact date.
24      Q.   Is there anything that would help you
25  identify the date?  Do you have any personal notes,

www.huseby.com                Huseby, Inc. Regional Centers               800-333-2082
         Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco      Page 157

**EXHIBIT 2**

```
 1   diaries or anything of that nature related to this
 2   case?
 3       A.   I know there's emails, but even the emails
 4   were after I had already gone in twice -- or gone in
 5   and then called once to change -- revise my
 6   statement, and then I sent him an email like two
 7   weeks after that and so that email --
 8       Q.   Are you telling me that you're certain that
 9   you went into the police department before July 7th,
10   2017 with the texts to Jeremy and a revised
11   statement?
12       A.   I'm pretty sure, but I can't say for
13   positive.  I -- if I -- okay.  When was -- what was
14   the date that I -- 6/21, right?
15       Q.   You gave --
16       A.   June 21st is when I gave my statement or,
17   sorry, when I talked to Colangelo, right?
18       Q.   Yes.
19       A.   And then he was on vacation for -- all
20   right.  So then I don't know exactly when.  It would
21   have been either within those few days or maybe a day
22   or two after that, but -- so I don't know if that is
23   true or not.
24       Q.   You don't know whether what's stated in
25   paragraph 33 is true or not?
```

**EXHIBIT 2**

```
 1     A.    No.
 2     Q.    Okay.  It's possible that you went into the
 3   police department to give the texts and the statement
 4   after July 7th, 2017?
 5     A.    After?  It is possible that I did after,
 6   but it's also possible that I did before.
 7     Q.    As you sit here today, you can't nail down
 8   a date for me?
 9     A.    No.  I remember I saw him; he asked me to
10   get him the texts; he asked me about the revised.  I
11   spoke to my lawyer, which was not -- well, Lewis, I'm
12   not sure when we got involved with that.  Okay,
13   ignore that.
14           I talked to my lawyer; I --
15           MR. CHIMES:  Don't say anything about
16   what you said to your lawyer, but okay.
17     A.    Okay.  My -- and then I went to go bring in
18   the texts when he was back from vacation and to talk
19   to him.  So I don't know when he got back from
20   vacation, but it was the next week after I talked to
21   him and he went on vacation.  So I assume it was
22   literally the week of that week.
23     Q.    Okay.
24     A.    I don't --
25     Q.    Okay.  Paragraph 34:  That, based upon the
```

www.huseby.com                Huseby, Inc. Regional Centers                 800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco    Page 159

EXHIBIT 2

```
 1   facts and circumstances contained herein, I have
 2   probable cause to believe -- I don't need you to
 3   answer for 34.  That's legalese that we don't need to
 4   get into.
 5            Do you need to take a break for any reason,
 6   Miss Chase?  That was a little lengthy, I understand.
 7   Do you want a five-minute recess?
 8                MR. CHIMES:  Yes, let's take 10?
 9                THE WITNESS:  Could I, please?
10                MS. MACCINI:  Okay.
11                THE VIDEO OPERATOR:  Okay, off the
12   record.  Watch your microphone please.  The time is
13   3:21.
14       (Recess taken from 3:21 p.m. to 3:33 p.m.)
15                THE VIDEO OPERATOR:  This is the
16   beginning of Media Number 4.  We are back on the
17   record.  The time is 3:33.
18   BY MS. MACCINI:
19       Q.   Miss Chase, we just went through
20   Defendants' Exhibit 5, the arrest warrant affidavit.
21            Is there anything in that affidavit that
22   you believe is misleading?
23                MR. CHIMES:  Objection to the form.
24   Same objections, same instructions.
25                You can answer.  Instructions will
```

www.huseby.com             Huseby, Inc. Regional Centers             800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 160

**EXHIBIT 2**

1                   C E R T I F I C A T E

2    STATE OF CONNECTICUT

3            I, SANDRA SEMEVOLOS, a Registered Merit
     Reporter and Notary Public within and for the State
4    of Connecticut, do hereby certify that I reported the
     videotaped deposition of NICOLE HEATHER CHASE on
5    APRIL 15, 2019, at the offices of HOWD & LUDORF, LLC,
     65 Wethersfield Avenue, Hartford, Connecticut.
6
             I further certify that the above-named
7    deponent was by me first duly sworn to testify to the
     truth, the whole truth and nothing but the truth
8    concerning her knowledge in the matter of the case of
     NICOLE CHASE vs. NODINE'S SMOKEHOUSE, INC., CALVIN
9    NODINE, TOWN OF CANTON, JOHN COLANGELO, ADAM GOMPPER,
     MARK J. PENNEY AND CHRISTOPHER ARCIERO, now pending
10   in the UNITED STATES DISTRICT COURT, for the DISTRICT
     OF CONNECTICUT.
11
             I further certify that the within testimony
12   was taken by me stenographically and reduced to
     typewritten form under my direction by means of
13   COMPUTER ASSISTED TRANSCRIPTION; and I further
     certify that said deposition is a true record of the
14   testimony given by said witness.

15           I further certify that I am neither counsel
     for, related to, nor employed by any of the parties
16   to the action in which this deposition was taken; and
     further, that I am not a relative or employee of any
17   attorney or counsel employed by the parties hereto,
     nor financially or otherwise interested in the
18   outcome of the action.

19
             WITNESS my hand this 25th day of April,
20   2019.

21

22

23   _____
     Sandra Semevolos, RMR, CRR, CRC, CSR #74
24   Notary Public
     My Commission Expires:   September 30, 2020
25

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 170

EXHIBIT 2