NICOLE CHASE vs NODINE'S SMOKEHOUSE, INC., ET AL.
Nicole Heather Chase on 05/01/2019

```
 1           IN THE UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3   -------------------------------)

 4   NICOLE CHASE,                  ) NO.

 5          Plaintiff,              ) 3:18-cv-00683 (VLB)

 6      vs.                         )

 7   NODINE'S SMOKEHOUSE, INC.,     )

 8   CALVIN NODINE, TOWN OF CANTON, )

 9   JOHN COLANGELO, ADAM GOMPPER,  )

10   MARK J. PENNEY AND CHRISTOPHER )

11   ARCIERO,                       )

12          Defendants.             )

13   -------------------------------)

14                     VOLUME 2

15        CONTINUED VIDEOTAPED DEPOSITION

16           OF NICOLE HEATHER CHASE

17              DATE:  MAY 1, 2019

18             HELD AT:  LECLAIRRYAN

19     One Financial Plaza - 755 Main Street

20              Hartford, Connecticut

21

22   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

23           HUSEBY GLOBAL LITIGATION
                  (800) 852-4589
24              249 Pearl Street
           Hartford, Connecticut  06103
25
```

**EXHIBIT 11**

```
 1   A P P E A R A N C E S:

 2

 3   For the Plaintiff Nicole Chase:

 4        LAW OFFICE OF LEWIS CHIMES LLC

 5        45 Franklin Street

 6        Stamford, Connecticut  06901

 7        203.324.7744

 8        BY:  LEWIS CHIMES, ESQ.

 9             lchimes@chimeslaw.com

10

11

12   For the Defendants Town of Canton, John Colangelo and

13   Adam Gompper:

14        HOWD & LUDORF, LLC

15        65 Wethersfield Avenue

16        Hartford, Connecticut  06114-1190

17        860.249.1361

18        BY:  KRISTAN M. MACCINI, ESQ.

19             kmaccini@hl-law.com

20

21

22

23

24

25
```

www.huseby.com   Huseby, Inc. Regional Centers   800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco   Page 172

**EXHIBIT 11**

```
 1      Q.    I can take the arrest warrant affidavit,
 2   Miss Chase.
 3      A.    (Handing.)
 4      Q.    After June 21st, 2017, when is the next
 5   time you had any contact with anyone from the Canton
 6   Police Department?
 7      A.    June 21st, I don't -- I don't know.
 8   June 21st was -- can you tell me, was that a date --
 9   the date that I met Officer Colangelo?
10      Q.    Yes.
11      A.    When was the next time I had any contact?
12   I'm not sure of the exact date.
13            I remember Detective Colangelo telling me
14   he was going on vacation, so that I couldn't -- I
15   wouldn't be able to bring the documents or revise my
16   statement because he'd be gone for like the next
17   week.  And then I remember going back to the police
18   station and trying to revise my statements, and I
19   handed him like a stack of texts from Jeremy Archer,
20   my old manager, between me and him.  I gave that to
21   the dispatcher.  I said, I'm here to revise my
22   statement, and Detective Colangelo asked me for this
23   information.  The dispatcher then went away.  He came
24   back and he said, okay, I gave that to him.  He is
25   working on something right now.  If he needs you, he
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco      Page 204

**EXHIBIT 11**

```
 1   will call you.
 2           At that time, I kinda stood there a little
 3   confused because I knew he wanted me to revise my
 4   statement and I wanted to, but he said he'd call, so
 5   I kinda just walked out.  And then I remember trying
 6   to email a couple of times, but I can't tell you the
 7   exact dates of those things.  I mean, I have the
 8   emails which I'd be able to say what date the emails
 9   are, but obviously I don't have them with me.
10      Q.   We're going to go through the emails.
11           Can you give me a physical description of
12   the dispatcher you handed the texts to?
13      A.   I feel bad saying this, but he was -- he
14   was much larger, but besides that, I don't really --
15   there wasn't much.  I think he was kinda bald.  I
16   don't remember whether he wore glasses or not.  I
17   feel like he might have wore glasses.
18      Q.   Was he white, black?
19      A.   He was white.
20      Q.   Okay.  Can you give me an approximate age?
21      A.   Oh, between 50, 60.  I'd say probably 50s
22   somewhere.
23      Q.   And you provided this dispatcher with the
24   texts from -- between you and Kyle?
25      A.   No, me and Jeremy.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco    Page 205

EXHIBIT 11

```
 1    Q.   Okay.  You believe that Detective Colangelo
 2  emailed you to tell you that there was a warrant for
 3  your arrest?
 4    A.   He didn't tell me there was a warrant for
 5  my arrest.  It was more like -- it was I needed to
 6  contact him or come down to the station or something.
 7    Q.   And when you received that email, you
 8  called him?
 9    A.   Yes.
10    Q.   And he told you over the phone that there
11  was a warrant for your arrest?
12    A.   Yes.
13    Q.   Okay.  Did you have to go to court in
14  Hartford with respect to the criminal charges against
15  you?
16    A.   Yes.
17    Q.   And how many times did you have to go to
18  the criminal court?
19    A.   I think twice.  I'm not positive, but I'm
20  pretty sure twice.
21    Q.   And do you recall when the first date was
22  that you had to go to court in Hartford?
23    A.   I have no idea.
24    Q.   Do you recall who the prosecutor was
25  handling it at that time?
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
         Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 222

**EXHIBIT 11**

```
 1     A.    I know the prosecutor was the same person
 2  who signed off on the warrant; that's all I know.
 3     Q.    Okay.  So the first time you appeared in
 4  court, Mike Weber was the handling prosecutor?
 5           MR. CHIMES:  Objection to the form.
 6           You can answer if you know.
 7     A.    If that's the person who signed off on the
 8  warrant.
 9     Q.    Okay.  And you had to go to court another
10  time?
11     A.    Yes, twice.
12     Q.    And who was the prosecutor who handled it
13  the second time?
14     A.    I might have been wrong there.  The same
15  person who signed the warrant is the same person who
16  dropped the -- so maybe the first time wasn't the
17  same prosecutor.
18     Q.    Could you give me a description of the
19  prosecutor?
20     A.    I didn't even have to go into the
21  courtroom.
22     Q.    Okay.  You weren't there when the judge
23  entered a nolle?
24     A.    What?  No.
25     Q.    You weren't in the courtroom?
```

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 223

EXHIBIT 11

```
 1     A.    No.  My lawyer, I --
 2           MR. CHIMES:  I don't want you to say
 3   anything your attorney said, so don't say anything
 4   your attorney said.
 5     A.    To the best of my knowledge, I wasn't.  I'm
 6   almost sure I was in some type of side waiting room.
 7     Q.    Did anybody ever tell you that your
 8   criminal case would be nolled as long as you had no
 9   new arrests?
10     A.    I don't think so, no.
11     Q.    And you weren't in the courtroom when the
12   nolle was entered?
13     A.    I am almost positive that I wasn't.
14     Q.    Did anybody ever mention to you that your
15   criminal case was receiving a diversionary marking?
16           Does that term sound familiar to you?
17     A.    No.
18     Q.    Do you know what that means?
19     A.    No.
20     Q.    Did anybody ever tell you, Miss Chase, as
21   long as you don't pick up any new arrests or there is
22   no new problems, your case will be nolled?
23     A.    No.  I was just told that my case would be
24   nolled and that it was gone.  And I was told to go
25   back to the police station in a year to make sure
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 224

EXHIBIT 11

```
 1  mom if I decide to?
 2            So again, you are worried about how this is
 3  going to affect Kelly Nodine?
 4       A.   Yes.
 5              MR. CHIMES:  Objection.
 6              You can answer.
 7       A.   Yes.
 8       Q.   Okay.  And on the next page, you're telling
 9  him that the cops strongly advised you to go to a
10  lawyer like today.
11            Which cop suggested that to you?
12       A.   Sergeant Penney.  I had no idea that there
13  was such thing as a civil case.  I thought civil
14  cases were meant for people who got in car accidents
15  and he was the one who told me about it, and that's
16  when I decided that I'd start looking into it.  And I
17  think a day or two later is when I talked to a
18  lawyer.
19       Q.   Okay. And do you feel that Sergeant Penney
20  discriminated against you?
21       A.   No.  I actually -- I mean, yes, I know that
22  in my record somewhere that it kinda was against him
23  because he signed off, but I actually said that out
24  of everybody, he's the one who made me feel
25  comfortable the most.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
         Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco     Page 400

**EXHIBIT 11**

```
 1                  C E R T I F I C A T E

 2     STATE OF CONNECTICUT

 3             I, SANDRA SEMEVOLOS, a Registered Merit
       Reporter and Notary Public within and for the State
 4     of Connecticut, do hereby certify that I reported the
       continued videotaped deposition of NICOLE HEATHER
 5     CHASE on MAY 1, 2019, at the offices of LECLAIRRYAN,
       One Financial Plaza, 755 Main Street, Hartford,
 6     Connecticut.

 7             I further certify that the above-named
       deponent was by me first duly resworn to testify to
 8     the truth, the whole truth and nothing but the truth
       concerning her knowledge in the matter of the case of
 9     NICOLE CHASE vs. NODINE'S SMOKEHOUSE, INC., CALVIN
       NODINE, TOWN OF CANTON, JOHN COLANGELO, ADAM GOMPPER,
10     MARK J. PENNEY AND CHRISTOPHER ARCIERO, now pending
       in the UNITED STATES DISTRICT COURT, for the DISTRICT
11     OF CONNECTICUT.

12             I further certify that the within testimony
       was taken by me stenographically and reduced to
13     typewritten form under my direction by means of
       COMPUTER ASSISTED TRANSCRIPTION; and I further
14     certify that said deposition is a true record of the
       testimony given by said witness.
15
               I further certify that I am neither counsel
16     for, related to, nor employed by any of the parties
       to the action in which this deposition was taken; and
17     further, that I am not a relative or employee of any
       attorney or counsel employed by the parties hereto,
18     nor financially or otherwise interested in the
       outcome of the action.
19

20             WITNESS my hand this 13th day of May, 2019.

21

22                  [signature: Sandra Semevolos]

23     _____
       Sandra Semevolos, RMR, CRR, CRC, CSR #74
24     Notary Public
       My Commission Expires:  September 30, 2020
25
```

**EXHIBIT 11**