141

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT


----------------------------X

NICOLE CHASE                   :

          Plaintiff,    :

     VS.                :   NO. 3:18-cv-00683(VLB)

NODINE'S SMOKEHOUSE, INC.,   :
CALVIN NODINE TOWN OF        :
CANTON, JOHN COLANGELO,      :
ADAM GOMPPER, MARK J.        :
PENNEY, AND CHRISTOPHER      :
ARCIERO                      :

          Defendants. :

----------------------------X



D E P O S I T I O N



     THE CONTINUED DEPOSITION OF ADAM GOMPPER,

     taken on behalf of the Plaintiff, before Kevin

     Lombino, Registered Professional Reporter,

     Notary Public within the State of Connecticut

     Certificate Number 191, on the 22nd day of

     January, 2019, at 10:39 a.m., at the offices of

     Howd & Ludorf LLC, 65 Wethersfield Avenue,

     Hartford, CT.



**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

```
                                                              142


10:38:00a   1                    A P P E A R A N C E S

            2

10:38:00a   3   FOR THE PLAINTIFF:
10:38:00a       Law Office of Lewis Chimes LLC
10:38:00a   4   Lewis H. Chimes, Esq.
10:38:00a       45 Franklin Street
10:38:00a   5   Stamford, CT 06901

            6


            7
10:38:00a       FOR THE DEFENDANTS:
10:38:00a   8   Howd & Ludorf, LLC
10:38:00a       Kristan M. Maccini, Esq.
10:38:00a   9   65 Wethersfield Avenue
10:38:00a       Hartford, CT 06114
           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25
```

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

167

11:22:17a   1   statement, how did, how did you, how did you review the

11:22:25a   2   statement for accuracy with Ms. Chase?

11:22:27a   3       A.   I let memory, just like I do with every single

11:22:31a   4   person I take the statement I said, don't be afraid to

11:22:34a   5   change anything at all.   I'm not going to take that

11:22:36a   6   personal.   I'm not an English professor.   If there is a

11:22:40a   7   spelling, something you want to take in, something you

11:22:42a   8   want to -- sorry, something you want to leave in,

11:22:45a   9   something you want to take out, it's up to you.   These

11:22:49a   10  are your words.

11:22:50a   11          I give them the chance.   They can either look at

11:22:52a   12  it on the computer, I turn the computer screen, they can

11:22:55a   13  make the changes themselves or I will go and print out a

11:22:59a   14  draft and hand them the draft with a pen and say, make

11:23:02a   15  any changes you want.   The changes, we make the changes,

11:23:05a   16  say is that accurate.   Yes, it is.   And then I would

11:23:08a   17  print out this final version and have them sort through

11:23:11a   18  it.

11:23:13a   19      Q.   And how did you go about having Ms. Chase sign

11:23:20a   20  this statement?

11:23:24a   21      A.   I told her she needed to sign her name, or

11:23:29a   22  sorry, print her name, sign her name and today's date

11:23:32a   23  telling her that reading the statement here, by affixing

11:23:41a   24  my signature to the statement, I acknowledge I read it

11:23:44a   25  and/or had read to me, it's true to the best of my

**EXHIBIT 23**

168

11:23:47a  1  knowledge and belief.

11:23:48a  2      Q.    Did you read this statement to her?

11:23:49a  3      A.    Yes.

11:23:50a  4      Q.    You read it out loud to her?

11:23:51a  5      A.    Yes.

11:23:52a  6      Q.    The whole statement?

11:23:52a  7      A.    Yes.

11:23:53a  8      Q.    Did she make any changes to this statement?

11:24:00a  9      A.    I don't recall if she did or didn't.

11:24:20a  10     Q.    Did you feel that her statement made out any

11:24:30a  11  accusation of criminal conduct on May 11, 2017?

11:24:40a  12     A.    At the time I don't recall what I was thinking.

11:24:43a  13  All I knew is I needed to interview Mr. Nodine.

11:24:49a  14     Q.    Well, if you -- did you -- so you don't, you

11:24:56a  15  really weren't focused on whether the statement made out

11:25:03a  16  any criminal conduct?

11:25:05a  17     A.    Well, it changed from the first time when she

11:25:08a  18  came into the lobby and spoke to me so I was just, it's a

11:25:13a  19  fluid investigation.

11:25:14a  20     Q.    How did it change?  I don't -- what's different

11:25:18a  21  about the lobby interview?

11:25:19a  22     A.    She talked about how he, he placed his hand on

11:25:23a  23  her rear end which she did not do the first time.

11:25:27a  24  Actually Alexandria is the one that brought that up

11:25:29a  25  initially.

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

175

11:38:10a  1  I don't know.

11:38:11a  2      Q.   Um-hum.   Did that question -- as part of your

11:38:15a  3  training, did you learn that victims of sexual assault

11:38:21a  4  don't always tell the complete story initially?

11:38:26a  5      A.   Um-hmm.

11:38:26a  6      Q.   Did you receive training to that effect?

11:38:29a  7      A.   Yes.

11:38:29a  8      Q.   And did you also receive training that victims

11:38:33a  9  of sexual assault have to be made comfortable and feel

11:38:39a  10  safe in order to get them to tell the whole story?

11:38:43a  11      A.   Yes.

11:38:43a  12      Q.   So that's something you remember from your

11:38:45a  13  training and the policies, correct?

11:38:47a  14      A.   Um-hmm.

11:38:48a  15      Q.   You think she may have been embarrassed that she

11:38:56a  16  had not put up a stronger resistance to Mr. Nodine?

11:39:01a  17              MS. MACCINI:   Objection.

11:39:01a  18      A.   I don't know if she felt embarrassed.

11:39:04a  19      Q.   But would it be surprising to you that a victim

11:39:11a  20  of sexual assault may feel that it's their fault because

11:39:16a  21  they didn't put up more of a resistance or allow

11:39:20a  22  themselves to get taken advantage of?

11:39:23a  23      A.   Not surprising.

11:39:23a  24      Q.   Did you learn that in your training?

11:39:25a  25      A.   Yes.

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

176

| | | |
|---|---|---|
| 11:39:25a | 1 | Q.   Did you believe that she left this information |
| 11:39:37a | 2 | out to obstruct you in doing your job? |
| 11:39:48a | 3 | A.   I don't know why she left the information out. |
| 11:39:50a | 4 | I don't know what she was thinking. |
| 11:39:52a | 5 | Q.   Okay.  So did you have any -- well, what did you |
| 11:40:05a | 6 | think at the time? |
| 11:40:10a | 7 | A.   At the time -- at what point in time in the |
| 11:40:13a | 8 | investigation? |
| 11:40:14a | 9 | Q.   At the conclusion of the investigation when |
| 11:40:17a | 10 | Detective Colangelo wrote up her for writing a false |
| 11:40:20a | 11 | statement. |
| 11:40:21a | 12 | Do you think she had done it to intentionally |
| 11:40:25a | 13 | obstruct you in the investigation? |
| 11:40:27a | 14 | A.   Again, I'm not sure what her motive was or why |
| 11:40:30a | 15 | she left things out. |
| 11:41:43a | 16 | Q.   I'm going to hand you what's already been marked |
| 11:41:48a | 17 | as Exhibit Number 11. |
| 11:41:54a | 18 | Do you recognize -- this is a, for the record a |
| 11:42:03a | 19 | six-page report.  The incident date is May 7, the date of |
| 11:42:10a | 20 | the report is May 13. |
| 11:42:11a | 21 | A.   Um-hmm. |
| 11:42:12a | 22 | Q.   Do you recognize this? |
| 11:42:18a | 23 | A.   Yes. |
| 11:42:19a | 24 | Q.   Did you prepare this report? |
| 11:42:21a | 25 | A.   I did. |

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

218

02:11:46p   1   you interview Nicole Chase earlier?

02:11:53p   2        A.   I don't know why.

02:11:53p   3        Q.   Okay.  And so you don't, you didn't have any

02:11:56p   4   conversations with either Nodine or Attorney Moraghan

02:12:02p   5   about the polygraphs until you spoke to Nodine with

02:12:09p   6   Detective Colangelo on the 14th; is that right?

02:12:11p   7        A.   Correct.

02:12:11p   8        Q.   Did Nicole Chase call or e-mail you between June

02:12:25p   9   18 and -- withdrawn.

02:12:28p  10        Between May 18 and June 21 -- let me just finish

02:12:34p  11   the question -- asking what was going on with the case?

02:12:36p  12        A.   I don't remember her calling me.  She may have

02:12:39p  13   called Detective Colangelo but I'm not sure.

02:12:41p  14        Q.   She didn't even know Detective Colangelo was

02:12:43p  15   involved in the case until she met him on June 21,

02:12:48p  16   correct?

02:12:49p  17        A.   Okay, I don't remember her calling me.

02:12:50p  18        Q.   Okay.  So you think she just hears this person

02:12:58p  19   who had made this decision to press charges and is

02:13:04p  20   interviewed and she knows that you're interviewing Calvin

02:13:10p  21   Nodine and you think she didn't follow up?

02:13:13p  22             MS. MACCINI:  Objection to form.

02:13:14p  23        A.   I don't remember.

02:13:15p  24        Q.   Okay.  You don't remember speaking to her

02:13:21p  25   between June 18 and -- between May 18 and when you called

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

219

02:13:29p 1 her to come in for a follow-up interview on June 20?

02:13:34p 2     A.   That's correct.

02:13:34p 3     Q.   When you say you don't know it doesn't mean you

02:13:39p 4 didn't, it just means you don't have a recollection?

02:13:41p 5     A.   I don't remember if I did or I didn't.  I

02:13:44p 6 couldn't tell you either way.

02:13:45p 7     Q.   And I take it that if you did, you don't

02:13:47p 8 remember what, if anything, you said to her?

02:13:49p 9     A.   Correct.

02:13:50p 10     Q.   Was, so what did you -- did Detective Colangelo

02:14:00p 11 discuss the strategy of reinterviewing Nicole Chase prior

02:14:09p 12 to the interview on June 21, 2018?

02:14:13p 13     A.   No.

02:14:15p 14     Q.   Was she -- did you know that she was a target

02:14:18p 15 for potentially a criminal charge of making a false

02:14:23p 16 statement?

02:14:24p 17     A.   No.

02:14:24p 18     Q.   You were present during the interview of Calvin

02:14:28p 19 Nodine, correct?

02:14:32p 20     A.   Correct.

02:14:35p 21     Q.   And in that video Detective Colangelo suggested

02:14:37p 22 that they could try to bring false statement charges

02:14:43p 23 against Nicole Chase.

02:14:45p 24     Do you recall that?

02:14:46p 25        MS. MACCINI:  Object to the form.

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

228

| | | |
|---|---|---|
| 02:29:51p | 1 | A.   I don't know if he went. |
| 02:29:53p | 2 | Q.   At the bottom of this page, in the interview |
| 02:30:11p | 3 | Ms. Chase said that Nodine's wife kept calling while this |
| 02:30:16p | 4 | was go on. |
| 02:30:17p | 5 | A.   Yes. |
| 02:30:17p | 6 | Q.   Did you ever, you or Detective Colangelo ever |
| 02:30:24p | 7 | check either Calvin Nodine's phone or his wife's phone to |
| 02:30:29p | 8 | see whether that was true? |
| 02:30:32p | 9 | A.   No. |
| 02:30:35p | 10 | Q.   Why not? |
| 02:30:36p | 11 | A.   I don't know. |
| 02:30:39p | 12 | Q.   On the next page on the first paragraph you put |
| 02:30:53p | 13 | the word junk in quotation marks? |
| 02:30:58p | 14 | A.   Um-hmm. |
| 02:31:00p | 15 | Q.   Why did you put that in quotation marks? |
| 02:31:05p | 16 | A.   I don't remember. |
| 02:31:06p | 17 | Q.   And that meant that his, she meant his penis and |
| 02:31:11p | 18 | his testicles, correct? |
| 02:31:15p | 19 | A.   Yes. |
| 02:31:15p | 20 | Q.   Were you making fun of her for the words she |
| 02:31:18p | 21 | used? |
| 02:31:18p | 22 | A.   No. |
| 02:31:22p | 23 | Q.   Then why didn't you put penis and testicles? |
| 02:31:26p | 24 | A.   She used the word junk. |
| 02:31:30p | 25 | Q.   Okay.  So why did you -- do you know what she |

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

229

02:31:35p   1   meant when she --

02:31:36p   2       A.   She said the word junk so that's what I

02:31:39p   3   documented.

02:31:39p   4       Q.   Okay.  And you put it in parentheses, in

02:31:45p   5   quotation marks?

02:31:46p   6       A.   Yes.

02:31:46p   7       Q.   So let's go to the last page.

02:32:13p   8            If you could read the second paragraph out loud

02:32:15p   9   for the record?

02:32:18p  10       A.   I do not find probable cause to believe that

02:32:20p  11   Nodine forced the victim to perform a sexual act on him.

02:32:23p  12   The victim had the chance to call for help when the other

02:32:26p  13   employee, Kyle, was calling out to them.  The victim

02:32:29p  14   stated she spent 15 minutes performing oral sex on Nodine

02:32:31p  15   in the bathroom.

02:32:33p  16            The victims also said Nodine was hard initially

02:32:36p  17   but they wasn't and he was then hard again and he

02:32:38p  18   ejaculated in her mouth.  The victim also said that

02:32:41p  19   Nodine's wife called his phone six times while they were

02:32:46p  20   in the bathroom together.  The victim also admitted she

02:32:50p  21   provided me with a false sworn statement.

02:32:58p  22       Q.   Did you write this conclusion or did Colangelo

02:33:01p  23   write this conclusion?

02:33:01p  24       A.   I did, and Colangelo was in agreement with it.

02:33:15p  25       Q.   Why did -- was there a purpose in putting this

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

235

02:41:08p   1   marked as exhibit 18.

02:41:37p   2           So are you familiar with this?

02:41:40p   3       A.   Yes, sir.

02:41:40p   4       Q.   Why did Detective Colangelo draft this arrest

02:41:55p   5   warrant as opposed to you?

02:41:57p   6       A.   I was told by the chief that Detective Colangelo

02:42:02p   7   was to.

02:42:02p   8       Q.   Okay.  And what role, if any, did you have in

02:42:08p   9   the drafting of this?

02:42:11p  10       A.   I wrote the majority of it and then turned it

02:42:14p  11   over to Detective Colangelo and he made changes to it.

02:42:19p  12   What they were I do not know, and he attested to the, to

02:42:23p  13   the warrant, signed it.

02:42:25p  14       Q.   Well, can you tell me which parts you wrote and

02:42:34p  15   which parts he wrote?

02:42:37p  16       A.   I don't know.

02:42:38p  17       Q.   You don't know?

02:42:39p  18       A.   I don't know.

02:42:40p  19       Q.   But you are saying you wrote it?

02:42:41p  20       A.   Yes.

02:42:42p  21       Q.   And he reviewed it?

02:42:45p  22       A.   Correct.

02:42:45p  23       Q.   And did someone -- tell me the procedure for

02:43:00p  24   submitting a warrant to, to the State's Attorneys office.

02:43:06p  25       A.   He would complete it, swear to it in front of

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

237

02:44:43p  1  information on it.

02:44:45p  2          And so can we agree, Officer Gompper, that if I

02:44:58p  3  go from paragraphs one through 13, and you can look at it

02:45:12p  4  to make sure, that this is all information based on your

02:45:21p  5  initial May 7 discussion with Nicole Chase?

02:45:45p  6      A.   Yes.

02:45:47p  7      Q.   And can we agree that paragraph 14, which goes

02:46:04p  8  for several pages, details her statement on May 7 --

02:46:16p  9  well, I will rephrase it -- that paragraph 14 sets out

02:46:22p  10  her May 11, 2017 statement?

02:46:25p  11      A.   Yes.

02:46:25p  12      Q.   And paragraph 15 sets out information obtained

02:46:46p  13  during the interview of Calvin Nodine?

02:46:52p  14      A.   Yes, sir.

02:46:53p  15      Q.   And that sum total of that part of the case is

02:46:58p  16  five lines?

02:47:02p  17      A.   Yes.

02:47:02p  18      Q.   And so paragraphs one, the source of the

02:47:12p  19  information on paragraphs one through 14 is you since

02:47:21p  20  Detective Colangelo was not present during the initial

02:47:24p  21  interview of Chase or the May 11 drafting of the

02:47:28p  22  statement?

02:47:28p  23      A.   Correct.

02:47:29p  24      Q.   Okay.  He was present for paragraph 15, the

02:47:37p  25  interview of Nodine?

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

238

02:47:38p   1       A.   Yes.

02:47:38p   2       Q.   And paragraph 16 through 33 are information that

02:47:54p   3 came after, out of the re-interview of Nicole Chase, is

02:48:03p   4 that accurate?

02:48:03p   5       A.   Yes.

02:48:11p   6           MR. CHIMES:   Let me take five minutes.   I'm

02:48:13p   7           probably done.

02:54:29p   8           (A short recess was taken.)

02:54:29p   9           MR. CHIMES:   No further questions at this

02:54:30p   10         time.   I reserve the right to recall him based

02:54:32p   11         on the resolution of certain outstanding

02:54:38p   12         discovery.

02:54:41p   13           MS. MACCINI:   I have a few follow-up

02:54:42p   14         questions.

02:54:44p   15 EXAMINATION BY MS MACCINI:

02:55:09p   16           MS. MACCINI:   Off the record.

02:55:10p   17           (Discussion was held off record.)

02:56:07p   18       Q.   Officer Gompper, you were asked about your

02:56:10p   19 interview -- I'm sorry, you final police report dated

02:56:14p   20 June 21, 2017?

02:56:17p   21       A.   Yes.

02:56:17p   22       Q.   Can you turn to the last page of that report.

02:56:27p   23         You indicate that the victim admitted she

02:56:32p   24 provided a false sworn statement, correct?

02:56:35p   25       A.   Yes.

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**

247

1  STATE OF CONNECTICUT  )

2                       )  ss:  WALLINGFORD

3  COUNTY OF NEW HAVEN   )

4

5         I, Kevin Lombino, a Registered Professional

6  Reporter and Notary Public within and for the State of

7  Connecticut, do hereby certify that the within deposition

8  of ADAM GOMPPER was held before me on the 22nd day of

9  January, 2019.

10         I further certify that the witness was first

11  sworn by me to tell the truth, the whole truth and

12  nothing but the truth, and was examined by counsel, and

13  his testimony was recorded stenographically by me, it was

14  reduced to typewriting under my supervision, and I hereby

15  submit that the within contents of said deposition are

16  true and accurate to the best of my ability.

17         I further certify that I am not a relative of

18  nor an attorney for any of the parties connected with the

19  aforesaid examination, nor otherwise interested in the

20  testimony of the witness.

21         Dated at Wallingford, Connecticut, the 5th day

22  of February, 2019.

23         _____
              Kevin Lombino, CSR00191
24

25  (My commission expires October 31, 2021.)

**GOLDFARB AND AJELLO, LLC (203) 972-1000**

**EXHIBIT 23**