```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT


    -------------------------------X
    NICOLE CHASE,                   :
                                    :
                   Plaintiff,       :
                                    :
                versus              :    CIVIL ACTION NO.
                                    :    3:18 cv 00683 (VLB)
    NODINE'S SMOKEHOUSE, INC.,      :
    CALVIN NODINE, TOWN OF CANTON,  :
    JOHN COLANGELO, ADAM GOMPPER,   :
    MARK J. PENNEY, AND CHRISTOPHER :
    ARCIERO,                        :
                                    :
                   Defendants.      :
    -------------------------------X
```

D E P O S I T I O N

CONTINUED VIDEOTAPED DEPOSITION OF DETECTIVE JOHN COLANGELO, taken on behalf of the Plaintiff, pursuant to the Federal Rules of Civil procedure, before Donna M. Miani, CSR, a Notary Public, in and for the State of Connecticut, on Tuesday, May 7, 2019, 10:10 a.m., at the law offices of SHIPMAN, SHAIKEN & SCHWEFEL, LLC, 433 South Main Street, #319, West Hartford, Connecticut.

```
                    GOLDFARB AND AJELLO, LLC
                      24 EAST AVENUE #1372
                  NEW CANAAN, CONNECTICUT  06840
                         (203) 972-1000
```

**EXHIBIT 26**

A P P E A R A N C E S

REPRESENTING THE PLAINTIFF:

    LAW OFFICE OF LEWIS CHIMES, LLC
    45 Franklin Street
    Stamford, Connecticut  06901
    BY:  LEWIS H. CHIMES, ESQUIRE

REPRESENTING THE DEFENDANTS TOWN OF CANTON, JOHN
    COLANGELO:

    HOWD & LUDORF, LLC
    65 Wethersfield Avenue
    Hartford, Connecticut  06114
    BY:  KRISTAN M. MACCINI, ESQUIRE

REPRESENTING THE DEFENDANT NODINE'S SMOKEHOUSE, INC.:

    LECLAIR RYAN, PLLC
    One Financial Plaza
    755 Main Street, Suite 2000
    Hartford, Connecticut  06103
    BY:  ELIZABETH M. SMITH, ESQUIRE

REPRESENTING THE DEFENDANT CALVIN NODINE:

    SMITH, KEEFE, MORAGHAN & WATERFALL, LLC
    257 Main Street, 2nd Floor
    P.O. Box 1146
    Torrington, Conneccticut  06790
    BY:  DAVID A. MORAGHAN, ESQUIRE


        GOLDFARB AND AJELLO, LLC
        24 EAST AVENUE   #1372
      NEW CANAAN, CONNECTICUT  06840
          (203) 972-1000

**EXHIBIT 26**

```
 1    statement.
 2         Q.    Okay.  And you would agree that you have an
 3    obligation to include information that is exculpatory in
 4    any warrant, correct?
 5               A general question.
 6         A.    Yes.
 7         Q.    Okay.  Now, let's go back, since we started
 8    on this, go back to the page -- second page, pages two and
 9    three, Paragraph 10.
10                    MS. SMITH:  For the record, you're
11               referring to Plaintiff's Exhibit 18 again?
12                    MR. CHIMES:  Yes.
13         A.    I'm there.
14         Q.    Okay.  Now, at the last deposition we
15    talked a little bit about the text from Jeremy.
16               When this warrant was drafted, you did not
17    have a copy of the text from Jeremy, did you?
18         A.    No.
19         Q.    Okay.  That came at some point when
20    Ms. Chase came in to see you, she dropped it off?
21         A.    She dropped it off, yes.
22         Q.    Okay.  But you had it at some point after
23    she -- you drafted the warrant and before the warrant was
24    signed, correct?
25                    MS. MACCINI:  Objection to form.
```

```
 1            A.    Yes.
 2            Q.    Okay.  And so this in Paragraph 10 about
 3    the text with Jeremy is based on statements Nicole made
 4    during the lobby interview with Officer Gompper; is that
 5    correct?
 6                  If you know.
 7            A.    I'm just reading it to see --
 8            Q.    Okay.
 9            A.    -- to put it in context here.
10                  Yeah, I mean, I don't know exactly if he
11    looked at the text or not.
12            Q.    Well, he testified he never saw the text;
13    but to your knowledge, this wasn't from the texts them-
14    selves because you didn't have the content of the texts at
15    the time that you and Officer Gompper drafted this
16    warrant, correct?
17            A.    This paragraph looks like --
18            Q.    The first sentence.  The second has nothing
19    to do with the Jeremy text.  First sentence of Paragraph
20    10.
21            A.    Yeah, okay.  It appears that it's from her
22    telling Officer Gompper about texting.
23            Q.    In that first lobby interview?
24            A.    Yes, it appears that way.
25            Q.    Okay.  Now, you had mentioned statements
```

```
1        Q.    Okay.  So it doesn't mean exactly, correct?
2              MS. MACCINI:  Objection to form.
3        A.    I don't understand that question.
4        Q.    Does the sum and substance mean you put
5   down what she said exactly?
6        A.    If I put down what she said exactly in the
7   interview, I'd put ninety pages of interviews down.
8        Q.    Well, no, you would put in what's relevant,
9   right?
10       A.    I did put in what's relevant.  That is
11  relevant.
12       Q.    Okay.  When you say it's the sum and
13  substance, does that mean you're going to accurately quote
14  what she stated in your interview?
15       A.    It's not a quote, sir.
16       Q.    Thank you for your clarification.  You've
17  been helpful.
18             Paragraph 28, she talked about Mr. Nodine's
19  wife calling while they were in the bathroom, right?
20       A.    Yes.
21       Q.    Did you ever check to see if Mr. Nodine's
22  wife called into the bathroom at that particular time?
23       A.    No.
24       Q.    Okay.  That would have corroborated at
25  least that version of events if you did so or not or
```

```
 1   left, right?
 2                    MS. MACCINI:  Objection to form.
 3          Q.    All right.
 4          A.    I don't know -- I don't know if -- no,
 5   that's not correct.
 6          Q.    Okay.  So you started out and she said
 7   there was no oral sex, right?
 8                    MS. SMITH:  Objection to form.
 9                    MS. MACCINI:  Objection to form.
10          A.    No one asked her if there was oral sex.
11   She didn't disclose it.
12          Q.    Okay.  He then comes in and he says that
13   nothing happened initially, correct?
14          A.    He did not tell me the truth at the
15   beginning.
16          Q.    He said nothing, he denied anything?
17          A.    Again --
18                    MS. SMITH:  Objection to form.
19          A.    -- I haven't looked at the thing.  I'm
20   telling you how I perceived it.
21          Q.    Well, and we know that wasn't true, right?
22                    MS. SMITH:  Objection to form.
23          A.    I know he didn't tell me the truth at the
24   beginning, yes.
25          Q.    And then he came back and he said that --
```

```
 1   with Nicole Chase?
 2         A.    To the best of my recollection.
 3         Q.    Okay.  Detective Colangelo, marked as
 4   Exhibit No. 3 is a four-page document.  So I'm going to
 5   ask you to look at the bottom of page -- the first page.
 6   And again, it's an e-mail from Nicole Chase to you on
 7   Monday, July 31st, 2017.
 8               Do you recall having received that -- that
 9   e-mail?
10         A.    I'm trying to see which way this goes.
11         Q.    It goes from bottom to top.
12         A.    Yes, I mean, I -- I don't know what day I
13   received it because I was on vacation, again, in August --
14   or end of July and August.
15         Q.    Okay.  So -- and again, on page three she
16   sent in an attached revision to her statement.
17         A.    Yes, sir.
18         Q.    Changing the omission, correct?
19         A.    Yeah, she changed her statement.
20         Q.    Okay.  So between July 31st of 2017 and
21   August 10th of 2017, did you have any communications with
22   Nicole Chase?
23         A.    I don't recall having any.
24         Q.    Okay.  And so I take it you made no efforts
25   to have her come in and revise the statement, correct?
```

```
 1                  Withdrawn.
 2                  You had made no efforts to have her come in
 3     and execute the statement, correct?
 4                  MS. MACCINI:  Objection to form.
 5          A.      I think that I had asked Adam Gompper to
 6     make contact with her and he tried and was unable to.
 7          Q.      And that -- okay.
 8                  And then -- now, is this the e-mail, the
 9     top, the e-mail that you sent on August 10th?
10          A.      The top of what?
11          Q.      Page one.
12          A.      Yes.
13          Q.      Did you send this e-mail to Nicole Chase on
14     August 10th, 2017?
15          A.      Yes.
16          Q.      And then after you had responded to her,
17     you told her there was no need to revise her statement,
18     correct?
19          A.      Where did I say that?
20          Q.      Also at that point I had already documented
21     the change in your recount of the incident and already
22     sent the case to court for review.
23                  That's what you said.
24          A.      That statement is to show that I've put in
25     her new revised -- what she told me.
```

```
1         Q.    Well, you never -- you never did change the
2    warrant.
3         A.    I put -- I did -- there was a -- yeah --
4    excuse me?
5         Q.    You never -- you never revised -- she never
6    came in and revised the statement, correct?
7         A.    That's not what I'm saying.
8         Q.    Well, let's ask that, because she never --
9    you never had her come in and revise the statement,
10   correct?
11        A.    She never came in and revised the
12   statement, correct.
13        Q.    But she wanted to come in and revise her
14   statement?
15        A.    I don't know.
16        Q.    Well, didn't she say "I would like to
17   revise my Voluntary Statement" on July 31st?
18        A.    Forty days after the interview.
19        Q.    Didn't she come in two weeks before
20   July 25th to set up a time to revise her statement?
21              MS. MACCINI:  Objection to form.
22        A.    I don't know why she came in.  I thought it
23   was to drop texts off.
24        Q.    Okay. So -- well, is your testimony that
25   you really don't know that she wanted to come in and
```

```
 1   revise her statement?
 2               MS. MACCINI:  Objection to form.
 3        A.    The day she dropped texts off, that is
 4   correct.
 5        Q.    At any point between the day she came in
 6   and August 10th, is it your testimony that you do not know
 7   whether she wanted to come in and revise her statement?
 8        A.    On August 10th was the first time that I
 9   was made aware that she wanted to come in and revise her
10   statement.
11        Q.    And at that point the warrant had not been
12   acted upon, correct?
13        A.    By a state's attorney but it had been acted
14   on and was in the process in court.
15        Q.    If there is a change in circumstances
16   relating to a warrant, you can request that the warrant be
17   returned, can't you?
18        A.    I've never had to do that.
19        Q.    Well, do you think if significant evidence
20   comes in after you file a warrant that you don't have the
21   ability to withdraw the warrant and change it before --
22        A.    I can speak to the state's attorney I would
23   think.
24        Q.    So you're saying you have no idea whether
25   you would be able to pull back a warrant to revise it?
```

```
 1                    MS. MACCINI:  Objection to form.
 2               That's not what he said, Attorney Chimes.
 3    BY MR. CHIMES:
 4          Q.   Do you have the authority to pull back a
 5    warrant to revise it if necessary?
 6          A.   I have the authority to ask a state's
 7    attorney to return the warrant to me, but they are kind of
 8    a higher power than we are.
 9          Q.   Okay.  Well, have you ever asked a state's
10    attorney to return a warrant to you?
11          A.   No.
12          Q.   Okay.  Do you think that a state's
13    attorney -- if you asked a state's attorney to return a
14    warrant because there was additional evidence that they
15    would not return the warrant?
16          A.   I don't know.
17          Q.   There came a time where you were
18    investigated -- there was an investigation of the
19    circumstances of the investigation of Ms. Chase's
20    complaint by the Canton Police Department, correct?
21                    MS. MACCINI:  Objection to form.
22          Q.   You can answer.
23          A.   Are you talking about an internal
24    investigation?
25          Q.   Yes.
```

```
1    STATE OF CONNECTICUT   )
2                           )   SS:  Derby
3    COUNTY OF NEW HAVEN    )
4
5         I, Donna M. Miani, a Certified Court Reporter and
6    Notary Public within and for the State of Connecticut, do
7    hereby certify that the within deposition of DETECTIVE
8    JOHN COLANGELO was held before me on the 7th day of May,
9    2019.
10        I further certify that after said deposition was
11   recorded stenographically by me, it was reduced to type-
12   writing by me and I hereby submit that the within contents
13   of said deposition are true and accurate to the best of my
14   ability.
15        I further certify that I am not a relative of nor an
16   attorney for any of the parties connected with the
17   testimony of the witness.
18        Dated at Derby, Connecticut, on the 21st day of May,
19   2019.
20
21                                  _____
22                                  Donna M. Miani, CSR
                                    Certified Court Reporter
23
24   My commission expires July 31, 2023.
25
```

GOLDFARB AND AJELLO, LLC    203-972-1000

**EXHIBIT 26**