## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **NICOLE CHASE** : | NO.: 3:18-cv-00683 (VLB) |
| : | |
| **v.** : | |
| : | |
| **NODINE'S SMOKEHOUSE, INC., CALVIN** : | |
| **NODINE, TOWN OF CANTON, JOHN** : | |
| **COLANGELO, ADAM GOMPPER, MARK J.** : | |
| **PENNEY AND CHRISTOPHER ARCIERO** : | **SEPTEMBER 21, 2020** |

### DEFENDANTS, TOWN OF CANTON, JOHN COLANGELO, AND ADAM GOMPPER'S, MEMORANDUM OF LAW IN SUPPORT OF DAUBERT MOTION TO PRECLUDE EXPERT TESTIMONY FROM PLAINTIFF'S DISCLOSED EXPERTS, CATHERINE GARCIA AND ELIZABETH DONEGAN, AND MOTION IN LIMINE

I.   **BACKGROUND**

This matter arises out of the arrest of the plaintiff, Nicole Chase, pursuant to an arrest warrant on the charge of false statement in the second degree, in violation of Connecticut General Statutes § 53a-157b.  Plaintiff first presented to the Canton Police Department ("CPD") on May 7, 2017, and reported an alleged workplace harassment that occurred, on May 6, 2017, at her place of employment, Nodine's Smokehouse Restaurant, located in Canton, Connecticut.  The plaintiff spoke with defendant Officer Adam Gompper regarding the alleged incident, stating that she wanted only to somehow document the incident with the police department.  Gompper explained to her that he could not just

document the incident—that he would need to do a full and complete investigation, including interviewing the alleged harasser, plaintiff's boss, Calvin Nodine.  Plaintiff declined at this time to make a formal complaint.  At no time did she describe any sexual contact (as defined by Connecticut law) between herself and Nodine.  The entirety of the plaintiff's interview with Gompper was video and audio recorded on a surveillance camera in place in the CPD lobby.

Subsequently, the plaintiff returned to the CPD and indicated she wished to make a criminal complaint.  On May 11, 2017, she provided a sworn voluntary written statement to Adam Gompper detailing the alleged incident.  Therein, she reported that Calvin Nodine grabbed her butt while telling a story/joke.  Further, at the end of the evening after the restaurant was closed, Nodine pulled the plaintiff into a bathroom, pulled out his genitals and told her to "suck it," at which point the plaintiff pushed Nodine and ran out of the bathroom.

On May 18, 2017, as part of the police investigation of plaintiff's complaint, defendants, Detective John Colangelo and Adam Gompper, met with Calvin Nodine and his attorney to interview him regarding the alleged incident.  Nodine stated that the plaintiff led him into the bathroom and performed fellatio on him, that it came out of nowhere and he had no indication that this would occur.  The entirety of Nodine's interview with the defendant officers was video and audio recorded.

On June 21, 2017, as part of the police investigation, defendant Detective Colangelo interviewed the plaintiff. At this time, the plaintiff confirmed that she did perform fellatio on Calvin Nodine, for ten to fifteen minutes. She otherwise denied any kissing, hugging or touching. She did not describe any conduct by Nodine that could be construed as physical force. She reported that she did not disclose the oral sex initially because she did not want her boyfriend to find out. She stated regarding her sworn written statement provided to defendant Gompper, "I know it's not the truth and I signed my name to it." This interview was also recorded in its entirety.

Based upon all the facts of the police investigation, including those set forth above, Detective Colangelo submitted an arrest warrant affidavit to the State's Attorney's Office, on July 7, 2017, for the plaintiff's arrest on the charge of false statement in the second degree. The warrant was reviewed by a state prosecutor and judge, both of whom executed the warrant. The plaintiff was subsequently arrested pursuant to the warrant.

The plaintiff's remaining claims against the defendants are for false arrest, malicious prosecution, and denial of equal protection under 42 U.S.C. § 1983 and Connecticut state law. In addition, she brings a state law claim for intentional infliction of emotional distress.

The plaintiff has disclosed as police liability experts in this matter Catherine Garcia and Elizabeth Donegan.

*Catherine Garcia*

Catherine Garcia testified that she is a retired Sergeant from the San Diego Police Department and San Diego County District Attorney's Office. (Catherine Garcia Depo. Trans., August 23, 2019, T9:8-11, attached as Exhibit A.)

Catherine Garcia reviewed only Connecticut General Statutes §§ 53a-65, 53a-70, 53a-170b, 53a-73(a), and 53a-186 in her expert review of this matter. (Id. at 12:13-14:8, T18:5-12.) She did not consult Connecticut case law or "The Original Red Book" used by Connecticut officers, nor did she speak with any Connecticut prosecutors or law enforcement officers in her review and analysis of the matter. (Id. at T20:14-21.)

This case is the first case in which Catherine Garcia has ever performed an expert review of a police matter and attempted to qualify as a police liability expert. (Id. at T125:25-126:2, T146:6-9, T150:14-16).

Catherine Garcia testified that she will offer the following expert opinions in this matter: (1) an experienced sexual assault investigator following generally accepted standards for the investigation of sexual assault cases would not have submitted an arrest warrant against Nicole Chase for the charge of making a false statement; (2) Officer Gompper and Detective Colangelo's response and

4

investigation of Nicole Chase's complaint failed to meet generally accepted standards and practice for law enforcement officers in their response/ investigation of sexual assault complaints; (3) Officer Gompper and Detective Colangelo's responses to Nicole Chase failed to meet generally accepted law enforcement standards in the appropriate response to victims of trauma/sexual assault; and (4) Nicole Chase's reactions and responses during and after the assault were consistent with having experienced a traumatic incident; in this case, a sexual assault.  (Catherine Garcia Depo. Trans., August 23, 2019, T55:6-57:5; see also, Garcia Expert Report, attached as Exhibit B.)

Catherine Garcia reached her opinions and impressions in this matter based upon review of transcripts prepared by plaintiff's counsel of the recorded police interviews rather than review of the actual video recorded interviews themselves (Defendant's proposed trial exhibits CD-B, CD-G, and CD-J).  (Id. at T44:7-48:16.)  She does not know whether or not the transcripts are entirely accurate. Id.

Catherine Garcia testified that she does not have an opinion as to whether it was reasonable for defendant, John Colangelo, to believe the plaintiff had committed a crime.  Rather, her opinions are that there were "words and things stated that should have led to [further] investigation, (Id. at T85:20-86:10), and, if he had conducted a more thorough investigation, he would have interpreted

5

what the plaintiff told him, on June 21, 2017, at her police interview, differently, (Catherine Garcia Depo. Trans., August 23, 2019, T95:11-98:6; Catherine Garcia Expert Report).  She testified that an expert opinion "can be speculative."  (Id. at T99:3-6.)

Catherine Garcia believes that the June 21, 2017 videotaped recording of the plaintiff's interview with John Colangelo depicts the plaintiff telling Colangelo that "[Nodine] had pulled her into the bathroom, locked the door, and forced her to put his penis into her mouth."  (Id. at T92:25-93:22.)

*Elizabeth Donegan*

Elizabeth Donegan testified that she is a retired former Sergeant with the Austin, Texas Police Department.  (Elizabeth Donegan Depo. Trans., August 7, 2019, T23:9-14, attached as Exhibit C.)  She retired in 2017 following almost twenty-six years with the department.  (Id.)  She has no knowledge or understanding of how police officers are certified or recertified in Connecticut.  (Id. at T33:15-18.)  She has no knowledge as to what an officer would need to obtain certification in Connecticut to instruct officers regarding sexual assault response.  (Id. at T38:2-5.)  Ms. Donegan has never served or testified as an expert witness at trial.

Elizabeth Donegan's expert opinions in this matter mirror those of Catherine Garcia, verbatim. (Elizabeth Donegan Depo. Trans., August 7, 2019, T52:25-53:25; see also, Donegan Expert Report, attached as Exhibit D.)

Elizabeth Donegan contends that Officer Adam Gompper did not follow the International Association of Chiefs of Police ("IACP") and End Violence Against Women International ("VAWI") standards for response to sexual assault. (Id. at T59:5-10.) She acknowledges that these standards or authorities are not standards that police departments are mandated to follow or adopt. (Id. at T59:11-17.) In her review of the matter, she did not see any indication that the CPD adopted any VAWI standard or protocol. (Id. at T61:17-20.) She believes that the CPD may have adopted an IACP checklist but the checklist is only a part of the IACP protocol. (Id. at T61:5-10.)

Elizabeth Donegan also contends that the officers did not follow CPD General Order 6.6 in that they were not sensitive towards the plaintiff, the victim of sexual assault, to minimize trauma. (Id. at T69:23-71:9.) Ms. Donegan is of the opinion that Detective Colangelo should not have submitted the warrant for the plaintiff's arrest and this opinion is based upon her impression that the plaintiff reported to Colangelo that she was sexually assaulted. (Elizabeth Donegan Depo. Trans., August 7, 2019, T73:22-76:16.) Ms. Donegan testified that, *if a complete and thorough investigation had been done*, it would have

7

been clear that the plaintiff's encounter with Calvin Nodine was not consensual. (Elizabeth Donegan Depo. Trans., August 7, 2019, T76:17-78:16.)

Ms. Donegan's opinions are premised on the fact that the plaintiff described to one or both defendants that she was sexually assaulted. (Id. at T94:17-22.) However, this is based upon her understanding of the Texas penal code concerning sexual assault crimes rather than Connecticut. (Id. at T104:17-105:17.) Donegan cannot reference the Connecticut statute or section of the Connecticut penal code that would apply to the facts set forth by the plaintiff to the officers because she is not familiar with Connecticut law. (Id. at T121:13-124:19.) In her professional opinion, because the plaintiff acquiesced out of fear—performed oral sex on Nodine out of fear of losing her job—the requisite element of forced sexual contact is satisfied. (Id. at T110:8-113:4.) Later in her testimony, Donegan offered the inconsistent testimony that "whether or not they could have filed charges [against Nodine], we don't know because there wasn't a thorough and complete investigation," (Id. at T113:5-114:23.); that "if [Adam Gompper] had asked additional questions" he would have understood that the plaintiff was complaining of an attempted sexual assault. (Elizabeth Donegan Depo. Trans., August 7, 2019, T132:19-134:9.) Donegan agrees that the plaintiff, on May 7, 2017, when she was interviewed by Gompper in the lobby did not mention any sexual contact between herself and Calvin Nodine. (Id. at 138:9-13.)

8

According to Donegan, Detective Colangelo <u>should</u> have done a better interview to determine whether or not to pursue charges against Nodine for sexual assault.  (Elizabeth Donegan Depo. Trans., August 7, 2019,T155:21-156:9.)  Colangelo stopped his interview with the plaintiff on June 21, 2017 way too soon.  (<u>Id.</u>)  It is Donegan's opinion that the officers "didn't do what was necessary to determine whether or not a sexual assault had occurred."  (<u>Id.</u> at 158:3-159:15.)

II. <u>LAW AND ARGUMENT</u>

    A.    S<small>TANDARD</small> O<small>F</small> R<small>EVIEW</small>.

        1.    General <u>Daubert</u> Considerations.

The discretion of this Court to admit expert testimony is governed principally by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product
> of reliable principles an methods, and (3) the witness
> has applied the principles and methods reliably to the
> facts of the case.

Fed.R.Civ.Evid. 702; <u>Innis Arden Golf Club v. Pitney Bowes, Inc.</u>, 629 F.Supp.2d 175, 187-88 (D.Conn. 2009); <u>Nimely v. New York</u>, 414 F.3d 381, 395 (2d Cir. 2005).

9

The Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), makes it clear "that Rule 702 charges district courts with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Innis Arden</u>, 629 F.Supp. at 188 (quoting <u>Daubert</u>, 509 U.S. 597). Under <u>Daubert</u>, this Court may consider a number of factors in determining whether an expert's reasoning and methodology are reliable, including:

> (1) Whether the theory or technique on which the expert relies 'can be (and has been) tested'; (2) whether the expert's methodology 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error' of the technique when applied; (4) 'the existence and maintenance of standards controlling the techniques operation'; and (5) whether the theory or technique has been generally accepted in the scientific community.

<u>Innis Arden</u>, 629 F.Supp.2d at 188 (quoting <u>Daubert</u>, 509 U.S. 593-94).

The test of reliability is flexible and depends on the "nature of the issue of the expert's particular expertise, and the subject of his testimony . . . ." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (no single factor is determinative). A district court's inquiry under <u>Daubert</u> is a flexible one and district courts have wide latitude in performing this gate-keeping function. See <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 141. "'[T]he key to the gate is not the ultimate correctness of the expert's conclusions,'" rather,

10

"'it is the soundness and care with which the expert arrived at her opinion[.]'" C.W. ex rel. Wood v. Textron, Inc., 807 F.3d 827, 834 (7th Cir. 2015) (citation omitted). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. Kumho, 526 U.S. 152. The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the Daubert standard by a preponderance of the evidence. United States v. Jones, 965 F.3d 149, 161 (2d Cir. 2020).

2. Motion in Limine

A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine. See Luce v. United States, 469 U.S. 38, 41, n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Indeed, "[t]he purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). Further, it is the function of a motion in limine to keep prejudicial evidence that is inadmissible from the trier of fact. Luce v. United States, 469 U.S. 38, 40, n. 2 (1984).

11

> **B.     APPLICATION OF <u>DAUBERT</u> DEMONSTRATES THAT BOTH GARCIA AND DONEGAN ARE NOT QUALIFIED AND THEIR RESPECTIVE OPINIONS ARE UNRELIABLE AND OTHERWISE IRRELEVANT AND, THEREFORE, SHOULD BE PRECLUDED BY THIS COURT.**

The proposed expert testimony of Catherine Garcia and Elizabeth Donegan does not meet the requirements of <u>Daubert</u> and should be precluded by this Court on this basis.  Said experts (1) are not qualified, (2) their respective opinions are not supported by the record, (3) they both make improper credibility determinations and legal conclusions, and (4) both misapply the legal standard for the crime of sexual assault and/or the determination of probable cause under Connecticut law,

> *Qualifications and Experience*

First, neither expert has the requisite qualifications and experience to render opinions as to the reasonableness or appropriateness of the defendant officers' conduct as neither is certified by the Connecticut Police Officers Standard Training Council ("POSTC"), knows anything about what POSTC requires to certify an officer, knows anything about the training received by the defendant officers concerning any law enforcement subject, has any familiarity with the Connecticut process by which an officer applies for an arrest warrant and/or has any familiarity with the Connecticut penal code, as set forth above.

**Accordingly, Catherine Garcia and Elizabeth Donegan should both be precluded by this Court for lack of sufficient qualifications and experience.**

*Reliability*

**Both Catherine Garcia and Elizabeth Donegan's expert opinions are not supported by the record, which speaks to the reliability requirement under <u>Daubert</u> and Rule 703. Specifically, both premise their opinions on the fact that the plaintiff described an attempted sexual assault to Adam Gompper, on May 7, 2017, and a sexual assault to John Colangelo, on June 21, 2017, while the factual record (the police videotapes of each officer's interview with the plaintiff) indicate that the plaintiff did not describe any force by Calvin Nodine on either date sufficient for a charge of attempted sexual assault or sexual assault in the first degree under Connecticut law or any other conduct sufficient to charge Nodine with sexual assault in the second, third, or fourth degree. Both experts misapprehend the factual record and improperly apply the criminal law of other jurisdictions to the facts such that their resultant respective opinions are unreliable.**

**Further, both Catherine Garcia and Elizabeth Donegan's expert opinions are based upon their respective subjective impressions and improper hypotheticals rather than facts and data applied to a proper expert methodology.**

**Specifically, Elizabeth Donegan's opinions are premised on the improper hypothetical that if "more questions were asked" or more investigation was done, the defendant officers would have had probable cause to charge Calvin Nodine with sexual assault or, at a minimum, would have understood the plaintiff, Nicole Chase, to have been complaining about a sexual assault. Further, she is of the subjective impression that more questions should have been asked, that Detective Colangelo stopped his final interview with the plaintiff too soon.  Also, her opinions are based on the subjective impression that an alleged sexual assault victim should not be prosecuted for making a false statement.**

**Catherine Garcia's opinions are unreliable because they are premised on transcripts prepared by plaintiff's counsel of the videotaped police interviews as the basis for what the facts and circumstances were confronting the defendant officers in their investigation.  These transcripts are inaccurate and unreliable for the all of the reasons set forth in defendants' motion in limine and supporting memorandum filed on this same date [Doc.186].  Further, her opinions are speculatively based upon the conclusion that if further investigation had been done, more questions would have been asked by officers, resulting in Detective Colangelo interpreting what the plaintiff told him on June 21, 2017 differently.**

**Further, both Catherine Garcia and Elizabeth Donegan premise their respective opinions on IACP and VAWI standards without any basis in the record or information to support that the CPD adopts or follows such standards.**

**In sum, the respective expert opinions of both Catherine Garcia and Elizabeth Donegan are not based upon a reliable foundation and thereby fail to meet the requirements of <u>Daubert</u> on this additional basis and should be precluded by this Court.**

*Assist Trier of Fact--Relevancy*

**Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue,'" which "goes primarily to relevance."  <u>Daubert</u>, 509 U.S. at 591.  "An expert's testimony qualifies as relevant under 702 so long as it assists the jury in determining a fact at issue in the case."  <u>Stuhlmacher v. Home Depot U.S.A., Inc.</u>, 774 F.3d 405, 409 (7th Cir. 2014).**

**Both Catherine Garcia and Elizabeth Donegan make credibility assessments and legal conclusions in reaching their respective opinions that render their testimony irrelevant.**

**It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of witness testimony.**

15

Nonetheless, experts can base their opinions on disputed facts because the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact."

Here, although both experts deny making a credibility assessment to disregard Calvin Nodine's recorded statement to the police that the plaintiff was the initiator and that his sexual encounter with the plaintiff was consensual, both experts' opinions are necessarily predicated on such an improper credibility assessment. It is undisputed that Calvin Nodine stated to the defendants that his encounter with the plaintiff was consensual and that Nodine's recorded evidence was among the facts and evidence that the officers considered in their probable cause determination. Both of plaintiff's experts improperly reach their opinions in the matter by disregarding this important undisputed fact.

Further, both experts' opinions concerning the propriety of the defendant officers' submission of a warrant application for plaintiff's arrest is impermissible and irrelevant due to their misunderstanding and misapplication of the law related to criminal sexual assault. Specifically, both are under the misguided impression that fear of losing a job can constitute the requisite "force" element of the crime sexual assault in the first degree under Connecticut

**16**

law. Both are incorrect in this regard, see Connecticut General Statutes § 53a-70 and State v. Rodgers, 198 Conn. 53, 62 502 A.2d 360 (1985) (compulsion is an essential element of the crime of sexual assault in the first degree either by the actual use of force or threat of use of force which reasonably causes fear of physical injury), and this mistake serves as the foundation of all of their opinions in the matter rendering them inadmissible.

In sum, the plaintiff's experts, Catherine Garcia and Elizabeth Donegan's, testimony will not assist the trier of fact in determining any issue of material fact in this case because the opinions are premised on improper credibility assessments and an incorrect analysis and application of Connecticut criminal law. For this reason, both experts should be precluded from testifying following Daubert.

III.     **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that this motion be granted and plaintiff's police liability experts be excluded from testifying at trial.

**DEFENDANTS,
TOWN OF CANTON, JOHN
COLANGELO AND ADAM GOMPPER**


By /s/ Kristan M. Maccini
   Kristan M. Maccini
   ct25121
   Howd & Ludorf, LLC
   65 Wethersfield Avenue
   Hartford, CT  06114-1190
   (860) 249-1361
   (860) 249-7665 fax
   kmaccini@hl-law.com

## **CERTIFICATION**

      This is to certify that on SEPTEMBER 21, 2020, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

| | |
|---|---|
| **Lewis H. Chimes, Esq.**<br>**Mary-Kate Smith, Esq.**<br>**Law Office of Lewis Chimes, LLC**<br>**45 Franklin Street**<br>**Stamford, CT  06901** | **Luis Medina, Esq.**<br>**524 Winchester Road**<br>**Norfolk, CT  06058** |

**Elizabeth K. Acee, Esq.**
**Barclay Damon**
**545 Long Wharf Drive, 9th Floor**
**New Haven, CT  06511**

                                            **/s/ Kristan M. Maccini**
                                            **Kristan M. Maccini**