July 1, 2019

## EXPERT REPORT ON BEHALF OF THE PLAINTIFF NICOLE CHASE

Submitted by:

Elizabeth M. Donegan



I. **SUBJECT OF EXPERT OPINION**

I have been retained by Attorney Lewis Chimes on behalf of the plaintiff, Nicole Chase, in the matter of *Chase v. Calvin Nodine, et al*, No. 3:18-cv-00683 (VLB), currently pending in the District court of the Judicial District of Connecticut, with respect to generally accepted practices with respect to the investigation of complaints of sexual assaults, interviewing techniques for victims and suspects of sexual assault, appropriate response for victims of sexual assault, submission of arrest warrants, and their application as to the Canton Police Department's handling of Nicole Chase's report of sexual assault, and her arrest for making a false statement.

I have also been asked to comment as to the types of responses of victims of sexual assault, both during and after the assault as it pertains to Nicole Chase's response during and after the sexual assault.

II. **SUMMARY OF EXPERT OPINIONS**

<u>As to Canton Police Department Defendants:</u>

A. An experienced sexual assault investigator, following generally accepted standards for the investigation of sexual assault cases would not have submitted an arrest warrant against Nicole Chase for the charge of Making a False Statement

B. Officer Gompper and Detective Colangelo's response and investigation of Nicole Chase's complaint failed to meet generally accepted standards and practice for law enforcement officers in their response / investigation of sexual assault complaints.

**EXHIBIT D**

C. Officer Gompper and Detective Colangelo's response to Nicole Chase failed to meet generally accepted law enforcement standards in the appropriate response to victims of trauma / sexual assault.

<u>As to Canton Police Department Defendants and Calvin Nodine</u>

D. Nicole Chase's reactions and responses during and after the assault were consistent with having experienced a traumatic incident; in this case a sexual assault.

III. QUALIFICATIONS

I am a retired police sergeant and a 26-year veteran of the Austin Police Department (APD). For over nine years I led the APD Sex Crimes Unit, widely recognized for its progressive approach toward investigating sexual assault, providing better service to victims, and changing the culture surrounding the investigation of non-stranger sexual assault. I am Co-Chair of the Austin/Travis County Sexual Assault Response Resource Team (SARRT). The APD Sex Crimes Unit was recognized for its progressive approach by Human Rights Watch in their 2013 report, Improving Police Response to Sexual Assault.

I served as an expert testifying for the Response Systems Panel, a federal advisory committee which conducted an independent review and assessment of the systems used to investigate, prosecute, and adjudicate crimes involving adult sexual assault and related offenses under military law. I also have trained and presented at a number of training events and conferences hosted by the U.S. Department of Defense, including the U.S. Army Summit, programs at Ft. Hood and Ft. Sam Houston, Ft. Leonard Wood and Ft McCoy. I am a veteran of the U.S. Army.

I serve as a consultant for the Police Executive Research Forum (PERF). I am a subject matter expert for the International Association of Chiefs of Police (IACP) on projects related to sexual assault response and investigation, including the National Law Enforcement Leadership Initiative on Violence Against Women and the roll-call training series *How to Bring Sexual Assault Offenders to Justice: A Law Enforcement Response.* I am a published author and frequent presenter at conferences and seminars. I have won numerous awards for her work, including the first Professional Impact Award given by End Violence Against Women International (EVAWI) in 2011.

My curriculum vitae is attached to this report as Exhibit 1.

IV. DOCUMENTS AND MATERIALS REVIEWED

A. Police Reports Relating to Nicole Chase and Calvin Nodine

**EXHIBIT D**

1. 2017.5.7 Police Call summary
2. 2017.5.12 Gompper Police Report
3. 2017.5.13 Gompper Police Report
4. 2017.5.15 Gompper Email re Calvin Nodine
5. 2017.5.25 Gompper Police Incident Report
6. 2017.6.20 Police Incident Report
7. 2017.6.21 Gompper Police incident Report

B. Written Statements

1. 2017.5.11 Nicole Chase Written Statement
2. 2017.5.11 Alexandria Archer Written Statement
3. 2017.5.12 Kyle Rouleau Written Statement

C. Videotaped Interviews

1. 2017.5.7 Nicole Chase Lobby Interview
   a. Transcript of Nicole Chase Lobby Interview

2. 2017.5.18 Calvin Nodine Lobby Interview
   a. Transcript of Calvin Nodine Lobby Interview

3. 2017.6.21 Nicole Chase Re-Interview
   a. Transcript of Nicole Chase re-interview

D. Texts/Emails

1. 2017.5.6 – 2017.5.17 Texts Nicole Chase – Jeremy Archer
2. 2017.7.25 Chase email Colangelo
3. 2017.7.31 Chase email with attached proposed supplementary statement
4. 2017.8.10 Colangelo Response

E. Canton Police Policies

1. Canton Police Policy Manual
2. Sexual Assault Review Checklist
3. Domestic & Sexual Assault Violence Review Checklist
4. General Checklist Re:  Sexual Assault
5. 2013.3.1 Chief Arciero Email re Checklists

F. Training

1. Colangelo Training Records
2. Gompper Training Records

3

**EXHIBIT D**

G. Arrest Warrant for Nicole Chase

H. Adam Gompper Deposition
   1. Day I
   2. Day II
   3. Exhibits from Gompper Deposition

I. Mark Penney Deposition

   1. Exhibits from Mark Penney Deposition

J. Dispatcher David Canney Deposition

   1. Exhibits from Canney Deposition

K. Calvin Nodine Deposition

   1. Exhibits from Calvin Nodine Deposition

L. Canton Police Internal Affairs Investigation

   1. Internal Affairs Report
   2. All exhibits attached to Internal Affairs Report

M. Original Complaint

N. Proposed Amended Complaint

O. Gompper Interrogatory Responses

P. Colangelo Interrogatory Responses

Q. Town of Canton Interrogatory Responses

R. Colangelo Deposition, Day I and II

   1. Colangelo Deposition Exhibits

S. Assistant State's Attorney Weber Deposition

   1. Weber Deposition Exhibits

T. Nicole Chase Deposition, Days I, II, III

   1. Exhibits from Nicole chase Deposition

**EXHIBIT D**

U.  Connecticut Statutes

1. Conn. Gen. Stat. 53a-49 Definition of Attempt
2. Conn. Gen. stat. §53a-72 Sexual assault in the First Degree
3. Conn. Gen. Stat. §53a-73a Sexual assault in the Fourth Degree
4. Conn. Gen. Stat. §53a-65 Pertinent Definitions Re Sexual Assault
5. Conn. Gen. Stat. §53a-157b False Statement
6. Conn. Gen. Stat. §53a-96 Definitions re restraint

V.  Literature Re Sexual Assault Investigations

1. International Association of Chiefs of Police, Investigating Sexual Assault,(2005 updated 2017)
2. Department of Justice, Identifying and Preventing Gender Bias in Law Enforcement Response to Sexual assault and Domestic Violence (2016)
3. International Association of Chiefs of Police, Trauma Informed Interviewing
4. End Violence Against Women International OLTI

V.  **EXPERT OPINIONS**

As used in this report, my opinions about generally accepted police practices are derived from my experience and training as a police officer, supervisor, trainer and my attendance at continuing education seminars.

<u>Background</u>

On May 7, 2017 Nicole Chase and her mother arrived at the Canton Police Department to make a complaint of an incident that occurred at her place of employment, Nodine's Smokehouse. The interview was recorded and conducted in the lobby of the Police Department.

Chase explained to Officer Gompper that she and her mother are employed at Nodine's and she is the manager. She told Officer Gompper that the owner, Calvin Nodine, had a history of making inappropriate comments to her that are sexual in nature and that, for the most part, Chase had ignored them. Chase talked about the business and some of the internal employee issues they had been experiencing before explaining what happened on May 6, 2018.

On the night of the incident, Nodine had been drinking while at work and was very intoxicated, according to Chase. As Chase was readying the restaurant for closing, only she and one other employee (other than Nodine) were left in the business. As she was walking in the hallway, Nodine grabbed her and forcibly pulled her in to the bathroom. Chase described seeing Nodine's pants and

**EXHIBIT D**

underwear pulled down, exposing his erect penis.

He told Chase "I know you don't get it at home so suck it." She described feeling "frozen" during the incident and did not go into further detail. Nor does Gommper ask her for more details on what happened. Chase described being in the corner of the bathroom and how she escaped Nodine by going around him. Nodine subsequently fell against the wall, striking his head. She demonstrated this for Officer Gompper again, adding that Nodine was very intoxicated.

Officer Gommper told Chase that what she was describing does not meet the elements of a sexual assault, in his opinion. He went on to tell her in detail what to expect should this case move forward through the judicial process. At this time Chase was undecided as to whether she wanted to file formal charges. She told Officer Gompper that she would wait before making a decision.

On May 7, 2018, Officer Gompper generated a report of his interview with Chase. Based on my review of the lobby video tape, Officer Gompper's report is generally an accurate account of what transpired during the interview.

On May 11, 2018, Chase filed a written statement with Officer Gompper. In her statement, she was consistent with what she had said initially to Officer Gompper. She added additional details of the incident which are significant and which Office Gompper should have followed up

"I was able to see Calvin's penis, testicles, pubic hair and that he had his boxers pulled completely below his genitals. I saw that the boxers were a dark blue color. When he did this I could smell the odor of sweat and semen."

"Calvin then said to me, 'Suck it cause I don't know you (sic) get it at home.' As he was saying this he grabbed his testicles and penis and lifted it up towards me. I then pushed Calvin and he stumbled in the wall as he struck his head. I then unlocked the door and walked out."

At no time during the interview did Chase indicate that this was a consensual encounter.

Based on Chase's statement, the elements of an attempted sexual assault are present. Chase's statement indicates that this incident was much more than an exposure case or sexual harassment, which Officer Gompper should have understood. However, he made no attempt to investigate the incident any further.

<u>2005 Connecticut Code - Sec 53a-65</u>

(2) "Sexual intercourse" means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to

6

**EXHIBIT D**

complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body.

    A.    <u>An Experienced Sexual Assault Investigator, following generally accepted standards for the investigation of sexual assault cases, would not have submitted an arrest warrant against Nicole Chase for the charge of Making a False Statement</u>

- There was no evidence, no probable cause to support filing a false report.

- Detective Colangelo had evidence (videotaped interview) that Chase had been sexually assaulted. He failed to follow up on the information.

- Detective Colangelo intentionally omitted information that would have negated the credibility of the probable cause affidavit.

- Detective Colangelo treated Chase as a suspect.

- Detective Colangelo neglected to follow basic investigative protocol and procedures to discover the truth.

- Detective Colangelo ignored the fact that Chase was telling him she was sexually assaulted.

- It is critically important that law enforcement professionals realize that these omissions, inconsistencies, or even untrue statements are understandable and should never be confused with a "false report."

- The most important objective is to create a safe and nonjudgmental environment that encourages honesty even for unflattering or illegal behavior. Victims often omit, exaggerate or fabricate parts of their account, and they may even recant altogether. Reasons for recanting are often very logical to victims and revolve around protecting the safety and economic security of themselves and their family. They are not typically hysterical when interviewed by medical professionals, law enforcement investigators, prosecutors, or others.

- Then when an omission, inconsistency, or untrue statement is suspected, the investigator can respond by pointing out the issue to the victim and asking for clarification. It is entirely possible that the victim simply made a mistake, or the investigator misheard or misunderstood what the victim was saying.

- The appropriate time for this type of clarification is after the victim

**EXHIBIT D**

- has completed his or her description of what happened – not immediately when the issue arises, because this will interrupt the victim's narrative account.

- It is also important to fully explain to victims the negative impact of such omissions, inconsistencies, or untrue statements on their credibility during the law enforcement investigation. By doing so, investigators can emphasize the importance of complete truthfulness.

- In addition, most victims need some time to process what has happened. In many cases, victims who are initially unable to participate in a law enforcement investigation may be able to do so after receiving support from friends, family members, and possibly even a rape crisis counselor or other victim advocate.

- Seek Corroboration for details in the victim's statement. There are clearly a number of strategies that investigators can use to clarify inconsistencies, omissions, or untruths in the victim's description of what happened. However, as important as it is to seek clarification of such inconsistencies or omissions, it is equally important to highlight the accuracy of other details in the victim's statement. Thus, a primary goal of any sexual assault investigation will be seeking corroboration for details in the victim's account of events, regardless of whether or not they are relevant for establishing an element of the offense. Detailed information from the victim, describing thoughts and feelings during the sexual assault, as well as any sensory and peripheral details that can be recalled. Confirmation bias appears to drive the investigation.

- Officer Gommper and Detective Colangelo failed to follow the evidence.

- Detective Colangelo does not withdraw or revise the warrant, even after learning of additional information during Chase's videotaped interview.
- Chase attempts to make a formal change to her statement on several occasions.
- There is no intent to mislead investigators.

## Connecticut General Statutes 53a-157b – False statement: Class A misdemeanor

A person is guilty of false statement when such person (1) intentionally makes a false written statement that such person does not believe to be true with the intent to mislead a public servant in the performance of such public servant's official function.

**EXHIBIT D**

B. **Officer Gompper and Detective Colangelo's Investigation of Nicole Chase's Complaint Failed to Meet Generally Accepted Standards for the investigation of Sexual Assault Complaints**

1. Officer Gompper Initial Interview / response should have included:

   - Private room to interview Chase
   - Process the crime scene(s)
   - Crime scene processing of bathroom and overall photographs of the inside of the building
   - Search warrant to conduct a suspect exam
   - Search warrant for Nodine's clothing (day of assault)
   - Photographs and documentation of potential injury (to his head).
   - Identification of all witness (address, phone numbers)
   - Chase's clothing during the assault should have been gathered (potential dna).
   - Interview of Chase should have included an advocate.
   - The interview should have been victim centered and trauma informed.
   - The following witnesses should have been interviewed on audio or videotape:
     a. Chase's mother
     b. Alexander
     c. Jarvis
     d. Jeremy
     e. Nodine's wife
   - Text messages should have been photographed as evidence.

2. Officer Gompper's Written Statement from Nicole Chase on May 11, 2017

**EXHIBIT D**

- Officer Gompper should have videotaped his interview of Chase.
- Victim witness counselor / advocate present or available
- Never followed up with Chase about details of sexual contact when she told him she "smelled sweat and semen."
- Never questioned her about details of force, coercion, threats, fear.
- Officer Gompper's written statements and his failure to follow up on other relevant evidence pertaining to Calvin Nodine or with either witness.

3. Officer Gompper interviews of Alexandria Archer/Kyle Rouleau

- Failure to follow up on other relevant evidence pertaining to Calvin Nodine with either witness.

4. Colangelo/Gompper interview of Calvin Nodine May 19, 2017

- Detective Colangelo appeared unprepared for the interview.
- Detective Colangelo's interview style and familiarity with the defense attorney was concerning.
- Detective Colangleo's bias and prejudice and general lack of understanding about sexual assault crimes negatively impacted his ability to conduct a thorough evidence-based investigation.
- Detective Colangelo and Officer Gompper did not tie Nodine in to a story.
- Detective Colangelo and Officer Gompper did not follow up on significant aspects of Nodine's statement.
- Nodine lied about any sexual contact with Chase.
- When given a suggestion / explanation by Detective Colangelo, Nodine changed his statement; explaining a consensual sexual encounter with Chase.
- Nodine stated that Chase initiated the sexual contact.
- Detective Colangelo did not press Nodine to explain the

**EXHIBIT D**

inconsistencies in his statement.

- Detective Colangelo read directly from the Chase's statement (prior to tying Nodine in to a statement).
- Detective Colangelo should have interviewed Nicole Chase prior to speaking with Calvin Nodine.
- Failure to fully and thoroughly investigate the incident.

5. Colangelo interview of Nicole Chase on June 21, 2019

    - Chase is interviewed in the interrogation room.
    - Detective Colangelo's body language is noticeably closed off.
    - No advocacy present before, during or after the interview.
    - Cuts off Chase mid-sentence several times.
    - Use of language and discussion implying consent and a relationship with Nodine.
    - Spent a considerable time explaining why a defense attorney would challenge her statements as they appear to mirror Alexandria's.
    - Clearly implying that Chase is not going to tell him the truth.
    - Stated Nodine took a polygraph (two) and passed.
    - When the interview changed to an interrogation, Chase should have been advised of her rights (Miranda).
    - "Did you give him oral sex" consensual language used by Detective Colangelo.
    - Chase is explaining a sexual assault to Detective Colangelo and her reasoning for not detailing the sexual assault initially.
    - "I did not want to do it – I was just so scared I couldn't even tell my own mom."
    - "I think I'm trying to get myself to this point."
    - Chase – "I didn't want people to know."
    - "I was so scared I didn't know what to do."

11

**EXHIBIT D**

Case 3:18-cv-00683-VLB   Document 188-5   Filed 09/21/20   Page 12 of 14

- Chase was crying and he offered no support nor advocacy services.
- Detective Colangelo ignores the evidence of the sexual assault.
- Detective Colangelo is focused the inconsistencies of Chase's statement.
- He neglects to follow up on her statement.

6. Post Interview with Nicole Chase

    - Chase should have been interviewed again after Nodine's interview
    - Lack of communication from Officer Gompper / Detective Colangelo informing Chase as to the status of her case.
    - Intentionally miss ling Chase regarding her case.
    - Did not conduct an evidence-based investigation.

C. <u>Officer Gompper and Detective Colangelo's Treatment of Nicole Chase Failed to Meet Generally Accepted Standards for the Treatment of Sexual Assault Victims</u>

- Failed to engage in trauma-informed investigative techniques.
- Failed to communicate information regarding her investigation.
- Failure to document accurate information in their reports and probable cause affidavit.
- Failed to treat Chase with dignity and respect.
- Failed to understand the seriousness of the crime and the complexity required to.   investigate the case appropriately.
- Failed to follow up and detail information on the relationship between the victim and suspect, including any power or control the suspect exerts over the victim's housing, education, or employment, and any explicit or implied economic-related coercion.
- Failed to detail information from others, to describe the victim's behavior after the sexual assault, and contrast it with the victim's

12

**EXHIBIT D**

typical behavior before the sexual assault.

D. <u>Nicole Chase's reactions and responses during and after the assault were consistent with having experienced a traumatic incident; in this case a sexual assault.</u>

Victims of trauma / sexual assault have a myriad of responses. There are no "normal" reactions nor responses to a traumatic incident. Nicole Chase's reactions and responses during and after the assault were consistent with those of other victims of trauma / sexual assault.

### During Assault

- Failure to fight, yell or fend off Nodine.
- Freezing during incident.
- Saying good night to Nodine.
- Showing concern after assault for other job responsibilities.

### Post-Assault

- Minimizing the sexual assault
- Fear of losing her job
- Fear of not being believed
- Unsure of whether she wanted to file charges
- Omission of details of assault
- Inconsistencies in describing events
- Chase throwing her clothes away
- Memory lapses about certain details after incident
- Feelings of guilt, embarrassment, shame, humiliation
- She is concerned her civil case will be negatively affected.

**EXHIBIT D**

Respectfully submitted,

*E.M. Donegan*

Sgt Elizabeth M. Donegan (Ret)

**EXHIBIT D**